**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| ALEXANDER R. DEANDA, <br><br> Plaintiff, <br><br> v. <br><br> ALEX M. AZAR II, in his official capacity as Secretary of Health and Human Services; DIANE FOLEY, in her official capacity as Deputy Assistant Secretary for Population Affairs; UNITED STATES OF AMERICA, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 2:20-cv-92-Z |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 3

    I.      Statutory and Regulatory Background ......................................................... 3

         A.     Title X of the Public Health Service Act ............................................. 3

         B.     History of Litigation Concerning Minors' Access to Confidential Family Planning Services Under Title X .......................................................... 5

    II.     Current Proceedings ................................................................................... 8

STANDARD OF REVIEW ........................................................................................... 9

ARGUMENT ............................................................................................................. 10

    I.      This Case Must Be Dismissed For Lack of Subject Matter Jurisdiction Because Plaintiff Lacks Standing ............................................................... 10

    II.     Plaintiff Fails to State a Claim For Which Relief Can Be Granted ........................... 13

         A.     Claim No. 1 Fails Because State Law Cannot Require Parental Notification or Consent for Title X Family Planning Services............................. 14

         B.     Claim No. 2 Fails Because the Title X Family Planning Services Grant Program Does Not Interfere with Plaintiff's Parental Liberty ............................. 17

         C.     Claim No. 3 Fails Because the Title X Program Does Not Substantially Burden Plaintiff's Exercise of His Religion ...................................... 20

CONCLUSION.......................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Anspach v. Philadelphia*,
  503 F.3d 256 (3d Cir. 2007) ................................................................... 17, 18, 19, 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 9, 10

*Bowen v. Roy*,
  476 U.S. 693 (1986) ............................................................................................... 20, 21

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) ............................................................................................... 20, 22

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ....................................................................................... 9, 10, 11, 13

*County of St. Charles, Missouri v. Mo. Family Health Council*,
  107 F.3d 682 (8th Cir. 1997) ................................................................................... 7, 15

*Ctr. for Biological Diversity v. EPA*,
  937 F.3d 533 (5th Cir. 2019) ........................................................................................ 13

*Deotte v. Azar*,
  332 F.R.D. 173 (N.D. Tex. 2019) ................................................................................. 11

*Doe v. Irwin*,
  615 F.2d 1162 (6th Cir. 1980) ............................................................................ 17, 18, 19

*Doe v. Pickett*,
  480 F. Supp. 1218 (S.D. W. Va. 1979) ...................................................................... 8, 15

*Guidry v. Bank of LaPlace*,
  954 F.2d 278 (5th Cir. 1992) ...................................................................................... 9, 10

*Jane Does 1 through 4 v. Utah Dep't of Health*,
  776 F.2d 253 (10th Cir. 1985) .................................................................................... 7, 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ................................................................................................ 9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................... 10, 11, 12, 13

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
    485 U.S. 439 (1988) ........................................................................... 21, 22

*Meyer v. Nebraska*,
    262 U.S. 390 (1923) ........................................................................... 18

*New York v. Heckler*,
    719 F.2d 1191 (2d Cir. 1983) ..................................................... 7, 15

*Patterson v. Planned Parenthood of Houston & Se. Tex.*,
    971 S.W. 2d 439 (Tex. 1998) ...................................................... 7, 8

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary*,
    268 U.S. 510 (1925) ........................................................................... 18

*Planned Parenthood Fed'n of Am., Inc. v. Heckler*,
    712 F.2d 650 (D.C. Cir. 1983) ............................................. *passim*

*Planned Parenthood Ass'n of Utah v. Matheson*,
    582 F. Supp. 1001 (D. Utah 1983) .......................................... 7, 15

*Planned Parenthood of Houston & Se. Tex. v. Sanchez*,
    403 F.3d 324 (5th Cir. 2005) ...................................................... 14, 16

*Priests for Life v. U.S. Dep't of Health & Human Servs.*,
    808 F.3d 1 (D.C. Cir. 2015) ........................................................... 20

*Raines v. Byrd*,
    521 U.S. 811 (1997) ........................................................................... 10

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................................... 12

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ........................................................................... 9

iii

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ............................................................................ 11

*Ware v. S. Tex. Family Planning & Health Corp*,
    2010 US Dist. Lexis 155133 (S.D. Tex. 2010) ............................................. 8, 15

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ........................................................................................ 11

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. VI, cl. 2 ...................................................................................... 14

**STATUTES**

42 U.S.C. § 300 ......................................................................................... *passim*

42 U.S.C. § 300a-5 ................................................................................................ 3

42 U.S.C. § 2000bb–1 ......................................................................................... 20

Pub. L. No. 91-572 ......................................................................................... 3, 16

Pub. L. No. 95-613 ......................................................................................... 3, 17

Pub. L. No. 97-35 .................................................................................................. 4

Pub. L. No. 115-245 .................................................................................. 4, 13, 15

Pub. L. No. 116-94 ................................................................................................ 4

**RULES**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 13

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 14

## REGULATIONS

42 C.F.R. § 59.1 ............................................................................................... 3

42 C.F.R. § 59.2 ........................................................................................... 3, 19

42 C.F.R. § 59.5 .................................................................................. 3, 4, 13, 15

42 C.F.R. § 59.11 ............................................................................................. 4

48 Fed. Reg. 3600 (January 26, 1983) ............................................................ 5

## OTHER AUTHORITIES

H.R. Conf. Rep. No. 208, 97th Cong. 1st sess. 799 (1981) ............................ 6

S. Rep. No. 102, 95th Cong., 1st sess. 26 (1977) .......................................... 6

S. Rep. No. 822, 95th Cong, 2d sess. 24 (1978) .......................................... 17

Texas Health and Human Services, "Adolescent Health Guide,"
     https://www.dshs.texas.gov/layouts/contentpage.aspx?pageid=29814&id=12884933660&
     terms=minor%20consent%20%22family%20planning%22 .................................................... 16

## <u>INTRODUCTION</u>

Plaintiff brings this action to enjoin a voluntary federal grant program in which Plaintiff and his children may freely decline to participate. Although Plaintiff and his family remain at liberty to have nothing to do with the challenged Title X program, Plaintiff argues nonetheless that the administration of the program violates Texas state law, deprives him of his parental rights, and substantially burdens his religious exercise.

Plaintiff is incorrect. The Title X grant program, which is administered by the U.S. Department of Health and Human Services (HHS), makes funds available to grantees who, in turn, offer voluntary, confidential family planning services to individuals, including minors, while encouraging family participation in the family planning decisions of minors. The program does not force Plaintiff or his daughters to use any of the services offered by grantees or to take any action whatsoever. Plaintiff's personal objections to a program in which neither he nor his family are required to participate cannot provide a basis to enjoin administration of the program for those who choose to seek its benefits. To hold otherwise could significantly impair the government's ability to implement myriad federal programs, due to the substantial likelihood that some individual somewhere will object to some aspect of nearly every federal program even though they need not participate in it.

As a threshold matter, Plaintiff's suit must be dismissed for lack of jurisdiction because Plaintiff has not alleged an injury caused by Defendants. Plaintiff asserts that he does not want his daughters to seek or obtain family planning services from a Title X clinic without his knowledge or consent. But Plaintiff has not alleged any facts to show that this alleged injury is certainly impending. The complaint does not allege that Plaintiff's daughters have ever sought or obtained Title X family planning services. Nor does the complaint allege that his daughters

1

intend to do so – either in the near future or ever. Instead, Plaintiff alleges that he is raising his daughters in accordance with his religious beliefs requiring unmarried children to practice abstinence. Plaintiff's own allegations therefore do not plausibly suggest that his children will seek family planning services from a Title X clinic prior to marriage. And, even in the hypothetical event that one of Plaintiff's children did seek such services, the requirement that Title X projects encourage minors to involve their families in such decisions further reduces to mere conjecture the notion that one of Plaintiff's minor children would choose to receive family planning services without his participation.

  Even if Plaintiff had established standing, the case still should be dismissed for failure to state a claim upon which relief can be granted. Plaintiff's claim that Title X violates Texas state law by making prescription contraceptives available to minors without parental notification or consent lacks merit. Courts considering such a claim have consistently held that imposing a parental notification or consent requirement for minors to receive family planning services under Title X would contradict the federal Title X statute and, thus, violate the Supremacy Clause of the U.S. Constitution. Moreover, Plaintiff cannot show that the Title X program deprives him of his parental rights or substantially burdens his religious exercise, because the voluntary Title X program does not prevent Plaintiff or his daughters from acting in accordance with their beliefs, pressure them to modify those beliefs, or require them to take any action whatsoever. Plaintiff and his daughters remain free to choose not to obtain family planning services from a Title X clinic, and Plaintiff may continue to teach his children that their religious beliefs prohibit them from seeking family planning services prior to marriage.

  Accordingly, this case should be dismissed.

## BACKGROUND

### I.   STATUTORY AND REGULATORY BACKGROUND

#### A.   Title X of the Public Health Service Act

Congress enacted Title X of the Public Health Service (PHS) Act, 42 U.S.C. §§ 300, *et seq.*, as a means of "making comprehensive voluntary family planning services readily available to all persons desiring such services." Family Planning Services and Population Research Act of 1970, Pub. L. No. 91-572, § 2(1), 84 Stat. 1504 (1970). The statute authorizes the Secretary of Health and Human Services to "make grants to and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents)." 42 U.S.C. § 300(a). Projects funded under this program provide the services "necessary to aid individuals to determine freely the number and spacing of their children." 42 C.F.R. § 59.1(a).

Family planning services "include a broad range" of methods and services, 42 U.S.C. § 300(a), that "must always be strictly voluntary," 42 C.F.R. § 59.2. *See also* 42 U.S.C. § 300a-5 (requiring that acceptance of family planning services under Title X "shall be voluntary"). These services are provided by grantees, which receive "Federal financial assistance by means of a grant," and in return "assume[] legal and financial responsibility and accountability for the awarded funds." *Id.* In addition to direct provision of services, grantees may engage "subrecipients" to deliver family planning services. *Id.*

The statute requires that Title X services be made available to adolescents. In 1978, Congress amended Title X to codify the existing agency practice of requiring that Title X projects include "services for adolescents." Pub. L. No. 95-613, § 1(a)(1), 92 Stat. 3093 (1978). In addition, HHS regulations require that entities provide services "without regard to . . . age," 42

3

C.F.R. § 59.5(a)(4), and generally mandate that participating entities maintain confidentiality

with respect to individuals seeking family planning services through this program, *id.* at § 59.11

(with limited exceptions, "[a]ll information as to personal facts and circumstances obtained by

the project staff about individuals receiving services must be held confidential and not be

disclosed without the individual's documented consent.").

     Title X also encourages family participation in the delivery of such services to minors.

Congress amended the statute in 1981 to include the current requirement that, "[t]o the extent

practical," participating entities "shall encourage familiy [sic] participation in projects assisted

under this subsection." 42 U.S.C. § 300(a); Pub. L. No. 97-35, §931(b)(1), 95 Stat. 357 (1981).

HHS implements this provision by requiring that each family planning project supported under

Title X generally "[e]ncourage family participation in the decision to seek family planning

services[.]" 42 C.F.R. § 59.5(a)(14). When providing family planning services to minors, entities

must maintain records which "document the specific actions taken to encourage such family

participation (or the specific reason why such family participation was not encouraged)." *Id.*

Similarly, since 1997, Congress has included in annual appropriations acts the condition that, to

receive Title X funds, participating entities must certify that they do, in fact, encourage family

participation in minors' decisions to seek family planning services through the Title X program:

> None of the funds appropriated in this Act may be made available to any entity
> under Title X of the Public Health Service Act unless the applicant for the
> award certifies to the Secretary that it encourages family participation in the decision of
> minors to seek family planning services and that it provides counseling to minors
> on how to resist attempts to coerce minors into engaging in sexual activities.

*See, e.g.,* Further Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, Div. A, Title II,

Department of Health and Human Services Appropriations Act, 2020, § 207, 133 Stat. 2534,

2578 (Dec. 20, 2019); Department of Defense and Labor, Health and Human Services, and

Education Appropriations Act, 2019 and Continuing Appropriations Act, 2019, Pub. L. No. 115-

245, Div. B, Title II, Department of Health and Human Services Appropriations Act, 2019, §

207, 132 Stat. 2981, 3090 (Sept. 28, 2018).

**B.  History of Litigation Concerning Minors' Access to Confidential Family Planning Services Under Title X**

Minors' access to confidential family planning services under Title X has been litigated

for decades, and courts have consistently found parental notification or consent requirements to

be contrary to the Title X statute.

In 1983, HHS issued regulations that would have required Title X grantees to notify a

parent or guardian within ten working days of initially providing prescription drugs or

prescription devices to an unemancipated minor, except where the notification would result in

physical harm to the minor or when the prescription drugs were provided to treat sexually

transmitted disease. Parental Notification Requirements Applicable to Projects for Family

Planning Services, Final Rule, 48 Fed. Reg. 3600, 3614 (January 26, 1983). The regulations also

would have required compliance with state laws requiring parental notification or consent with

respect to the provision of family planning services. *Id.*

The D.C. Circuit held these regulations were contrary to the statute, and the regulations

never took effect. *Planned Parenthood Fed'n of Am., Inc. v. Heckler*, 712 F.2d 650, 651 (D.C.

Cir. 1983). The court viewed the challenge to those regulations as "a straightforward issue of

statutory construction[,]" and held that the Title X statute precludes a requirement of parental

involvement in the delivery of family planning services to minors under Title X. *Id.* at 654. The

court emphasized the statute's use of the word "encourage," a "permissive and non-obligatory

term," as well as the "qualifier 'to the extent practical.'" *Id.* at 656. The court also reasoned that

"the regulations are fundamentally inconsistent with Congress' intent and purpose in enacting

Title X and are therefore beyond the limits of the Secretary's delegated authority." *Id.* at 651.

5

The court cited the Conference Committee Report accompanying the 1981 statutory amendment, which stated: "[W]hile family involvement is not mandated, it is important that families participate in the activities authorized by this statute as much as possible. It is the intent of the conferees that grantees will encourage participants in Title X programs to include their families in counseling and involve them in decisions about services." *Id.* at 657 (citing H.R. Conf. Rep. No. 208, 97th Cong. 1st sess. 799 (1981)). Citing the Senate Report accompanying the 1977 reauthorization of Title X, the court concluded that Congress believed that confidentiality is essential to attract adolescents to Title X clinics: "without such assurances, one of the primary purposes of Title X – to make family planning services readily available to teenagers – would be severely undermined." *Id.* at 660 (citing S. Rep. No. 102, 95th Cong., 1st sess. 26 (1977)).

In light of its determination that the parental notification requirement was inconsistent with Congressional intent, the court rejected the 1983 regulations' requirement that Title X grantees comply with any state laws requiring parental notification or consent for the provision of family planning services. The court viewed this requirement as "allowing the states to set eligibility criteria" for the Title X program and concluded that, although Congress could design the program in that way, it had not done so for Title X. *Id.* at 663.

And even if Congress had authorized the Secretary to delegate such authority to the states, the court reasoned that any such delegation would need to be limited to rules that conformed to the existing program requirements. *Id.* Thus, in light of its conclusion that the "policies of Title X prohibit the Secretary from requiring parental notification," the court held that "the states would likewise be precluded from imposing similar conditions." *Id.* at 664.

The Second Circuit agreed in a similar challenge "that the 1981 amendment to Title X [encouraging family participation] did not authorize the regulations regarding mandatory [parental] notification." *New York v. Heckler*, 719 F.2d 1191, 1196 (2d Cir. 1983).

Since the rejection of the 1983 HHS regulations, every court to consider the issue has rejected state attempts to require parental notification or consent for the provision of Title X family planning services. For example, in *County of St. Charles, Missouri v. Mo. Family Health Council*, 107 F.3d 682, 684-85 (8th Cir. 1997) (collecting cases), the Eighth Circuit rejected a clinic's claim that it was eligible for Title X funding, despite proposing to adhere to a Missouri law that required parental consent for the provision of family planning services to minors. The court observed that "[a]ll the circuits which have considered the validity of parental consent requirements for adolescents to receive Title X federal services have found them prohibited by statute, regardless of whether they are based on state law." *Id.* at 685. Citing the D.C. Circuit decision, the court noted that the Title X statute "states that family participation should be encouraged only 'to the extent practical,' and the legislative history indicates that Congress did not desire mandatory parental notification or parental consent for a minor to receive Title X services." *Id.* at 684; *Jane Does 1 through 4 v. Utah Dep't of Health*, 776 F.2d 253, 255 (10th Cir. 1985) (affirming injunction of the application of state law requiring parental consent for provision of Title X family planning services and noting "that HHS is for all practical purposes here attempting to perpetuate its proposed regulation as to consent heretofore held invalid as a violation of Title X."); *Planned Parenthood Ass'n of Utah v. Matheson*, 582 F. Supp. 1001, 1006 (D. Utah 1983) ("the provision of family planning services to minors on a confidential basis was critically significant to Congress when it enacted and amended Title X. Consequently . . . the Supremacy Clause dictates that the federal law prevail over [state law]."). *Cf. Patterson v.*

7

*Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W. 2d 439, 441 (Tex. 1998) (contemplating that, under a joint funding scheme, the state might dispense prescription drugs to minors without parental consent using federal funds, to avoid conflict with state law limitation on use of state funds to provide such services); *Ware v. S. Tex. Family Planning & Health Corp,* 2010 U.S. Dist. Lexis 155133, *3 (S.D. Tex. 2010) ("Defendants, however, operate pursuant to Title X, Public Health Service Act, 42 U.S.C. § 300 *et seq*., which prohibits participants from requiring parental consent for the provision of services to minors.").

At least one court had reached a similar conclusion that a state could not require parental consent for provision of Title X services to minors prior to the D.C. Circuit's 1983 decision. *See Doe v. Pickett*, 480 F. Supp. 1218, 1220 (S.D. W. Va. 1979) ("The State, in requiring parental consent with respect to the expenditure of monies under these federal programs, is imposing additional eligibility requirements not contemplated or articulated in the statutory or regulatory framework of such programs.").

## II.    CURRENT PROCEEDINGS

Plaintiff Alexander R. Deanda alleges he is a Texas resident raising three minor daughters. Compl. ¶¶ 3, 19. According to the complaint, Plaintiff's religious beliefs require unmarried children such as his daughters to "practice abstinence." *Id.* ¶ 20. Plaintiff asserts that he "wishes to be informed if any of his children are accessing or attempting to access prescription contraception and other family-planning services" and that "he does not want his children to obtain or use these drugs or services unless he consents." *Id.* ¶ 21. Plaintiff filed this action, seeking to enjoin Defendants from funding Title X projects that provide family planning services to minor children without obtaining parental consent. *Id.* ¶¶ 26, 54.

Plaintiff brings three claims on his own behalf and on behalf of three separately defined putative classes of parents. *See id.* ¶¶ 46-48. In Claim No. 1, Plaintiff asserts that Defendants'

8

administration of Title X violates Texas law by making prescription contraception available to minors without parental consent. *Id.* ¶¶ 27-28. In Claim No. 2, Plaintiff alleges that Defendants' administration of Title X violates parents' constitutional right to direct the upbringing of their children "by making prescription contraception and other family-planning services available" to minors without parental consent. *Id.* ¶ 34. Finally, in Claim No. 3, Plaintiff alleges that Defendants' administration of Title X violates the Religious Freedom Restoration Act (RFRA) by substantially burdening his ability to raise his children according to his religious beliefs, which require children to "practice abstinence and refrain from sexual intercourse until marriage." *Id.* ¶ 40.

## <u>STANDARD OF REVIEW</u>

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party seeking to invoke the jurisdiction of the federal courts bears the burden of demonstrating an Article III case or controversy. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). If at any time the Court determines that jurisdiction is lacking, the court must dismiss the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998) ("[W]ithout proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit.").

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678; *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Rather, the complaint must

9

contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* For purposes of deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of the reasonably pled factual allegations in the complaint and construes reasonable inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 678. However, the Court need not accept as true "a legal conclusion couched as a factual allegation[.]" *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 555); *Guidry*, 954 F.2d at 281.

<u>**ARGUMENT**</u>

## I.   THIS CASE MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF LACKS STANDING

Plaintiff does not allege that his daughters have attempted in the past or intend in the future to seek or obtain family planning services from a Title X clinic. Plaintiff, therefore, cannot sustain his burden to demonstrate an Article III case or controversy because Plaintiff lacks standing.

"'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper*, 568 U.S. at 408 (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To establish the "irreducible constitutional minimum of standing" under Article III, a plaintiff must show that he or she has suffered (1) an "injury in fact" – an "invasion of a legally protected interest" that is both "concrete and particularized" as well as "actual or imminent, not 'conjectural' or 'hypothetical'" – (2) that is "fairly traceable" to the defendants' challenged conduct; and (3) that is "likely" to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

When "the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control," the plaintiff must demonstrate "a high degree of immediacy, so as to reduce the possibility of

deciding a case in which no injury would have occurred at all." *Id.* at 564 n.2. Indeed, the

Supreme Court has "repeatedly reiterated that . . . '[a]llegations of *possible* future injury' are not

sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

In addition, standing is most difficult to demonstrate when, as here, Plaintiff is not the

subject of the challenged government action. As the Court explained in *Lujan*, "[w]hen . . . a

plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of

regulation) of *someone else*, much more is needed. In that circumstance, causation and

redressability ordinarily hinge on the response of the regulated (or regulable) third party to the

government action or inaction – and perhaps on the response of others as well." 504 U.S. at 562.

Thus, "it becomes the burden of the plaintiff to adduce facts showing that [the] choices [of those

third parties] have been or will be made in such manner as to produce causation and permit

redressability of injury." *Id.* An injury is not "fairly traceable" to a challenged law when "an

independent act of a third party was a necessary condition of the harm's occurrence, and it was

uncertain whether the third party would take the required step." *Deotte v. Azar*, 332 F.R.D. 173,

180-81 (N.D. Tex. 2019) (quoting *Texas v. United States*, 809 F.3d 134, 160 n.68 (5th Cir.

2015), *as revised* (Nov. 25, 2015)). "[S]tanding theories that rest on speculation about the

decisions of independent actors" fail to establish an injury that is certainly impending or fairly

traceable to the challenged conduct. *Clapper*, 568 U.S. at 413-14.

Plaintiff here has not alleged an injury in fact that is fairly traceable to the challenged

actions of Defendants. As an initial matter, Plaintiff does not allege any actual present or past

harm; rather he asserts "only a[ purported] injury at some indefinite future time." *Lujan*, 504

U.S. at 564 n.2. But Plaintiff has failed entirely to allege facts demonstrating the requisite "high

degree of immediacy" that is necessary to establish imminence in such circumstances. *Id.*; *see*

11

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) ("[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]."). Specifically, Plaintiff alleges that the Title X program threatens future harm to him by making it possible that his minor children might someday seek or obtain family planning services, potentially including prescription contraception, without his knowledge or consent. *See, e.g.,* Compl. ¶ 24. But Plaintiff fails to allege any specific facts showing the likelihood or timing of such future actions, which is plainly insufficient to demonstrate standing. *See Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require.").

Moreover, to the extent the threat of future harm depends upon the voluntary actions of Plaintiff's minor children, Plaintiff does not allege any facts that would show the immediate likelihood of such actions. Although "[p]ast exposure . . . does not in itself show a present case or controversy regarding injunctive relief," *Lujan*, 504 U.S. at 564, the complaint fails to allege even this much to indicate any immediate likelihood of future harm. The complaint does not allege that Plaintiff's children have ever attempted to seek or obtain Title X family planning services in the past, nor even that they have expressed an interest in or inclination towards obtaining these services. To the contrary, Plaintiff asserts that he is raising his daughters according to his religious beliefs, which "require[] unmarried children to practice abstinence." Compl. ¶ 20. Thus, if anything, Plaintiff's allegations concerning his actions to discourage his daughters from participating in Title X services tend to show that, to the extent "the acts necessary to make the injury happen are at least partly within the plaintiff's own control," the threatened harm he alleges is *less* likely to occur in the future. *Lujan*, 504 U.S. at 564 n.2.

Plaintiff's allegations therefore offer no support for his baseless speculation that his minor children are likely to seek family planning services from a Title X clinic prior to marriage and without his knowledge or consent. This is precisely the opposite of the "high degree of immediacy" that the Supreme Court has required in such circumstances. *Id.*

Even if one of Plaintiff's children were to make an independent, voluntary decision to seek such services some day in the future, Plaintiff fails to allege any facts supporting his mere conjecture that his child would decide not to involve him in her family planning decisions. *See, e.g.,* 42 U.S.C. § 300(a); 42 C.F.R. § 59.5(a)(14); Pub. L. No. 115-245, § 207. Vague speculation that one of his children might some day seek or obtain Title X family planning services without his knowledge or consent does not come close to sustaining his burden to show a "*certainly impending*" injury. *Clapper*, 568 U.S. at 409. Plaintiff's allegations of future injury simply require too much "guesswork," including "as to how independent decisionmakers will exercise their judgment." *Id.* at 413; *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 537 (5th Cir. 2019).

Plaintiff's suit therefore must be dismissed for lack of subject matter jurisdiction because Plaintiff lacks Article III standing. Fed. R. Civ. P. 12(b)(1).

## II.    PLAINTIFF FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

Even if Plaintiff could establish standing, the complaint still fails to state a claim for which relief can be granted. First, Plaintiff's claim that Defendants' administration of the Title X grant program violates Texas state law fails because state law cannot impair the implementation of a federal program. Although the Title X statute and Defendants' regulations require clinics to encourage family participation, courts have consistently rejected the application of state laws that require parental notification or consent for the provision of Title X services. Second, Plaintiff's

claim that Title X interferes with Plaintiff's right to "direct the upbringing" of his children fails because the decision to seek Title X family planning services is voluntary and therefore does not unconstitutionally interfere with Plaintiff's ability to raise his children. Finally, Plaintiff's RFRA claim similarly fails because Defendants' administration of the Title X program does not substantially burden Plaintiffs' religious beliefs. Accordingly, the complaint must be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

### A.    Claim No. 1 Fails Because State Law Cannot Require Parental Notification or Consent for Title X Family Planning Services

Claim No. 1 alleges that Defendants' administration of the Title X program violates Texas state law because Title X projects are not required to obtain parental consent before providing prescription contraceptives to minors. The U.S. Constitution, however, makes federal law the supreme law of the land. U.S. Const. art. VI, cl. 2 ("This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."). Accordingly, state law cannot impose requirements that would impede implementation of a federal program such as the Title X family planning services grant program. *See Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 341 & n.84 (5th Cir. 2005) ("Here, *Texas* is attempting to impose regulations that restrict the scope of a federal program" in a manner that "would seriously undermine and obstruct Congress's intent in distributing funds under Title X.").

As noted above, courts have consistently interpreted state laws requiring parental notification or consent as imposing additional eligibility requirements on the Title X program, inconsistent with the Supremacy Clause, the text of the Title X statute, and Congressional intent to ensure confidential access to Title X family planning services. *See, e.g., Planned Parenthood*

*v. Heckler*, 712 F.2d at 654; *New York v. Heckler*, 719 F. 2d at 1196; *Mo. Family Health Council*, 107 F.3d at 684-85; *Jane Does 1 through 4*, 776 F.2d at 255; *Ware v. S. Tex. Family Planning & Health Corp,* 2010 U.S. Dist. Lexis 155133 at *3; *Planned Parenthood v. Matheson*, 582 F. Supp. at 1006; *Doe v. Pickett*, 480 F. Supp. at 1220; *see also supra* Part I.B. The Title X statute requires Title X projects to "*encourage*," not mandate, family participation "*[t]o the extent practical.*" 42 U.S.C. § 300(a) (emphasis added); *see also* Pub. L. No. 115-245, § 207, 132 Stat. 2981, 3090 (2018) (requiring grantees to certify that they encourage family participation in the decision of minors to seek family planning services). Similarly, HHS regulations provide that family planning projects must "[e]ncourage family participation in the decision to seek family planning services; and, with respect to each minor patient, ensure that the records maintained document the specific actions taken to encourage such family participation (or the specific reason why such family participation was not encouraged)." 42 C.F.R. § 59.5(a)(14). Thus, federal law does not require parental notification or consent for minors to receive family planning services – including prescription drugs – from Title X clinics. And under the case law, neither HHS nor a state could require such parental notification or consent. *See Planned Parenthood v. Heckler*, 712 F.2d at 660-61; *New York v. Heckler*, 719 F. 2d at 1196. In the words of the D.C. Circuit, imposing such a requirement would be inconsistent with "one of the primary purposes of Title X – to make family planning services readily available to teenagers" – because "Congress made clear that confidentiality was essential to attract adolescents to the Title X clinics[.]" *Planned Parenthood v. Heckler*, 712 F.2d at 660. And a state's "attempt to require parental consent as a condition to the provision of family planning services constituted the imposition of an additional eligibility requirement that clearly thwarted the goals of Title X." *Id.* at 664.

The Fifth Circuit's decision in *Planned Parenthood v. Sanchez*, 403 F.3d at 341, confirms that states may not impose additional eligibility requirements on the Title X program. There, the plaintiff challenged a Texas state law restricting the distribution of federal family planning grants, including Title X funding, by requiring each participating entity to sign an affidavit attesting that the entity does not perform abortions, even though federal law requires only that federal funds not be used in programs where abortion is a method of family planning. *Id.* at 327-28. Plaintiff argued that the state "impermissibly added conditions and impediments to the receipt of federal funds." *Id.* at 336. The Fifth Circuit agreed, reasoning that "a state eligibility standard that altogether excludes entities that might otherwise be eligible for federal funds is invalid under the Supremacy Clause." *Id.* at 337. The court determined that the district court did not abuse its discretion in issuing a preliminary injunction against enforcement of the state law where the state law requirements exceeded the federal law and would undermine Congressional intent with respect to the distribution of Title X funds. *Id.* at 341 & n.84 (quoting *Planned Parenthood v. Heckler*, 712 F.2d at 663).

Relevant case law thus forecloses Plaintiff's claim that Defendants should be enjoined from providing federal funding to the Title X projects in Texas that do not comply with Texas state law regarding parental consent for prescriptions to minors.[1] Plaintiff's requested injunction would undermine Congressional intent generally to "mak[e] comprehensive voluntary family planning services readily available to *all persons* desiring such services." Pub. L. No. 91-572, §

---

[1] Although the Court need not decide this issue, it is far from clear that Plaintiff's interpretation of state law is correct. For example, Texas law explicitly allows its Health and Human Services Commission to "modify, or suspend" restrictions on state funding based on requirements for a minor's consent for treatment under Family Code Chapter 32 if compliance "would result in the loss of Federal Funds to the state." General Appropriations Act for the 2020-2021 Biennium, II-70; *see also* Texas Health and Human Services "Adolescent Health Guide," https://www.dshs.texas.gov/layouts/contentpage.aspx?pageid=29814&id=12884933660&terms=minor%20consent %20%22family%20planning%22) (recognizing that Title X services by the current grantee (Women's Health and Family Planning Association of Texas) are not subject to state law requirements).

2(1), 84 Stat. 1504, 1504 (1970) (emphasis added). More specifically, enjoining federal funding unless grantees in Texas require family participation in the decisions of minors to seek family planning services would add eligibility requirements to the Title X statute, which requires only *encouragement* of parental participation *to the extent practical*, and undermine Congressional intent to ensure that adolescents have access to confidential family planning services. *Planned Parenthood v. Heckler*, 712 F.2d at 660; *see also, e.g.,* Pub. L. No. 95-613, 92 Stat. 3093 (1978) (amending statute to require that Title X projects include "services for adolescents"); S. Rep. No. 822, 95th Cong, 2d sess. 24 (1978) (In adopting this amendment, Congress placed "a special emphasis on preventing unwanted pregnancies among sexually active adolescents."). Plaintiff's claim is thus foreclosed by precedent holding that, if states seek to impose additional rules affecting the eligibility of projects for federal funding, "those rules must be consistent with the federal standards or else be held invalid under the Supremacy Clause[.]" *Planned Parenthood v. Heckler*, 712 F.2d at 663-64 n.57.

Accordingly, Plaintiff's Claim No. 1 that Defendants' administration of the Title X program violates Texas state law must be dismissed for failure to state a claim.

### B.    Claim No. 2 Fails Because the Title X Family Planning Services Grant Program Does Not Interfere with Plaintiff's Parental Liberty

Plaintiff also fails to state a claim for interference with parental rights because the mere availability of voluntary services funded under Title X does not deprive Plaintiff of the liberty to raise his children according to his personal beliefs and values. The Title X program neither compels Plaintiff to take any particular action nor prohibits him from taking any particular action with respect to the raising of his children. *See, e.g., Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980) (state's operation of a voluntary birth control clinic did not deprive parents of their liberty interest in the upbringing of their children); *Anspach v. Philadelphia*, 503 F.3d 256, 262 (3d Cir.

2007) ("Courts have recognized the parental liberty interest only where the behavior of the state actor compelled interference in the parent-child relationship.").

The Sixth Circuit's decision in *Doe v. Irwin*, 615 F.2d at 1163, is instructive. There, the parents of minor children, including the parents of a sixteen-year-old who received contraceptives from a publicly operated family planning clinic, challenged the clinic's provision of prescription contraceptives to minors without requiring parental knowledge or consent. The court held that the state had not interfered with the liberty interest of parents to direct the upbringing and education of their children because the challenged program "imposed no compulsory requirements or prohibitions which affect rights" of parents. *Id.* at 1168. To the contrary, the state had "merely established a voluntary birth control clinic." *Id.* (distinguishing *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 530 (1925)). Thus, the parents remained "free to exercise their traditional care, custody and control over their unemancipated children." *Id.* The state's "practice of not notifying [parents] of their children's voluntary decisions to participate in the activities" of the clinic consequently did not deprive parents of their liberty interest in the upbringing of their children. *Id.*

Similarly, the Third Circuit in *Anspach*, 503 F.3d at 262, rejected the claims of parents and their minor child who obtained emergency contraception at a public health clinic without parental notification or consent. Relying upon the Sixth Circuit's decision in *Doe v. Irwin*, the Third Circuit agreed that the availability of voluntary birth control services without parental notification or consent did not amount to a deprivation of parental liberty. *Id.* at 262-64. The minor child's decision to visit the clinic and to obtain contraception was entirely voluntary, as was her decision not to notify or consult her parents concerning these actions. *Id.* at 264. In the

18

absence of any coercion, the public health clinic had not interfered with the parents' liberty interest in controlling the upbringing of their child. *Id.* at 267. As in *Doe v. Irwin*, the parents in *Anspach* remained at liberty to exercise their parental rights. *Id.*

The Title X program likewise does not deprive Plaintiff of parental liberty because the family planning services provided through that program are purely voluntary. Indeed, the federal statute authorizes funding only for "the establishment and operation of *voluntary* family planning projects." 42 U.S.C. § 300(a) (emphasis added); 42 C.F.R. § 59.2 ("Family planning methods and services are never to be coercive and must always be strictly voluntary."). In this regard, this case is on all fours with the prior decisions in *Doe v. Irwin*, 615 F.2d at 1168, and *Anspach*, 503 F.3d at 262. Like the voluntary birth control clinics at issue in those cases, grantees receiving Title X funding provide voluntary family planning services for individuals who choose to participate in those programs. Because these services are voluntary, these projects do not in any way limit Plaintiff's ability to make choices concerning his children. As was the case in *Doe v. Irwin* and *Anspach*, Plaintiff's children are not required to avail themselves of any of the family planning services funded under Title X, nor does the Title X program prohibit Plaintiff from participating in his children's decisions to seek family planning services. To the contrary, Title X requires that grantees "shall encourage" family participation. 42 U.S.C. § 300(a). Moreover, Plaintiff's parental liberty does not entitle him to governmental assistance in ensuring that his children obey his wishes that they neither obtain nor use prescription contraception or other family planning services without his consent. *Anspach*, 503 F.3d at 267; *cf.* Compl. ¶ 37 (alleging that Plaintiff brings this claim on behalf of all parents nationwide who wish to be informed of their children's attempts to access such voluntary services or who wish to prevent

19

their children from doing so). Thus, for the same reasons, the Title X program simply does not deprive Plaintiff of his liberty interest in directing the upbringing of his children.

Accordingly, Claim No. 2 fails and must be dismissed.

**C.    Claim No. 3 Fails Because the Title X Program Does Not Substantially Burden Plaintiff's Exercise of His Religion**

Plaintiff's RFRA claim fails for similar reasons. To state a claim for relief under RFRA, Plaintiff bears the initial burden to demonstrate that the Title X program "substantially burden[s]" his exercise of religion. 42 U.S.C. § 2000bb–1(a); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 719 (2014). If he satisfies this threshold requirement, the burden shifts to the government to show that the challenged action is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000bb–1(b); *Hobby Lobby*, 573 U.S. at 726.

Plaintiff's RFRA claim fails at the threshold, as Plaintiff cannot show that the Title X program imposes a substantial burden on his religious exercise. The availability of voluntary family planning services from Title X does not require or coerce Plaintiff or his daughters into taking any action whatsoever, much less an action that would violate Plaintiff's religious beliefs. Because Plaintiff fails to satisfy this threshold, Defendants need not address Plaintiff's allegations concerning whether the challenged provision of the Title X program advances a compelling governmental interest through the least restrictive means.

By simply making grants to third parties for the provision of voluntary family planning services, the Title X program does not substantially burden Plaintiff's religious liberty. A plaintiff has not established a substantial burden if he "can identify 'no compelled action or forbearance on his part.'" *Priests for Life v. U.S. Dep't of Health & Human Servs.*, 808 F.3d 1, 7 (D.C. Cir. 2015) (Kavanaugh, J., dissenting from denial of rehearing en banc) (brackets and citation omitted) (collecting cases); *see, e.g.*, *Bowen v. Roy*, 476 U.S. 693, 699-700 (1986)

20

(plaintiff could not establish a substantial burden based on his objection to the government's independent use of his daughter's social security number when he was not required to do (or not do) anything). Here, Plaintiff has not identified anything in the voluntary Title X program that requires him or his daughters to do or refrain from doing anything. Plaintiff and his daughters remain free to choose not to participate in the Title X program, and Plaintiff may continue to teach his children that their religious beliefs prohibit them from seeking family planning services prior to marriage. For much the same reason that this voluntary grant program does not burden Plaintiff's parental liberty, the program also does not burden Plaintiff's religious exercise. *Cf. Anspach*, 503 F.3d at 274 (rejecting similar free exercise challenge to health clinic's provision of emergency contraception to minor without parental notification or consent).

Plaintiff nevertheless alleges that the Title X program "substantially burdens the exercise of religion by subverting the ability of parents to raise their children in accordance with Christian beliefs . . . and by enabling children to access prescription contraception and other family-planning services." Compl. ¶ 40. But "enabling" minors to access confidential family-planning services against Plaintiff's wishes does not require Plaintiff to do or refrain from doing anything. As the Supreme Court has observed, "incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs, [do not] require government to bring forward a compelling justification for its otherwise lawful actions." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450-51 (1988). The substantial-burden framework does not "require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens." *Id.* at 448 (quoting *Roy*, 476 U.S. at 699-700)). Plaintiff remains free to practice his religion and to instruct his daughters to avoid certain behaviors and

21

not to participate in family planning services prior to marriage or without his knowledge or consent. The provision of federal funding for services of which Plaintiff chooses not to avail himself, and of which he hopes his children similarly will choose not to avail themselves, does not constitute a substantial burden on Plaintiff's religious exercise. *Hobby Lobby*, 573 U.S. at 725-26; *Lyng*, 485 U.S. at 451.

Because the Title X program funds voluntary family planning services which in no way coerce or require Plaintiff or his daughters to violate Plaintiff's religious beliefs, the program does not substantially burden Plaintiff's continued free exercise of his religion. For this reason, Plaintiffs' RFRA claim should be dismissed at the threshold.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted.

Dated:  June 19, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

/s/ *Amber Richer*
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov

*Attorneys for Defendants*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2020, I electronically transmitted the foregoing to the parties and the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

/s/ *Amber Richer*
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov
