UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **Alexander R. Deanda**, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Alex M. Azar II**, in his official capacity as Secretary of Health and Human Services; **Diane Foley**, in her official capacity as Deputy Assistant Secretary for Population Affairs; **United States of America**,<br><br>Defendants. | Case No. 2:20-cv-00092-Z |

**AMENDED BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

H. DUSTIN FILLMORE III
Texas Bar No. 06996010
CHARLES W. FILLMORE
Texas Bar No. 00785861
The Fillmore Law Firm, LLP
1200 Summit Avenue, Suite 860
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

ALEX YARBROUGH
Texas Bar No. 24079615
Riney & Mayfield LLP
320 South Polk Street, Suite 600
Amarillo, Texas 79101
(806) 468-3202 (phone)
(806) 376-4509 (fax)
ayarbrough@rineymayfield.com

*Counsel for Plaintiff
and the Proposed Classes*

## TABLE OF CONTENTS

Table of contents .................................................................................................. i

Table of authorities ............................................................................................. ii

    I.  Mr. Deanda has standing ...................................................................... 1

        A.  Mr. Deanda and the putative class are suffering Article III injury from the loss of their statutory rights under section 151.001(6) of the Texas Family Code ........................................................................ 2

        B.  The defendants are inflicting immediate, present-day injury on Mr. Deanda and the putative class by subverting their authority as parents ............................................................................................... 5

        C.  The defendants are inflicting immediate, present-day injury on Mr. Deanda and the putative class by depriving them of the assurance that their children will be unable to access family-planning services ........ 6

        D.  The defendants are inflicting immediate, present-day injury on Mr. Deanda and the putative class by subjecting them to an increased risk that their children might access birth control without their knowledge or consent ........................................................................ 7

    II.  Mr. Deanda has stated a claim on which relief may be granted ..................... 9

        A.  The Title X statute does not preempt section 151.001(6) ....................... 9

        B.  The defendants' administration of the Title x program violates the constitutional right of parents to direct the upbringing of their children ............................................................................................. 13

        C.  The plaintiff withdraws the federal RFRA claim ................................... 14

Conclusion ...................................................................................................... 15

Certificate of service ....................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Building and Construction Trades Council of the Metropolitan District v. Associated Builders and Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218 (1993) .................................................................. 10

*Camreta v. Greene*, 563 U.S. 692 (2011) ............................................................. 12

*Constellation Energy Commodities Group, Inc. v. FERC*, 457 F.3d 14 (D.C. Cir. 2006) .................................................................. 8

*Diamond v. Charles*, 476 U.S. 54 (1986) .................................................................. 4

*Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018) .................................................................. 12

*Friends Of Marolt Park v. U.S. Dep't of Transportation*, 382 F.3d 1088 (10th Cir. 2004) .................................................................. 8

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ...................................... 1, 4

*In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625 (3d Cir. 2017) .................................................................. 4

*Johnson v. Allsteel, Inc.*, 259 F.3d 885 (7th Cir. 2001) ....................................... 7–8

*Kansas v. Garcia*, 140 S. Ct. 791 (2020) .................................................................. 12

*Magwood v. Patterson*, 561 U.S. 320 (2010) ......................................................... 12

*Maryland v. Louisiana*, 451 U.S. 725 (1981) ......................................................... 10

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ........................................................ 2, 7

*Milner v. Department of the Navy*, 562 U.S. 562 (2011) ..................................... 12

*Missouri Coalition for Environment v. FERC*, 544 F.3d 955 (8th Cir. 2008) .................................................................. 8

*Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996) .................................................................. 7

*Natural Resources Defense Council v. EPA*, 464 F.3d 1 (D.C. Cir. 2006) .................................................................. 7

*NFIB v. Sebelius*, 567 U.S. 519 (2012) .................................................................. 11

*Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846 (9th Cir. 2005) .................................................................. 8

*Parents United For Better Schools, Inc. v. School District of Philadelphia Board of Education*, 148 F.3d 260 (3d Cir. 1998) ............................................. 6

*Parents United For Better Schools, Inc. v. School District of Philadelphia Board of Education*, 646 A.2d 689 (Pa. Cmwlth. 1994) ................................. 6, 7

*Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1 (1981) ................. 11

*South Dakota v. Dole*, 483 U.S. 203 (1987) ............................................................ 11

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) ......................................................... 4

*Stewart v. Blackwell*, 444 F.3d 843 (6th Cir. 2006).................................................. 8

*Sutton v. St. Jude Medical S.C., Inc.*, 419 F.3d 568 (6th Cir. 2005)......................... 7

*Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*,
   528 F.3d 712 (10th Cir. 2008) .................................................................. 1, 4

*Village of Elk Grove Village v. Evans*, 997 F.2d 328 (7th Cir. 1993) ....................... 8

*Warth v. Seldin*, 422 U.S. 490 (1975) ..................................................................... 4

*Washington v. Glucksberg*, 521 U.S. 702 (1997)..................................................... 14

*Will v. Michigan Dep't of Police*, 491 U.S. 58 (1989) ............................................. 11

**Statutes**

42 U.S.C. § 300(a)............................................................................................. passim

Tex. Family Code § 151.001(6) ...................................................................... 1, 2

I.   **MR. DEANDA HAS STANDING**

The defendants' implementation of the Title X program injures Mr. Deanda and the class members in four separate and distinct ways.

First, the law of Texas gives Mr. Deanda and each of the class members a statutory right to consent to their child's medical and dental care, and psychiatric, psychological, and surgical treatment. *See* Tex. Family Code § 151.001(6). The defendants have taken away this statutory right by insisting that Title X "preempts" section 151.001(6), and by administering a federal program that refuses to honor the state-law rights that Texas confers on parents. The federal government's removal of these state-law rights and protections—standing alone—is sufficient to establish injury in fact for Mr. Deanda or any parent in Texas who would otherwise be entitled to consent to their child's medical treatment under section 151.001(6). *See* Complaint (ECF No. 1) at ¶ 24(a); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) ("[T]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." (citation and internal quotation marks omitted)); *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 721 (10th Cir. 2008) ("Although Article III standing is a question of federal law, state law may create the asserted legal interest.").

Second, the defendants' implementation of the Title X program inflicts immediate, present-day injury on Mr. Deanda and the putative class members by subverting their authority as parents. *See* Complaint (ECF No. 1) at ¶ 24(b). The mere fact that the federal government is administering a program that offers contraception to minors without parental knowledge or consent undermines the authority of parents who want to prevent their children from accessing birth control and family-planning services. And it renders parents such as Mr. Deanda unable to prevent their children from accessing contraception or other family-planning services behind their backs. This erosion of parental authority and control inflicts present-day injury in fact—regardless

of whether Mr. Deanda's children are actually obtaining birth control from Title X participants.

Third, Mr. Deanda is suffering present-day injury in fact from the loss of assurance that his children will be unable to access prescription contraception or other family-planning services, because the Title X program is offering these services to all minors in Texas without any requirement of parental notification or consent. *See* Complaint (ECF No. 1) at ¶ 24(c).

Fourth, the defendants' actions are inflicting present-day injury on Mr. Deanda and the putative class members by increasing the risk that their children might access birth control without their knowledge and consent. *See Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) ("[E]ven a small probability of injury is sufficient to create a case or controversy — to take a suit out of the category of the hypothetical — provided of course that the relief sought would, if granted, reduce the probability" (citation and internal quotation marks omitted)). It is not necessary for a plaintiff to allege or prove that his children actually *will* seek or obtain family-planning services from a Title X participant, as the defendants argue,[1] and it has long been established that an act that increases the risk of a future harm imposes present-day injury on those who are subjected to the increased risk.

### A. Mr. Deanda And The Putative Class Are Suffering Article III Injury From The Loss Of Their Statutory Rights Under Section 151.001(6) of the Texas Family Code

The law of Texas gives Mr. Deanda and the putative class members a statutory right to consent to their children's medical treatment. *See* Tex. Family Code § 151.001(6). The defendants have taken away this statutory right from Mr. Deanda

---

1. *See* Defs.' Br. (ECF No. 11) at 10 ("Plaintiff does not allege that his daughters have attempted in the past or intend in the future to seek or obtain family planning services from a Title X clinic. Plaintiff, therefore, cannot sustain his burden to demonstrate an Article III case or controversy because Plaintiff lacks standing.").

by insisting that Title X "preempts" section 151.001(6), and by establishing a federal program that refuses to honor the state-law rights that Texas confers on parents. The removal of these state-law rights and protections inflicts injury in fact, regardless of whether Mr. Deanda can allege or prove that his children have been using the Title X program to obtain birth control behind his back.

The loss of the right to consent to a child's medical treatment inflicts injury in fact *per se*, and there is no need to establish additional harms beyond the lost prerogative. Imagine a divorce decree that gives one of the spouses the authority to consent to a child's access to birth control without notifying or obtaining consent from the other spouse. The spouse who has been denied the prerogative to consent would surely have standing to appeal a divorce decree of this sort, even if there is no way to know whether the child will ever seek to obtain family-planning services. The loss of the parental right to consent to treatment *is* injury in fact. And when a parent is told that his state-law right to consent to his child medical treatment has been taken away or transferred to someone else, he will have standing to sue to reclaim that right—and he need not wait for an actual medical situation to arise before suing to recover his right to consent.

So too here. Mr. Deanda's state-law right to consent before his child obtains prescription contraception has been taken away and transferred to the federal government and the participants in its Title X program. The loss of that state-law prerogative inflicts Article III injury, and Mr. Deanda may sue to reclaim that state-law right. He need not wait until one of his daughters attempts to access prescription contraception through the Title X program; indeed, Mr. Deanda is unlikely to know whether this is happening because the Title X program flouts the Texas laws that require parental notification and consent before dispensing prescription contraception to minors. Mr. Deanda's injury comes the removal of his state-law right to consent to his daughters'

medical treatment, and that is the injury that Mr. Deanda is seeking to redress in this litigation.

The Supreme Court has long held that Congress and the states may create legally cognizable rights in their statutes, and the deprivation of these statutory rights can inflict Article III injury without any additional showing of harm. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) ("[T]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." (citation and internal quotation marks omitted)); *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (same); *Diamond v. Charles*, 476 U.S. 54, 65 n. 17 (1986) ("The Illinois Legislature, of course, has the power to create new interests, the invasion of which may confer standing. In such a case, the requirements of Art. III may be met."); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." (citations omitted)); *see also In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 635 (3d Cir. 2017) ("[I]n some circumstances, that the breach of a statute is enough to cause a cognizable injury—even without economic or other tangible harm."); *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 721 (10th Cir. 2008) ("Although Article III standing is a question of federal law, state law may create the asserted legal interest."). The statutory rights established in section 151.001(6) give Mr. Deanda and the class members the prerogative to consent before their children obtain prescription contraception. The federal government's decision to strip Mr. Deanda and the putative class of the parental prerogatives conferred by section 151.001(6) inflicts injury in fact, without any need to show additional harm beyond the loss of their state-law statutory rights.

### B. The Defendants Are Inflicting Immediate, Present-Day Injury On Mr. Deanda And The Putative Class By Subverting Their Authority As Parents

Of course, Mr. Deanda and the class members are suffering additional injuries that extend beyond the mere loss of their statutory rights under section 151.001(6). One of those injuries is the subversion of their authority as parents. When the federal government is administering a program that offers contraception to minors without parental knowledge or consent, it undermines the authority of parents by *allowing* their children to obtain birth control behind their parents' back. This makes it impossible for parents to prevent their children from accessing family-planning services, and it erodes parental authority by giving federal officials and Title X participants the ultimate authority to decide whether a child should have access to birth control. The mere existence of this regime inflicts injury in fact on parents who want to prevent their children from accessing family-planning services, because it deprives them of the ability to prevent their children from obtaining and using birth control. And this injury exists regardless of whether their children actually obtain (or try to obtain) family-planning services from the Title X program.

All of this is described in Mr. Deanda's complaint, which explains how the defendants are inflicting immediate, present-day injury on the class by subverting their authority as parents. *See* Complaint (ECF No. 1) at ¶ 24(b). So we are at a loss to understand how the defendants can insist that Mr. Deanda "does not allege any actual present or past harm; rather he asserts 'only a [purported] injury at some indefinite future time.'" *See* Defs.' Br. (ECF No. 11) at 11 (citation omitted). The lost ability to prevent one's children from accessing family-planning services is an immediate, present-day injury—and that injury does not in any way depend on whether one's children are actually obtaining (or trying to obtain) birth control from Title X participants. It is no different from a public school that decides to distribute condoms without parental notification or consent. A parent whose children attend that school

would have standing from the mere fact that condoms have been made available; he would not need to allege or show that his children would actually obtain (or try to obtain) the prophylactics. *See Parents United For Better Schools, Inc. v. School District of Philadelphia Board of Education*, 148 F.3d 260 (3d Cir. 1998) (allowing parents to challenge condom-distribution program in the Philadelphia public schools on the ground that it subverts their authority as parents, while rejecting the parents' challenge to the program on the merits); *Parents United For Better Schools, Inc. v. School District of Philadelphia Board of Education*, 646 A.2d 689, 691 (Pa. Cmwlth. 1994) (holding that parents have standing to challenge condom-distribution program in the Philadelphia public schools, even though the program allowed parents to opt their children out of the program by mailing in a "veto form," because parents suffered injury from the loss of their prerogative to "consent . . . before medical treatment [is] provided").

### C. The Defendants Are Inflicting Immediate, Present-Day Injury On Mr. Deanda And The Putative Class By Depriving Them Of The Assurance That Their Children Will Be Unable To Access Family-Planning Services

A closely related injury is that Mr. Deanda and the class have lost the assurance that their children will be unable to access family-planning services against their wishes. The law of Texas provided this assurance in section 151.001(6) of the Texas Family Code, which outlaws the distribution of prescription contraception to minors without parental consent. The defendants' conduct removes the assurance that the law of Texas would otherwise provide. Now the class members can only wonder whether their children are obtaining prescription contraception and other birth control behind their back.

This injury—like the subversion-of-parental-authority injury—was described in Mr. Deanda's complaint. *See* Complaint (ECF No. 1) at ¶ 24(c). And this is an immediate, present-day injury rather than a speculative or contingent future harm. Yet

the defendants' motion to dismiss does not address this injury either, and it insists (wrongly) that the complaint fails to allege *any* present-day harm. *See* Defs.' Br. (ECF No. 11) at 11. An injury of this sort would sustain a parental challenge to a school district's condom-distribution program. *See Parents United*, 646 A.2d 689. No different result should obtain when the condoms and birth control are distributed by the federal government.

> D. **The Defendants Are Inflicting Immediate, Present-Day Injury On Mr. Deanda And The Putative Class By Subjecting Them To An Increased Risk That Their Children Might Access Birth Control Without Their Knowledge Or Consent**

Finally, Mr. Deanda and the putative class have standing because the defendants' conduct subjects them to an increased risk that their children might access birth control without their knowledge and consent. *See Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) ("[E]ven a small probability of injury is sufficient to create a case or controversy—to take a suit out of the category of the hypothetical—provided of course that the relief sought would, if granted, reduce the probability" (citation and internal quotation marks omitted)).

It has long been established that an act that increases the risk of a future harm imposes present-day injury on those who are subjected to the increased risk—even if the actual risk of the future harm occurring is small. *See Massachusetts*, 549 U.S. at 525 n.23; *Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228, 1234–35 (D.C. Cir. 1996) (plaintiff established standing to challenge the government's decision to limit timber harvesting by alleging an increased risk of wildfires); *Natural Resources Defense Council v. EPA*, 464 F.3d 1, 7 (D.C. Cir. 2006) (plaintiffs established standing to challenge government decision deregulating methyl bromide by alleging an increased lifetime risk of developing skin cancer); *Sutton v. St. Jude Medical S.C., Inc.*, 419 F.3d 568, 570–75 (6th Cir. 2005) (standing based on increased risk of harm caused by implantation of defective medical device); *Johnson v. Allsteel, Inc.*,

259 F.3d 885, 888–91 (7th Cir. 2001) (standing based on increased risk that Employee Retirement Income Security Act beneficiary will not be covered due to increased amount of discretion given to ERISA administrator); *id.* at 888 ("The increased risk the participant faces as a result is an injury-in-fact."); *Village of Elk Grove Village v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993) (finding standing because "[t]he Village is in the path of a potential flood" and "even a small probability of injury is sufficient to create a case or controversy."); *Missouri Coalition for Environment v. FERC*, 544 F.3d 955, 957 (8th Cir. 2008) (holding that "a potentially increased risk of environmental harm" is sufficient to confer Article III standing); *Friends Of Marolt Park v. U.S. Dep't of Transportation*, 382 F.3d 1088, 1095 (10th Cir. 2004) (plaintiff established Article III standing by alleging "an increased risk of harm" to a park that its members use for recreational purposes); *Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 860 (9th Cir. 2005) (plaintiff established Article III standing to challenge an oil tanker dock expansion by alleging an "increase in the risk of an oil spill"); *id.* ("[T]he alleged injury is not conjectural or hypothetical, as 'an increased risk of harm can itself be injury in fact for standing'" (quoting *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000)); *Constellation Energy Commodities Group, Inc. v. FERC*, 457 F.3d 14, 20 (D.C. Cir. 2006) ("We agree with Edison that the increased risk of non-recovery inherent in the reduction of collateral securing a debt of uncertain amount is sufficient to support its standing."); *Stewart v. Blackwell*, 444 F.3d 843, 855 (6th Cir. 2006), vacated and superseded on other grounds, 473 F.3d 692 (6th Cir. 2007) ("The plaintiffs here have alleged an injury in fact sufficient to confer Article III standing. The increased probability that their votes will be improperly counted based on punch-card and central-count optical scan technology is neither speculative nor remote.").

There is no question that the defendants' implementation of the Title X program increases the risk that the children of Mr. Deanda and the class will obtain birth control against their parents' wishes, because it purports to preempt a Texas statute that *requires* parental consent before dispensing prescription contraception to minors. That alone suffices to establish standing under *Massachusetts* and the cases cited above, so long as the requested relief will "reduce" this risk. The government is correct to observe that rank speculation cannot support standing under Article III, but there is nothing speculative about the assertion that the defendants' administration of Title X increases the risk of Mr. Deanda's children accessing family-planning services without his knowledge and consent, and there is nothing speculative about his claim that the requested relief will reduce that risk. The imposition of this increased risk imposes a certain, present-day injury on Mr. Deanda and the class members, and the existence of that injury does not depend on speculation about what might happen in the future.

## II.   Mr. Deanda Has Stated A Claim On Which Relief May Be Granted

The defendants insist that section 151.001(6) is preempted by the Title X statute, and they deny that the Title X program, as currently administered, violates the constitutional right of parents to direct the upbringing of their children or the Religious Freedom Restoration Act. We will address each of these arguments in the order in which they appear in the government's brief.

### A.   The Title X Statute Does Not Preempt Section 151.001(6)

There is no conceivable conflict between the text of 42 U.S.C. § 300(a) and the parental-consent requirement of section 151.001(6). The full text of 42 U.S.C. § 300(a) provides:

> The Secretary is authorized to make grants to and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and

> services (including natural family planning methods, infertility services, and services for adolescents). To the extent practical, *entities which receive grants or contracts under this subsection shall encourage family participation in projects assisted under this subsection.*

42 U.S.C. § 300(a) (emphasis added). This statutory language establishes a *floor* for Title X funding recipients: Every recipient of a Title X grant or contract must, "to the extent practical . . . encourage family participation" in Title X projects. An entity that fails to "encourage family participation" in Title X projects is categorically eligible to receive a Title X grant or contract, and the Secretary violates the Title X statute if he provides grants or contracts to such an entity.

But nothing in this statutory language prohibits Title X funding recipients from going beyond a mere policy of "encouraging family participation," and nothing in the statute prevents Title X projects from establishing a categorical policy of notifying or seeking consent from parents before dispensing prescription contraception or other family-planning services to minors. More importantly, there is nothing in 42 U.S.C. § 300(a) that purports to preempt or override state or federal laws that require more extensive parental involvement, and there is nothing in 42 U.S.C. § 300(a) that purports to exempt Title X projects from those laws.

This statutory language comes nowhere close to overcoming the presumption against preemption that applies to federal legislation. *See Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law."); *Building and Construction Trades Council of the Metropolitan District v. Associated Builders and Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 224 (1993) ("We are reluctant to infer pre-emption.").

More importantly, the Supreme Court has repeatedly held that conditions on the receipt of federal funds must be spelled out in clear and unambiguous language. *See*

*Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981) ("[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously."); *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (same); *Will v. Michigan Dep't of Police*, 491 U.S. 58, 65 (1989) ("Congress should make its intention 'clear and manifest' . . . if it intends to impose a condition on the grant of federal moneys" (citation omitted); *see also NFIB v. Sebelius*, 567 U.S. 519, 576–77 (2012) (opinion of Roberts, C.J., joined by Breyer and Kagan, JJ.); *id*. at 676 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting). Because Title X is an exercise of the federal spending power, there must be a clear and unambiguous statement that participating States are forbidden to enforce their parental-involvement laws against Title X projects before the Texas laws can be deemed "preempted" by the Title X statute.

The government's brief does not acknowledge or discuss any of this. No analysis of the statutory text. No acknowledgement of the presumption against preemption—and no argument for how the language of 42 U.S.C. § 300(a) could overcome that presumption. And no discussion of *Pennhurst*'s clear-statement rule, even though the government's interpretation of 42 U.S.C. § 300(a) purports to impose "conditions on the grant of federal moneys" that need to be spelled out in clear and unambiguous statutory language. *See Pennhurst*, 451 U.S. at 17; *NFIB*, 567 U.S. at 576–77 (opinion of Roberts, C.J., joined by Breyer and Kagan, JJ.); *id*. at 676 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting).

Most importantly, the government never attempts to explain how section 151.001(6) can possibly contradict a federal statute that merely requires Title X recipients to "encourage family participation." This statute does nothing more than establish the *minimum* requirement for Title X participants on the issue of family involvement. There is nothing in 42 U.S.C. § 300(a) that prevents a Title X recipient from going beyond this mandatory minimum, and there is nothing in 42 U.S.C.

§ 300(a) that purports to exempt Title X entities from state laws that require additional parental involvement. A state law would be preempted if it *prohibited* Title X recipients from "encouraging family participation," but section 151.001(6) does nothing of the sort.

The government is certainly correct to observe that other courts have held that Title X "preempts" state parental-notification and consent laws. *See* Defs.' Br. at 5–8, 14–17. But none of those cases are binding authority, and they may not be followed unless this Court, in its independent judgment, finds them persuasive. *See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Milner v. Department of the Navy*, 562 U.S. 562, 576 (2011) ("[W]e have no warrant to ignore clear statutory language on the ground that other courts have done so."). And none of these court rulings have explained *how* the language of 42 U.S.C. § 300(a) can possibly preempt parental-consent laws such as section 151.001(6). As we have explained, the text of 42 U.S.C. § 300(a) establishes a *floor* and not a ceiling for parental involvement. *See* 42 U.S.C. § 300(a) ("To the extent practical, entities which receive grants or contracts under this subsection *shall encourage family participation in projects assisted under this subsection*." (emphasis added)). None of the court decisions that find "preemption" acknowledge this inconvenient fact. Instead, the opinions ruminate about Congress's "purposes" and "intentions" and cite committee reports, which is not law of any sort. *See Magwood v. Patterson*, 561 U.S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Congress' intent."); *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018) ("[L]egislative history is not the law."). The enacted language of 42 U.S.C. § 300(a) is the *only* relevant consideration, and any argument for preemption must be grounded in what that statute actually says. *See Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020) ("In all cases, the federal restrictions or rights that are said to conflict with state law must stem from either the Constitution itself or a valid statute

enacted by Congress."); *id*. ("There is no federal preemption *in vacuo*, without a constitutional text, federal statute, or treaty made under the authority of the United States." (citation and internal quotation marks omitted)).

The government seems to think that the brute fact that other courts have found that 42 U.S.C. § 300(a) "preempts" state parental-consent laws is somehow a reason for this Court to do the same. But none of those cases present an argument based on the language of 42 U.S.C. § 300(a), and neither does the government's brief. There is simply no conflict between a federal statute that requires Title X entities to "encourage family participation" and a state statute that requires those entities to obtain parental consent before dispensing prescription contraception to minors. And until the government can explain *how* the text of 42 U.S.C. § 300(a) contradicts the laws of Texas, its preemption argument cannot get off the ground.

### B. The Defendants' Administration Of The Title X Program Violates The Constitutional Right Of Parents To Direct The Upbringing Of Their Children

The government thinks that the constitutional right of parents to direct the upbringing of their children is implicated only by coercive government policies, rather than by voluntary programs that merely offer birth control and prescription contraception to minors without obtaining parental consent. Mr. Deanda thinks the constitutional right of parents extends more broadly and is implicated by government measures that subvert parental authority by allowing children to obtain medical treatment against their parents' wishes and without their parents' knowledge.

Disagreement over the scope of this constitutional right is understandable, because this right does not appear anywhere in the text of the Constitution. It is a court-created "substantive due process" right, and its contours are defined by judicial precedent rather than by anything that the Constitution says. But the Supreme Court has told us that the test for a "fundamental" right turns on whether the asserted right is

"deeply rooted in this Nation's history and tradition," and it requires courts to apply a "careful description" of the asserted fundamental liberty interest. *See Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). The right of parents to consent to the medical treatment of their children is assuredly an interest that is "deeply rooted in this Nation's history and tradition," and the government does not argue to the contrary. Any infringement on this right should therefore be subjected to strict scrutiny, which allows the government to override this right only when necessary to advance a compelling governmental interest.

The government would certainly have a compelling governmental interest in overriding the wishes of parents who seek to deny life-saving medical treatment to their children, and it might have a compelling interest in requiring vaccinations over parental objections. But there is no such "compelling" interest at stake when it comes to the provision of birth control. These are not matters of life or death, and parental authority cannot be subordinated to the views of federal officials or Title X entities who think they can make better decisions regarding a child's welfare.

### C. The Plaintiff Withdraws The Federal RFRA Claim

In response to the government's motion to dismiss, Mr. Deanda withdraws his claim under the Religious Freedom Restoration Act and will omit that claim from his next amended complaint.

## CONCLUSION

The defendants' motion to dismiss should be denied.

Respectfully submitted.

|  |  |
|---|---|
|  | */s/* Jonathan F. Mitchell |
| H. Dustin Fillmore III | Jonathan F. Mitchell |
| Texas Bar No. 06996010 | Texas Bar No. 24075463 |
| Charles W. Fillmore | Mitchell Law PLLC |
| Texas Bar No. 00785861 | 111 Congress Avenue, Suite 400 |
| The Fillmore Law Firm, LLP | Austin, Texas 78701 |
| 1200 Summit Avenue, Suite 860 | (512) 686-3940 (phone) |
| Fort Worth, Texas 76102 | (512) 686-3941 (fax) |
| (817) 332-2351 (phone) | jonathan@mitchell.law |
| (817) 870-1859 (fax) |  |
| dusty@fillmorefirm.com | Alex Yarbrough |
| chad@fillmorefirm.com | Texas Bar No. 24079615 |
|  | Riney & Mayfield LLP |
|  | 320 South Polk Street, Suite 600 |
|  | Amarillo, Texas 79101 |
|  | (806) 468-3202 (phone) |
|  | (806) 376-4509 (fax) |
|  | ayarbrough@rineymayfield.com |
|  |  |
|  | *Counsel for Plaintiff* |
| Dated: July 10, 2020 | *and the Proposed Classes* |

## CERTIFICATE OF SERVICE

I certify that on July 10, 2020, I served this document through CM/ECF upon:

AMBER RICHER
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
 (202) 514-3489
amber.richer@usdoj.gov

*Counsel for the Defendants*

        /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff
and the Proposed Classes*