# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

|  |  |  |
|---|---|---|
| ALEXANDER R. DEANDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 2:20-cv-92-Z |
| XAVIER BECERRA, in his official capacity as | ) | |
| Secretary of Health and Human Services; | ) | |
| JESSICA SWAFFORD MARCELLA, in her official | ) | |
| capacity as Deputy Assistant Secretary for | ) | |
| Population Affairs; UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

SUMMARY ..................................................................................................................... 1

BACKGROUND ............................................................................................................. 3

   I.     Statutory and Regulatory Background ........................................................... 3

       A.    Title X of the Public Health Service Act ................................................. 3

       B.    History of Litigation Concerning Minors' Access to Confidential Family
            Planning Services Under Title X .............................................................. 5

   II.    Current Proceedings......................................................................................... 9

STANDARD OF REVIEW ........................................................................................... 10

ARGUMENT ................................................................................................................. 11

   I.     Defendants Are Entitled to Summary Judgment Because Plaintiff Cannot
        Establish Subject Matter Jurisdiction........................................................... 11

       A.    The Statute of Limitations Bars Plaintiff's Claims.............................. 11

       B.    Plaintiff Lacks Standing........................................................................... 13

   II.    Defendants Are Entitled to Summary Judgment on Both Claims ............... 21

       A.    Defendants Are Entitled to Summary Judgment on Claim No. 1 Because
           State Law Cannot Require Parental Notification or Consent for Title X
           Family Planning Services ......................................................................... 21

       B.    Defendants Are Entitled to Summary Judgment on Claim No. 2 Because
           the Title X Family Planning Services Grant Program Does Not
           Unreasonably Interfere with Plaintiff's Parental Right to Direct the
           Upbringing of His Children ...................................................................... 25

           1.     The Availability of Voluntary Family Planning Services
                 Through Title X-Funded Projects Does Not Interfere with
                 Parents' Ability to Make Decisions Concerning the Upbringing
                 of Their Minor Children.................................................................. 26

           2.     Title X Reasonably Achieves Multiple Legitimate Government
                 Interests ........................................................................................... 31

   III.   Even if the Court Were to Award Relief, Any Injunction Should Be Limited to
        the Plaintiff..................................................................................................... 34

CONCLUSION.............................................................................................................. 36

i

# TABLE OF AUTHORITIES

**CASES**

*Amerisure Ins. Co. v. Navigators Ins. Co.*,
   611 F.3d 299 (5th Cir. 2010) ...................................................................... 11

*Anspach v. Philadelphia*,
   503 F.3d 256 (3d Cir. 2007)................................................................ *passim*

*Bostock v. Clayton Cnty.*,
   140 S. Ct. 1731 (2020)................................................................................ 22

*Castro v. United States*,
   560 F.3d 381 (5th Cir. 2009) ...................................................................... 16

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013).............................................................................. *passim*

*Cnty. of St. Charles v. Mo. Fam. Health Council*,
   107 F.3d 682 (8th Cir. 1997) ................................................................ 8, 22

*Ctr. for Biological Diversity v. EPA*,
   937 F.3d 533 (5th Cir. 2019) ...................................................................... 20

*Daniels v. United States*,
   532 U.S. 374 (2001)..................................................................................... 11

*Deotte v. Azar*,
   332 F.R.D. 173 (N.D. Tex. 2019) .............................................................. 15

*Doe v. Irwin*,
   615 F.2d 1162 (6th Cir. 1980) ............................................................. *passim*

*Doe v. Pickett*,
   480 F. Supp. 1218 (S.D. W. Va. 1979) .................................................. 9, 22

*Doe v. Tangipahoa Par. Sch. Bd.*,
   494 F.3d 494 (5th Cir. 2007) ...................................................................... 13

*Doe v. Veneman*,
   380 F.3d 807 (5th Cir. 2004) ...................................................................... 35

*Duchek v. Jacobi*,
   646 F.2d 415 (9th Cir. 1981) ...................................................................... 16

*Dunn-McCampbell Royalty Int. v. Nat'l Park Serv.*,
   112 F.3d 1283 (5th Cir. 1997) ................................................................. 11, 12, 16

*Felter v. Kempthorne*,
   473 F.3d 1255 (D.C. Cir. 2007) ........................................................................... 12

*Fero v. Excellus Health Plan, Inc.*,
   236 F. Supp. 3d 735 (W.D.N.Y. 2017) ................................................................. 17

*Fiedler v. Clark*,
   714 F.2d 77 (9th Cir. 1983) ................................................................................. 16

*Freeman v. Quicken Loans, Inc.*,
   566 U.S. 624 (2012) ............................................................................................. 22

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ......................................................................................... 35

*Ginsberg v. New York*,
   390 U.S. 629 (1968) ............................................................................................. 32

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ............................................................................................. 18

*Henderson v. Stalder*,
   287 F.3d 374 (5th Cir. 2002) ............................................................................... 13

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013) ............................................................................................. 16

*Impro Prod., Inc. v. Block*,
   722 F.2d 845 (D.C. Cir. 1983) ........................................................................... 12

*In re Papst Licensing, GmbH, Patent Litig.*,
   2000 U.S. Dist. LEXIS 18316 (E.D. La. Nov. 6, 2000) ...................................... 16

*Jane Does 1 through 4 v. Utah Dep't of Health*,
   776 F.2d 253 (10th Cir. 1985) ......................................................................... 8, 22

*Khan v. Children's Nat'l Health Sys.*,
   188 F. Supp. 3d 524 (D. Md. 2016) ................................................................... 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ............................................................................................. 10

*Lassiter v. Dep't of Soc. Servs. of Durham Cnty.*,
   452 U.S. 18 (1981) ................................................................................................ 30

*Littlefield v. Forney Indep. Sch. Dist.*,
   268 F.3d 275 (5th Cir. 2001) ............................................................................. 31

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................... *passim*

*M.L.B. v. S.L.J.*,
   519 U.S. 102 (1996) ....................................................................................... 30, 31

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) ............................................................................................ 35

*Merritt-Campbell, Inc. v. RxP Prods., Inc.*,
   164 F.3d 957 (5th Cir. 1999) ............................................................................. 10

*Meyer v. Nebraska*,
   262 U.S. 390 (1923) ............................................................................................ 27

*Miss. State Democratic Party v. Barbour*,
   529 F.3d 538 (5th Cir. 2008) ............................................................................. 14

*Moreno v. McAllen Indep. Sch. Dist.*,
   No. 7:15-cv-162, 2016 U.S. Dist. LEXIS 44108 (S.D. Tex. Mar. 31, 2016) ............... 26, 27

*Nat'l Pork Producers Council v. EPA*,
   635 F.3d 738 (5th Cir. 2011) ............................................................................. 12

*New York v. Heckler*,
   719 F.2d 1191 (2d Cir. 1983) ....................................................................... *passim*

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ............................................................................................ 20

*Oppenheim v. Campbell*,
   571 F.2d 660 (D.C. Cir. 1978) .......................................................................... 12

*Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*,
   971 S.W. 2d 439 (Tex. 1998) .............................................................................. 9

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*,
   268 U.S. 510 (1925) ............................................................................................ 27

*Planned Parenthood Ass'n of Utah v. Matheson*,
    582 F. Supp. 1001 (D. Utah 1983) ....................................................................... 9, 22

*Planned Parenthood Fed'n of Am., Inc. v. Heckler*,
    712 F.2d 650 (D.C. Cir. 1983) ................................................................... *passim*

*Planned Parenthood of Houston & Se. Tex. v. Sanchez*,
    403 F.3d 324 (5th Cir. 2005) ...................................................................... 22, 24

*Raines v. Byrd*,
    521 U.S. 811 (1997).......................................................................................... 19

*Reno v. Flores*,
    507 U.S. 292 (1993).......................................................................................... 26

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976)............................................................................................ 20

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ........................................................................... 17, 18, 19

*St. Tammany Par., ex rel. Davis v. FEMA*,
    556 F.3d 307 (5th Cir. 2009) ............................................................................ 16

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)............................................................................................ 10

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) ............................................................................ 20

*Texas v. Rettig*,
    987 F.3d 518 (5th Cir. 2021) ........................................................... 11, 12, 13, 16

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ............................................................................ 15

*Transunion LLC v. Ramirez*,
    No. 20-297, 2021 U.S. LEXIS 3409 (U.S. June 25, 2021)............................... 17, 18

*Troxel v. Granville*,
    530 U.S. 57 (2000)................................................................................... *passim*

*United States v. Flores-Martinez*,
    677 F.3d 699 (5th Cir. 2012) ............................................................................ 11

*United States v. Lindsay,*
  346 U.S. 568 (1954)...................................................................................... 12

*United States v. Nordic Vill., Inc.,*
  503 U.S. 30 (1992)........................................................................................ 16

*Ware v. S. Tex. Fam. Plan. & Health Corp.,*
  No. 09-cv-323, 2010 U.S. Dist. LEXIS 155133 (S.D. Tex. Jan. 26, 2010)......................... 9, 22

*Warth v. Seldin,*
  422 U.S. 490 (1975)...................................................................................... 20

*Washington v. Glucksberg,*
  521 U.S. 702 (1997).................................................................................. 25, 26

*Whitmore v. Arkansas,*
  495 U.S. 149 (1990)...................................................................................... 14

*Williamson v. USDA,*
  815 F.2d 368 (5th Cir. 1987) ............................................................................ 16

## CONSTITUTION

U.S. Const. art. VI, cl. 2................................................................................ 21

## STATUTES

28 U.S.C. § 2401 ................................................................................................ 11

42 U.S.C. § 300 .......................................................................................... *passim*

42 U.S.C. § 300a-5 .............................................................................................. 3

42 U.S.C. § 300z-5 ........................................................................................ 7, 23

Pub. L. No. 91-572, 84 Stat. 1504 (1970) ...................................................... 3, 24

Pub. L. No. 95-613, 92 Stat. 3093 (1978) ...................................................... 4, 25

Pub. L. No. 97-35, 95 Stat. 357 (1981) .......................................................... 4, 12

Pub. L. No. 105-277, 112 Stat. 2681 (1998) ........................................................ 5

Pub. L. No. 115-245, 132 Stat. 2981 (2018) ............................................. 5, 20, 23

Pub. L. No. 116-94, 133 Stat. 2534 (2019) ......................................................... 5

Pub. L. No. 116-260, 134 Stat. 1182 (2020) .................................................... 4, 5

Texas Family Code § 151.001 ..................................................................... 16, 17

Wash Rev. Code § 26.10.160(3) ....................................................................... 29

## LEGISLATIVE MATERIALS

H.R. Rep. No. 97-208 (1981) (Conf. Rep.) ...................................................... 6, 34

S. Rep. No. 95-102 (1977) ............................................................................ 6, 33

S. Rep. No. 95-822 (1978) ....................................................................... 25, 32, 36

## RULES

Fed. R. Civ. P. 56(c) .................................................................................... 10, 21

**REGULATIONS**

42 C.F.R. part 59 ................................................................................................................. 13

42 C.F.R. § 59.1 ................................................................................................................... 4

42 C.F.R. § 59.11 ................................................................................................................. 4

48 Fed. Reg. 3600 (Jan. 26, 1983) ..................................................................................... 6

49 Fed. Reg. 38117 (Sept. 27, 1984) .................................................................... 8, 13, 23

86 Fed. Reg. 19812 (April 15, 2021) .................................................................................. 4

**OTHER AUTHORITIES**

Tex. Health & Hum. Servs., "Adolescent Health Guide (Jan. 2016),"
    https://www.dshs.texas.gov/layouts/contentpage.aspx?pageid=29814&id=12884933660&term
    s=minor%20consent%20%22family%20planning%22 ........................................................ 24

## SUMMARY

Under Title X of the Public Health Service Act, the U.S. Department of Health and Human Services ("HHS") makes funds available to grantees who, in turn, offer voluntary, confidential family planning services to individuals, including minors, while encouraging family participation in the family planning decisions of minors. Plaintiff, a father raising three minor daughters in Texas, brings this action to restrict the availability of such federally-funded services on the basis of his personal wish that his daughters not participate in the program. Plaintiff's personal objections to a program in which neither he nor his family are required to participate cannot provide a basis to enjoin administration of the program for those who choose to seek its benefits. To hold otherwise could significantly impair the government's ability to implement myriad federal programs, due to the substantial likelihood that some individual somewhere will object to some aspect of nearly every federal program, even though they need not participate in it.

Although Plaintiff and his family remain at liberty to have nothing to do with the challenged Title X program, Plaintiff argues nonetheless that the administration of the program violates Texas state law and deprives him of his parental right to direct the upbringing of his children. As a threshold matter, Plaintiff fails to sustain his burden to demonstrate jurisdiction for two reasons. First, Plaintiff's claims are time-barred. The six-year statute of limitations bars Plaintiff's challenge to the longstanding administration of Title X without a requirement for parental involvement in the delivery of family planning services to minors. Second, even assuming the statute of limitations does not bar his claims, Plaintiff lacks standing. Plaintiff asserts that he does not want his daughters to seek or obtain family planning services from a Title X clinic without his knowledge or consent. But Plaintiff fails to set forth any evidence that this

1

alleged injury is certainly impending. Plaintiff's daughters have never sought or obtained Title X family planning services. Nor is there any evidence that his daughters intend to do so – either in the near future or ever. And, even in the hypothetical event that one of Plaintiff's children did seek such services, the requirement that Title X projects encourage minors to involve their families in family planning decisions further reduces to mere conjecture the notion that one of Plaintiff's minor children would choose to receive family planning services without his participation.

Even if Plaintiff could meet his burden to establish jurisdiction, Plaintiff's claims fail on the merits. Plaintiff's claim that Title X violates Texas state law by making prescription contraceptives available to minors without parental notification or consent lacks merit. Courts considering such a claim have consistently held that imposing a parental notification or consent requirement for minors to receive family planning services under Title X would contradict the federal Title X statute and, thus, violate the Supremacy Clause of the U.S. Constitution. Moreover, Plaintiff cannot show that the Title X program deprives him of his parental rights because the voluntary Title X program does not require Plaintiff or his daughters to take any action whatsoever. Plaintiff and his daughters remain free to choose not to obtain family planning services from a Title X clinic. Moreover, even if Plaintiff could show that Defendants' administration of the Title X program interferes with his parental rights, his claim would fail because Title X reasonably serves legitimate government interests of promoting reproductive health and reducing unplanned pregnancies for minors.

Plaintiff seeks overly broad and unduly burdensome injunctive relief that would prohibit federal funding for any family planning project that provides confidential family planning services to minors without requiring parental consent. Plaintiff has failed to show a substantial

risk of future harm necessary to obtain any injunctive relief. And he has failed all the more to show that he is entitled to such broad injunctive relief that would limit the availability of Title X family planning services to individuals who want them, regardless of whether those individuals are minors, have parents who object to such services, or live in a state with a parental consent law. Such an injunction would go beyond redressing any arguable harm to Plaintiff, imposing additional eligibility restrictions on Title X grants and thus interfering with the rights of others choosing to participate in the program.

Accordingly, Defendants are entitled to summary judgment on all claims.[1]

## **BACKGROUND**

## I.    **STATUTORY AND REGULATORY BACKGROUND**

### A.    **Title X of the Public Health Service Act**

Congress enacted Title X of the Public Health Service (PHS) Act, 42 U.S.C. §§ 300, *et seq.*, as a means of "making comprehensive voluntary family planning services readily available to all persons desiring such services." Family Planning Services and Population Research Act of 1970, Pub. L. No. 91-572, § 2(1), 84 Stat. 1504 (1970). The statute authorizes the Secretary of Health and Human Services to "make grants to and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents)." 42 U.S.C. § 300(a); *see also* 42 U.S.C. § 300a-5 (requiring that acceptance of family planning services under Title X "shall be voluntary"). Projects funded under this program provide the

---

[1] Plaintiff has withdrawn the third claim in the Complaint alleging a violation of the Religious Freedom Restoration Act. *See, e.g.,* ECF No. 14 at 14.

services "necessary to aid individuals to determine freely the number and spacing of their children." 42 C.F.R. § 59.1(a).[2]

The statute requires that Title X services be made available to adolescents. In 1978, Congress amended Title X to codify the existing agency practice of requiring that Title X projects include "services for adolescents." Pub. L. No. 95-613, § 1(a)(1), 92 Stat. 3093 (1978). In addition, HHS regulations generally mandate that participating entities maintain confidentiality with respect to individuals seeking family planning services through this program. 42 C.F.R. § 59.11 (with limited exceptions, "[a]ll information as to personal facts and circumstances obtained by the project staff about individuals receiving services must be held confidential and not be disclosed without the individual's documented consent.").

Title X also encourages family participation in the delivery of such services to minors. Congress amended the statute in 1981 to include the current requirement that, "[t]o the extent practical," participating entities "shall encourage familiy [sic] participation in projects assisted under this subsection." 42 U.S.C. § 300(a); Pub. L. No. 97-35, § 931(b)(1), 95 Stat. 357 (1981). Similarly, since 1997, Congress has included in annual appropriations acts the condition that, to receive Title X funds, participating entities must certify that they do, in fact, encourage family participation in minors' decisions to seek family planning services through the Title X program:

> None of the funds appropriated in this Act may be made available to any entity under Title X of the [Public Health Service] Act unless the applicant for the award certifies to the Secretary that it encourages family participation in the decision of minors to seek family planning services and that it provides counseling to minors on how to resist attempts to coerce minors into engaging in sexual activities.

*See, e.g.,* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, Div. H, § 207,

---

[2] HHS recently published a proposed rule concerning Title X. Ensuring Access to Equitable, Affordable, Client-Centered, Quality Family Planning Services, 86 Fed. Reg. 19812 (April 15, 2021).

134 Stat. 1182, 1590 (2020); Further Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, Div. A, Title II, Department of Health and Human Services Appropriations Act, 2020, § 207, 133 Stat. 2534, 2578 (2019); Department of Defense and Labor, Health and Human Services, and Education Appropriations Act, 2019 and Continuing Appropriations Act, 2019, Pub. L. No. 115-245, Div. B, Title II, Department of Health and Human Services Appropriations Act, 2019, § 207, 132 Stat. 2981, 3090 (2018); Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 1998, Public Law 105-78, § 212, 111 Stat. 1467, 1495 (1997).

In addition, since Fiscal Year 1999, in a separate rider, Congress has required that, "[n]otwithstanding any other provision of law, no provider of services under Title X of the PHS Act shall be exempt from any State law requiring notification or the reporting of child abuse, child molestation, sexual abuse, rape, or incest." *See, e.g.,* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, Div. H, § 208, 134 Stat. at 1590; Department of Health and Human Services Appropriations Act, 1999, Pub. L. No. 105-277, Title II, § 219, 112 Stat. 2681, 2681-363 (1998).

**B.      History of Litigation Concerning Minors' Access to Confidential Family Planning Services Under Title X**

Minors' access to confidential family planning services under Title X has been litigated for decades, and courts have consistently found parental notification or consent requirements to be contrary to the Title X statute.

In 1983, HHS issued regulations that would have required Title X grantees to notify a parent or guardian within ten working days of initially providing prescription drugs or prescription devices to an unemancipated minor, except where the notification would result in physical harm to the minor or when the prescription drugs were provided to treat sexually

transmitted disease. Parental Notification Requirements Applicable to Projects for Family Planning Services, Final Rule, 48 Fed. Reg. 3600, 3614 (Jan. 26, 1983). The regulations also would have required compliance with state laws requiring parental notification or consent with respect to the provision of family planning services. *Id.*

The D.C. Circuit held these regulations were contrary to the statute, and the regulations never took effect. *Planned Parenthood Fed'n of Am., Inc. v. Heckler*, 712 F.2d 650, 651 (D.C. Cir. 1983). The court viewed the challenge to those regulations as "a straightforward issue of statutory construction[,]" and held that the Title X statute precludes a requirement of parental involvement in the delivery of family planning services to minors under Title X. *Id.* at 654. The court emphasized the statute's use of the word "encourage," a "permissive and non-obligatory term," as well as the "qualifier 'to the extent practical.'" *Id.* at 656. The court also reasoned that "the regulations are fundamentally inconsistent with Congress' intent and purpose in enacting Title X and are therefore beyond the limits of the Secretary's delegated authority." *Id.* at 651. The court cited the Conference Committee Report accompanying the 1981 statutory amendment, which stated: "[W]hile family involvement is not mandated, it is important that families participate in the activities authorized by this statute as much as possible. It is the intent of the conferees that grantees will encourage participants in Title X programs to include their families in counseling and involve them in decisions about services." *Id.* at 657 (citing H.R. Rep. No. 97-208, at 799 (1981) (Conf. Rep.)). Citing the Senate Report accompanying the 1977 reauthorization of Title X, the court concluded that Congress believed that confidentiality is essential to attract adolescents to Title X clinics: "without such assurances, one of the primary purposes of Title X – to make family planning services readily available to teenagers – would be severely undermined." *Id.* at 660 (citing S. Rep. No. 95-102, at 26 (1977)).

Moreover, the court noted the contrast between the lack of a parental notification requirement in Title X and the inclusion of a parental notification requirement in a contemporaneous statutory enactment. As the court explained, "[a]nother, separate statute," Title XX, "was enacted as part of the same legislative packages as the Title X amendment" and "expressly requires family involvement by mandating parental notification and consent, 42 U.S.C. § 300z-5(a)(22)(A)(i)." *Planned Parenthood v. Heckler*, 712 F.2d at 661. "[E]nactment of Title XX's parental notification and consent requirements provides additional support for [the] conclusion that Title X's 'encouragement' language does not reasonably encompass a parental notification regulation." *Id.* at 661 n.50.

In light of its determination that the parental notification requirement was inconsistent with Congressional intent, the court rejected the 1983 regulations' requirement that Title X grantees comply with any state laws requiring parental notification or consent for the provision of family planning services. The court viewed this requirement as "permit[ting] the states to establish eligibility criteria" for the Title X program and concluded that, although Congress could design the program in that way, it had not done so for Title X. *Id.* at 663.

And even if Congress had authorized the Secretary to delegate such authority to the states, the court reasoned that any such delegation would need to be limited to rules that conformed to the existing program requirements. *Id.* Thus, in light of its conclusion that the "policies of Title X prohibit the Secretary from requiring parental notification," the court held that "the states would likewise be precluded from imposing similar conditions." *Id.* at 664.

The Second Circuit agreed in a similar challenge "that the 1981 amendment to Title X [encouraging family participation] did not authorize the regulations regarding mandatory [parental] notification." *New York v. Heckler*, 719 F.2d 1191, 1196 (2d Cir. 1983). The Second

7

Circuit similarly observed that "Title XX and the 1981 amendment to Title X were enacted at the same time, yet the former specifically included a requirement for parental notification and consent while the latter did not." *Id.* at 1197. The Second Circuit thus reasoned that "[o]bviously, Congress knew how to require parental notice and consent when that was its intention." *Id.*

Following these decisions, HHS promulgated a final rule removing the parental notification requirements from the regulations. Grants for Family Planning Projects; Parental Notification Requirement, 49 Fed. Reg. 38,117, 38,117-18 (Sept. 27, 1984) ("The decisions of the Courts of Appeal were not appealed further. Consequently, the parental notification regulation never went into effect.").

Since the rejection of the 1983 HHS parental notification regulations, every court to consider the issue has rejected state attempts to require parental notification or consent for the provision of Title X family planning services. For example, in *County of St. Charles v. Missouri Family Health Council*, 107 F.3d 682, 684-85 (8th Cir. 1997) (collecting cases), the Eighth Circuit rejected a clinic's claim that it was eligible for Title X funding, despite proposing to adhere to a Missouri law that required parental consent for the provision of family planning services to minors. The court observed that "[a]ll the circuits which have considered the validity of parental consent requirements for adolescents to receive Title X federal services have found them prohibited by statute, regardless of whether they are based on state law." *Id.* at 685. Citing the D.C. Circuit decision, the court noted that the Title X statute "states that family participation should be encouraged only 'to the extent practical,' and the legislative history indicates that Congress did not desire mandatory parental notification or parental consent for a minor to receive Title X services." *Id.* at 684; *Jane Does 1 through 4 v. Utah Dep't of Health*, 776 F.2d 253, 255 (10th Cir. 1985) (affirming injunction of the application of state law requiring parental

consent for provision of Title X family planning services and noting "that HHS is for all practical purposes here attempting to perpetuate its proposed regulation as to consent heretofore held invalid as a violation of Title X."); *Planned Parenthood Ass'n of Utah v. Matheson*, 582 F. Supp. 1001, 1006 (D. Utah 1983) ("the provision of family planning services to minors on a confidential basis was critically significant to Congress when it enacted and amended Title X. Consequently . . . the Supremacy Clause dictates that the federal law prevail over [state law]."). *Cf. Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 441 (Tex. 1998) (contemplating that, under a joint funding scheme, the state might dispense prescription drugs to minors without parental consent using federal funds, to avoid conflict with state law limitation on use of state funds to provide such services); *Ware v. S. Tex. Fam. Plan. & Health Corp,* No. 09-cv-323, 2010 U.S. Dist. Lexis 155133, at *3 (S.D. Tex. Jan. 26, 2010) ("Defendants, however, operate pursuant to Title X, Public Health Service Act, 42 U.S.C. § 300 *et seq*., which prohibits participants from requiring parental consent for the provision of services to minors.").

At least one court had reached a similar conclusion that a state could not require parental consent for provision of Title X services to minors prior to the D.C. Circuit's 1983 decision. *See Doe v. Pickett*, 480 F. Supp. 1218, 1220 (S.D. W. Va. 1979) ("The State, in requiring parental consent with respect to the expenditure of monies under these federal programs, is imposing additional eligibility requirements not contemplated or articulated in the statutory or regulatory framework of such programs.").

## II.   CURRENT PROCEEDINGS

Plaintiff Alexander R. Deanda lives in Texas, where he is raising three minor daughters. Complaint ("Compl."), ECF No. 1, ¶¶ 3, 19. Plaintiff asserts that he "wishes to be informed if any of his children are accessing or attempting to access prescription contraception and other

family-planning services" and that "he does not want his children to obtain or use these drugs or services unless he consents." *Id.* ¶ 21. Plaintiff filed this action, seeking to enjoin Defendants from funding Title X projects that provide family planning services to minor children without obtaining parental consent. *Id.* ¶¶ 26, 54.

Plaintiff brings two claims on his own behalf and on behalf of two separately defined putative classes of parents.[3] *See id.* ¶¶ 46-48. In Claim No. 1, Plaintiff asserts that Defendants' administration of Title X violates Texas law by making prescription contraception available to minors without parental consent. *Id.* ¶¶ 27-28. In Claim No. 2, Plaintiff alleges that Defendants' administration of Title X violates his constitutional right as a parent to direct the upbringing of his children "by making prescription contraception and other family-planning services available" to minors without parental consent. *Id.* ¶ 34.

## **STANDARD OF REVIEW**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party seeking to invoke the jurisdiction of the federal courts bears the burden of demonstrating an Article III case or controversy. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). If at any time the Court determines that jurisdiction is lacking, the court must dismiss the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998) ("[W]ithout proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit.").

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999); Fed. R. Civ. P. 56(c). "On cross-motions for summary

---

[3] Neither of these classes has been certified.

judgment, [the Court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Texas v. Rettig*, 987 F.3d 518, 526 (5th Cir. 2021) (quoting *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (citation omitted)).

## ARGUMENT

### I.      DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT ESTABLISH SUBJECT MATTER JURISDICTION

Plaintiff fails to sustain his burden to establish subject matter jurisdiction. First, Plaintiff's claims are time-barred. Second, Plaintiff fails to set forth necessary facts to demonstrate standing. Accordingly, Defendants are entitled to summary judgment for lack of subject matter jurisdiction.

### A.      The Statute of Limitations Bars Plaintiff's Claims

"[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). "[F]ailure to sue the United States within the limitations period is not merely a waivable defense. It operates to deprive federal courts of jurisdiction." *Dunn-McCampbell Royalty Int. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997). Accordingly, a plaintiff will be barred from pursuing even a constitutional claim if he has failed to assert the claim in a timely manner. *Daniels v. United States*, 532 U.S. 374, 381 (2001) ("Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."); *United States v. Flores-Martinez*, 677 F.3d 699, 709-10 (5th Cir. 2012). Because the statute of limitations affects the Court's jurisdiction, Plaintiff must bear the burden of demonstrating that his claims are timely. *Rettig*, 987 F.3d at 529.

11

"Actions usually accrue 'when [they] come[ ] into existence.'" *Felter v. Kempthorne*, 473 F.3d 1255, 1259 (D.C. Cir. 2007) (quoting *United States v. Lindsay,* 346 U.S. 568, 569 (1954)). "Plainly, the cause of action accrues when the 'right to resort to federal court [is] perfected.'" *Impro Prod., Inc. v. Block*, 722 F.2d 845, 850 (D.C. Cir. 1983) (quoting *Oppenheim v. Campbell,* 571 F.2d 660, 662 (D.C. Cir. 1978)). For example, "[o]n a facial challenge to a regulation, the limitations period begins to run when the agency publishes the regulation in the Federal Register." *Dunn-McCampbell*, 112 F.3d at 1287. "[A] plaintiff may 'challenge . . . a regulation after the limitations period has expired' if the claim is that the 'agency exceeded its constitutional or statutory authority.'" *Rettig*, 987 F.3d at 529 (quoting *Dunn-McCampbell*, 112 F.3d at 1287). "To sustain such a challenge, however, the claimant must show some direct, final agency action involving the particular plaintiff within six years of filing suit[,]" *Dunn-McCampbell*, 112 F.3d at 1287, and the challenged agency action must determine new "rights, obligations, or legal consequences." *Rettig*, 987 F.3d at 529 (citing *Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 756 (5th Cir. 2011)).

The six-year statute of limitations bars the Plaintiff's claims in the present action. Plaintiff brings this action to challenge "[D]efendants' administration of the Title X program." Compl. ¶ 25. He seeks injunctive relief that would impose a parental consent requirement as an additional condition of eligibility for Title X funding. *See, e.g.,* Compl. ¶¶ 36, 43 (requesting a nationwide injunction that would impose a parental consent requirement as a condition of eligibility for Title X funding). Since 1981, Title X has required that, "[t]o the extent practical," entities receiving Title X funds "shall encourage familiy [sic] participation." Pub. L. No. 97-35. In 1984, HHS revised Title X's implementing regulations to reflect decisions in the D.C. Circuit and the Second Circuit that held the agency had exceeded its statutory authority by promulgating

regulations requiring parental notification as well as deference to state parental notification and consent laws. 49 Fed. Reg. at 38,117-18 (removing from 42 C.F.R. part 59 the parental notification regulations, which "never went into effect" due to the decisions of the D.C. Circuit and Second Circuit Courts of Appeals); *Planned Parenthood v. Heckler*, 712 F.2d at 656, 663-64; *New York v. Heckler*, 719 F.2d at 1196. Plaintiff's challenge to Defendants' administration of the Title X program without a requirement for parental involvement thus accrued far more than six years prior to his filing of the complaint in 2020. Nor has any direct, final agency action *involving the Plaintiff* reset the limitations period by determining new rights, obligations, or legal consequences within the past six years. To the contrary, Plaintiff fails to show that he or his daughters have had any involvement with the Title X program, ever.

Accordingly, the statute of limitations bars this challenge to the agency's longstanding administration of the Title X program. *Rettig*, 987 F.3d at 529.

### B.    Plaintiff Lacks Standing

"Under the dictates of Article III of the United States Constitution, federal courts are confined to adjudicating actual 'cases' and 'controversies.'" *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002). "Of the doctrines that have evolved under Article III, . . . the requirement that the litigant have standing is perhaps the most important." *Id.* "Standing to sue must be *proven*, not merely asserted, in order to provide a concrete case or controversy and to confine the courts' rulings within our proper judicial sphere." *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 496-97 (5th Cir. 2007) (en banc) (emphasis added). To establish the "irreducible constitutional minimum" of standing, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), "a plaintiff must show: (1) [he] has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a

favorable judgment is likely to redress the injury." *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008) (citation omitted).

Whereas, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," at the summary judgment stage, "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts." *Lujan*, 504 U.S. at 561 (quotations omitted). Thus, although this Court previously held that Plaintiff had met his burden to survive a motion to dismiss, Order, ECF No. 23 at 12-21, Plaintiff must sustain a heightened burden to demonstrate standing at the summary judgment stage. *Lujan*, 504 U.S. at 561. Plaintiff fails to set forth such necessary facts to demonstrate standing.

Plaintiff fails to show that he has suffered a concrete injury in fact that is fairly traceable to the Defendants and redressable by the present action. Plaintiff argues that he is harmed by the possibility that one of his daughters could obtain family planning services without his knowledge. But when "the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control," the plaintiff must demonstrate "a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Id.* at 564 n.2. Indeed, the Supreme Court has "repeatedly reiterated that . . . '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Standing is most difficult to demonstrate when, as here, Plaintiff is not the subject of the challenged government action. As the Court explained in *Lujan*:

> [w]hen . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction – and perhaps on the response of others as well.

14

504 U.S. at 562. Thus, "it becomes the burden of the plaintiff to adduce facts showing that [the] choices [of those third parties] have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* An injury is not "fairly traceable" to a challenged law when "an independent act of a third party was a necessary condition of the harm's occurrence, and it was uncertain whether the third party would take the required step." *Deotte v. Azar*, 332 F.R.D. 173, 180-81 (N.D. Tex. 2019) (quoting *Texas v. United States*, 809 F.3d 134, 160 n.68 (5th Cir. 2015), *as revised* (Nov. 25, 2015)). "[S]tanding theories that rest on speculation about the decisions of independent actors" fail to establish an injury that is certainly impending or fairly traceable to the challenged conduct. *Clapper*, 568 U.S. at 413-14.

Plaintiff's theory of harm is too conjectural to constitute an injury in fact. Plaintiff has not suffered any actual present or past harm; rather he asserts "only a[ purported] injury at some indefinite future time." *Lujan*, 504 U.S. at 564 n.2. But Plaintiff has failed entirely to demonstrate the requisite "high degree of immediacy" that is necessary to establish the imminence of future harm. *Id.*; *see Clapper*, 568 U.S. at 401 ("theory of *future* injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'"). Specifically, Plaintiff argues that Title X increases his risk of harm by making it possible that his minor children might someday seek or obtain family planning services, potentially including prescription contraception, without his knowledge or consent. *See, e.g.,* Compl. ¶ 24. But Plaintiff fails to present any evidence showing the likelihood or timing of such future actions, which is plainly insufficient to demonstrate standing. *See Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require.").

15

Plaintiff likewise fails to show concrete and particularized harm based upon a theory of statutory or informational injury. Even assuming, as Plaintiff argues, that Texas Family Code § 151.001(a)(6) provides Plaintiff with a statutory right to information in this context, this state statute cannot create the basis for federal jurisdiction to challenge the Title X program. *Rettig*, 987 F.3d at 529 ("The United States enjoys sovereign immunity unless it consents to suit, 'and the terms of its consent circumscribe our jurisdiction.'" (quoting *Dunn-McCampbell*, 112 F.3d at 1287)); *see also United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992). As an agency of the United States, HHS is subject to suit only to the extent that Congress has waived its sovereign immunity. *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009); *St. Tammany Par., ex rel. Davis v. FEMA*, 556 F.3d 307, 316 (5th Cir. 2009) (recognizing sovereign immunity extends to the United States and "its departments") (quoting *Williamson v. USDA*, 815 F.2d 368, 373 (5th Cir. 1987)). "Because sovereign immunity is jurisdictional in nature, Congress's waiver of it must be unequivocally expressed in statutory text and will not be implied." *Davis*, 556 F.3d at 316 (internal brackets, quotations and citations omitted). As only Congress may waive the sovereign immunity of a federal agency, Plaintiff's reliance upon the Texas Family Code fails to establish a cognizable injury sufficient for federal jurisdiction. *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) ("standing in federal court is a question of federal law, not state law"); *Fiedler v. Clark*, 714 F.2d 77, 80 (9th Cir. 1983) (U.S. Courts "must look to the sources of their power, article III of the United States Constitution and Congressional statutory grants of jurisdiction, not to the acts of state legislatures. However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction.") (quoting *Duchek v. Jacobi*, 646 F.2d 415, 419 (9th Cir. 1981)); *In re Papst Licensing, GmbH, Patent Litig.*, 2000 U.S. Dist. LEXIS 18316, at *10 (E.D. La. Nov. 6, 2000) ("A state may not by statute

16

create standing where none exists under Article III"); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 756 (W.D.N.Y. 2017) ("asserted violations of various state statutes do not confer standing in federal court."); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 534 (D. Md. 2016) ("Here, where [plaintiff] alleges violations of state law, she advances no authority for the proposition that a state legislature or court, through a state statute or cause of action, can manufacture Article III standing for a litigant who has not suffered a concrete injury.").

Moreover, even if a state statute could supply the basis for standing to challenge the administration of a federal program in federal court, Plaintiff still must show a concrete injury. The Supreme Court recently reiterated that it repeatedly "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Transunion LLC v. Ramirez*, 594 U.S. __ (2021), No. 20-297, 2021 U.S. LEXIS 3409, at *20 (U.S. June 25, 2021) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016)). As the Supreme Court explained, "[f]or standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Ramirez*, at *21. "[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* Plaintiff has not established a concrete injury here. He does not even arguably suffer any harm under Texas Family Code § 151.001(a)(6) absent a showing that it is imminently likely that one of his daughters will obtain "medical treatment" from a Title X clinic without his consent. Just as "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete

harm," so too the mere availability of Title X services without evidence of delivery of those services to Plaintiff's daughters without his consent "causes no concrete harm." *Id.* at *30.

The Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) illustrates the fatal flaw in Plaintiff's theory of standing based upon a statutory right to information. As relevant here, the Supreme Court in *Havens* recognized that the Fair Housing Act "establishes an enforceable right to truthful information concerning the availability of housing." *Id.* at 373. But even where the statute at issue thus expressly provides an enforceable right to information, only a plaintiff who "has been the object of a misrepresentation made unlawful under [that provision] has suffered injury in precisely the form the statute was intended to guard against, and *therefore* has standing to maintain a claim" under the statute. *Id.* at 373-74 (emphasis added). Standing in *Havens* required more than the mere existence of the statutory right of information, alone, but also facts showing that the plaintiffs had sought from the defendants the information to which they were thus entitled, and that the defendants, by responding falsely, deprived them of this right. *Id.*; *Transunion LLC v. Ramirez*, 594 U.S. __ (2021), 2021 U.S. LEXIS 3401, at *21 (quoting *Spokeo*, 136 S. Ct. at 1549). For this reason, a tester who alleged that on several occasions she had inquired about the availability of housing and received misrepresentations that no apartments were available had standing, whereas a second tester who alleged that he had received accurate information in response to his inquiries about the availability of housing had "alleged no injury to his statutory right." *Havens*, 455 U.S. at 374-75. Both testers invoked the same statutory right to information, yet only one had standing based on facts demonstrating an actual deprivation of that right to information.

Like the second tester in *Havens*, Plaintiff lacks standing because he fails to show a concrete injury resulting from a *denial* of information to which he is arguably entitled under an

18

applicable statute. Plaintiff argues that he has been deprived of information concerning his daughters, yet he fails to show that his minor daughters have sought family planning services in the past or are likely to do so in the future. In the absence of facts showing the he has been (or imminently will be) denied the information to which he claims he has a legal right, Plaintiff falls short of his burden to demonstrate a concrete injury in fact. *Clapper*, 568 U.S. at 409-13; *Spokeo*, 136 S. Ct. at 1547-48 ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997))).

Moreover, to the extent the threat of future harm depends upon the voluntary actions of Plaintiff's minor children, Plaintiff does not demonstrate any facts that would show the risk of such harm is sufficiently imminent and substantial. *Lujan*, 504 U.S. at 564 ("Past exposure . . . does not in itself show a present case or controversy regarding injunctive relief."). Plaintiff fails to show that his children have ever attempted to seek or obtain Title X family planning services in the past, nor even that they have expressed an interest in or inclination towards obtaining these services. If anything, Plaintiff's assertions concerning his actions to discourage his daughters from participating in Title X services tend to show that, to the extent "the acts necessary to make the injury happen are at least partly within the plaintiff's own control," the threatened harm he alleges is unlikely to occur in the future. *Lujan*, 504 U.S. at 564 n.2. Plaintiff therefore offers no support for his speculation that his minor children are likely to seek family planning services from a Title X clinic without his knowledge or consent. This is precisely the opposite of the "high degree of immediacy" that the Supreme Court has required in such circumstances. *Id.*

Even if one of Plaintiff's children were to make an independent, voluntary decision to seek such services some day in the future, Plaintiff also fails to present any facts supporting his

mere conjecture that his child would decide not to involve him in her family planning decisions. *See, e.g.,* 42 U.S.C. § 300(a); Pub. L. No. 115-245, § 207. Vague speculation that one of his children might some day seek or obtain Title X family planning services without his knowledge or consent does not come close to sustaining his burden to show a "*certainly impending*" injury. *Clapper*, 568 U.S. at 409. Plaintiff's assertions of future injury simply require too much "guesswork," including "as to how independent decisionmakers will exercise their judgment." *Id.* at 413; *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 537 (5th Cir. 2019).

Finally, for similar reasons, Plaintiff's claims are not redressable by the present action. "[P]laintiffs seeking injunctive relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). Because he fails to show an imminent injury in fact, Plaintiff also fails to show that the requested injunctive relief would be likely to redress a substantial risk of potential future injury.

Because Plaintiff thus lacks standing, judgment must be entered in Defendants' favor. *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) ("[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

## II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BOTH CLAIMS

Even if Plaintiff could establish jurisdiction, Defendants are entitled to summary judgment on both claims. First, Plaintiff's claim that Defendants' administration of the Title X grant program violates Texas state law fails because state law cannot impair the implementation of a federal program. Although the Title X statute and Defendants' regulations require clinics to encourage family participation, courts have consistently rejected the application of state laws that would *require* parental notification or consent as a condition of eligibility for Title X funding. Second, Plaintiff's claim that Title X interferes with Plaintiff's right to "direct the upbringing" of his children fails because Title X family planning services are voluntary and therefore do not unconstitutionally interfere with Plaintiff's ability to raise his children. Compl. ¶ 34. In any event, Title X reasonably serves legitimate government interests of promoting the reproductive health of minors and reducing unplanned pregnancies. Accordingly, Defendants are entitled to summary judgment. Fed. R. Civ. P. 56(c).

### A.    Defendants Are Entitled to Summary Judgment on Claim No. 1 Because State Law Cannot Require Parental Notification or Consent for Title X Family Planning Services

Defendants are entitled to summary judgment on Claim No. 1 because federal supremacy precludes any state law from imposing a parental consent requirement as a condition of eligibility for Title X funding. The U.S. Constitution provides that federal law is the supreme law of the land. U.S. Const. art. VI, cl. 2 ("This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."). Accordingly, state law cannot impose requirements that would impede implementation of a federal program such as the Title X family planning services grant

program. *See Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 341 & n.84 (5th Cir. 2005) ("Here, *Texas* is attempting to impose regulations that restrict the scope of a federal program" in a manner that "would seriously undermine and obstruct Congress's intent in distributing funds under Title X.").

The text of the Title X statute plainly leaves no room for states to impose parental notification requirements. *See Bostock v. Clayton Cnty*, 140 S. Ct. 1731, 1738 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment."). The statute provides that grantees need only "encourage" the individual seeking family planning services to involve family in this decision. 42 U.S.C. § 300(a). Moreover, grantees must encourage family participation only "[t]o the extent practical," which logically requires a case-by-case determination of what is practical under the circumstances. *Id.*; *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012) (reviewing court "favors that interpretation which avoids surplusage"). Universally requiring parental notification would render the "to the extent practical" language meaningless and would contradict the plain and ordinary meaning of the word "encourage."

Indeed, courts have consistently interpreted the Title X statute to prohibit parental notification requirements as conditions of eligibility for Title X funding. Such eligibility requirements would be inconsistent with the Supremacy Clause, the text of the Title X statute, and Congressional intent to ensure confidential access to Title X family planning services. *See, e.g., Planned Parenthood v. Heckler*, 712 F.2d at 654; *New York v. Heckler*, 719 F.2d at 1196; *Mo. Fam. Health Council*, 107 F.3d at 684-85; *Jane Does 1 through 4*, 776 F.2d at 255; *Ware*, 2010 U.S. Dist. LEXIS 155133, at *3; *Planned Parenthood v. Matheson*, 582 F. Supp. at 1006; *Doe v. Pickett*, 480 F. Supp. at 1220; *see also supra* Part I.B. The Title X statute requires Title X

projects to "*encourage*," not mandate, family participation "*[t]o the extent practical.*" 42 U.S.C. § 300(a) (emphasis added); *see also* Pub. L. No. 115-245, § 207, 132 Stat. at 3090 (requiring grantees to certify that they encourage family participation in the decision of minors to seek family planning services). Thus, federal law does not require parental notification or consent for minors to receive family planning services – including prescription drugs – from Title X clinics. And under the case law, neither HHS nor a state could require such parental notification or consent. *See Planned Parenthood v. Heckler*, 712 F.2d at 660-61; *New York v. Heckler*, 719 F. 2d at 1196; 49 Fed. Reg. at 38117-38118. In the words of the D.C. Circuit, imposing such a requirement would be inconsistent with "one of the primary purposes of Title X – to make family planning services readily available to teenagers" – because "Congress made clear that confidentiality was essential to attract adolescents to the Title X clinics[.]" *Planned Parenthood v. Heckler*, 712 F.2d at 660. And a state's "attempt to require parental consent as a condition to the provision of family planning services constituted the imposition of an additional eligibility requirement that clearly thwarted the goals of Title X." *Id.* at 664.

As the D.C. Circuit noted, where Congress intended to require parental notification and consent, it said so expressly. "[A]nother, separate statute," Title XX, "was enacted as part of the same legislative packages as the Title X amendment" and "expressly requires family involvement by mandating parental notification and consent, 42 U.S.C. § 300z-5(a)(22)(A)(i)." *Planned Parenthood v. Heckler*, 712 F.2d at 661. "[E]nactment of Title XX's parental notification and consent requirements provides additional support for [the] conclusion that Title X's 'encouragement' language does not reasonably encompass a parental notification regulation." *Id.* at 661 n.50; *see also New York v. Heckler*, 719 F.2d at 1197.

The Fifth Circuit's decision in *Planned Parenthood v. Sanchez*, 403 F.3d at 341, confirms that states may not impose additional eligibility requirements on the Title X program. There, the plaintiff challenged a Texas state law restricting the distribution of federal family planning grants, including Title X funding, by requiring each participating entity to sign an affidavit attesting that the entity does not perform abortions, even though federal law requires only that federal funds not be used in programs where abortion is a method of family planning. *Id.* at 327-28. Plaintiff argued that the state "impermissibly added conditions and impediments to the receipt of federal funds." *Id.* at 336. The Fifth Circuit agreed, reasoning that "a state eligibility standard that altogether excludes entities that might otherwise be eligible for federal funds is invalid under the Supremacy Clause." *Id.* at 337. The court determined that the district court would not abuse its discretion in issuing a preliminary injunction against enforcement of the state law unless the state law could be read to avoid imposing "eligibility requirements [that] would seriously undermine and obstruct Congress's intent in distributing funds under Title X." *Id.* at 341 & n.84 (quoting *Planned Parenthood v. Heckler*, 712 F.2d at 663).

Relevant case law thus forecloses Plaintiff's claim that Defendants should be enjoined from providing federal funding to the Title X projects in Texas that do not comply with Texas state law regarding parental consent for prescriptions to minors.[4] Plaintiff seeks injunctive relief that would conflict with Congressional intent generally to "mak[e] comprehensive voluntary family planning services readily available to *all persons* desiring such services." Pub. L. No. 91-

---

[4] It is far from clear that Texas law provides the absolute right of consent that Plaintiff asserts as the basis for his claim. For example, Texas law explicitly allows its Health and Human Services Commission to "modify, or suspend" restrictions on state funding based on requirements for a minor's consent for treatment under Family Code Chapter 32 if compliance "would result in the loss of Federal Funds to the state." General Appropriations Act for the 2020-2021 Biennium, II-70 (86th Legis., Regular Session, 2019; *see also* Tex. Health & Hum. Servs., "Adolescent Health Guide (Jan. 2016)," https://www.dshs.texas.gov/layouts/contentpage.aspx?pageid=29814&id=12884933660&terms=minor%20consent%20%22family%20planning%22) (recognizing that Title X services by the current grantee (Women's Health and Family Planning Association of Texas) are not subject to state law requirements).

572, § 2(1), 84 Stat. at 1504 (emphasis added). Enjoining federal funding unless grantees in

Texas require family participation in the decisions of minors to seek family planning services

would add eligibility requirements to the Title X statute, which requires only *encouragement* of

parental participation *to the extent practical*, and undermine Congressional intent to ensure that

adolescents have access to confidential family planning services. *Planned Parenthood v.*

*Heckler*, 712 F.2d at 660; *see also, e.g.,* Pub. L. No. 95-613, 92 Stat. at 3093 (amending statute

to require that Title X projects include "services for adolescents"); S. Rep. No. 95-822, at 24

(1978) (In adopting this amendment, Congress placed "a special emphasis on preventing

unwanted pregnancies among sexually active adolescents."). Plaintiff's claim is thus foreclosed

by precedent holding that, if states seek to impose additional rules affecting the eligibility of

projects for federal funding, "those rules must be consistent with the federal standards or else be

held invalid under the Supremacy Clause[.]" *Planned Parenthood v. Heckler*, 712 F.2d at 663-

64, 664 n.57.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's Claim No. 1

that Defendants' administration of the Title X program violates Texas state law.

**B.      Defendants Are Entitled to Summary Judgment on Claim No. 2 Because the
          Title X Family Planning Services Grant Program Does Not Unreasonably
          Interfere with Plaintiff's Parental Right to Direct the Upbringing of His
          Children**

Plaintiff claims that Title X violates his rights under the U.S. Constitution to direct the

upbringing of his children. Compl. ¶ 34. Courts have recognized that due process under the U.S.

Constitution "includes a substantive component that 'provides heightened protection against

government interference with certain fundamental rights and liberty interests.'" *Troxel v.*

*Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720

(1997)). However, courts "have required in substantive-due-process cases a 'careful description'

of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). Thus, courts have recognized for purposes of applying substantive due process a limited "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66.

To succeed on a substantive due process claim, Plaintiff must show not only that he possesses a recognized and carefully described fundamental right or liberty interest, but also that the action he challenges infringes upon that right. *Glucksberg*, 521 U.S. at 721. Plaintiff cannot meet that burden. Title X does not interfere with Plaintiff's ability to direct the upbringing of his minor children. The program merely funds the provision of voluntary family planning services. And to the extent that grantees provide such services to minors, they must encourage family participation to the extent practical. Finally, Defendants have a legitimate interest in reducing unplanned pregnancies and promoting the reproductive health of minors by providing funding for confidential family planning services under Title X.

> **1.     The Availability of Voluntary Family Planning Services Through Title X-Funded Projects Does Not Interfere with Parents' Ability to Make Decisions Concerning the Upbringing of Their Minor Children**

Courts have recognized claims for interference with parental liberty only where the challenged government action requires or prohibits some action by parents. *See, e.g., Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980) (state's operation of a voluntary birth control clinic did not deprive parents of their liberty interest in the upbringing of their children); *Anspach v. Philadelphia*, 503 F.3d 256, 262 (3d Cir. 2007) ("Courts have recognized the parental liberty interest only where the behavior of the state actor compelled interference in the parent-child relationship."). "Case law relating to parental liberty rights is narrow and largely addresses the right of parents to make critical child-rearing decisions concerning the care, custody, and control of minors." *Moreno v. McAllen Indep. Sch. Dist.*, No. 7:15-cv-162, 2016 U.S. Dist. LEXIS

44108, at *17 (S.D. Tex. Mar. 31, 2016) (citing *Troxel*, 530 U.S. at 66). The availability of voluntary family planning services funded under Title X does not deprive Plaintiff of his ability to make decisions about how to raise his children. The Title X program neither compels Plaintiff to take any particular action nor prohibits him from taking any particular action with respect to the raising of his children.

The Sixth Circuit's decision in *Irwin*, 615 F.2d at 1163, is instructive. There, the parents of minor children, including the parents of a sixteen-year-old who received contraceptives from a publicly operated family planning clinic, challenged the clinic's provision of prescription contraceptives to minors without requiring parental knowledge or consent. The court held that the state had not interfered with the liberty interest of parents to direct the upbringing and education of their children because the challenged program "imposed no compulsory requirements or prohibitions which affect rights" of parents. *Id.* at 1168. To the contrary, the state had "merely established a voluntary birth control clinic." *Id.* (distinguishing *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 530 (1925)). Thus, the parents remained "free to exercise their traditional care, custody and control over their unemancipated children." *Id.* The state's "practice of not notifying [parents] of their children's voluntary decisions to participate in the activities" of the clinic consequently did not deprive parents of their liberty interest in the upbringing of their children. *Id.*

Similarly, the Third Circuit in *Anspach*, 503 F.3d at 262, rejected the claims of parents and their minor child who obtained emergency contraception at a public health clinic without parental notification or consent. Relying upon the Sixth Circuit's decision in *Irwin*, the Third Circuit agreed that the availability of voluntary birth control services without parental

27

notification or consent did not amount to a deprivation of parental liberty. *Id.* at 262-64. The minor child's decision to visit the clinic and to obtain contraception was entirely voluntary, as was her decision not to notify or consult her parents concerning these actions. *Id.* at 264. In the absence of any coercion, the public health clinic had not interfered with the parents' liberty interest in controlling the upbringing of their child. *Id.* at 267. As in *Doe v. Irwin*, the parents in *Anspach* remained at liberty to exercise their parental rights. *Id.*

The Title X program likewise does not deprive Plaintiff of his ability to make decisions concerning the upbringing of his children because the family planning services funded under Title X are purely voluntary. Indeed, the federal statute authorizes funding only for "the establishment and operation of *voluntary* family planning projects." 42 U.S.C. § 300(a) (emphasis added). In this regard, this case is on all fours with the prior decisions in *Irwin*, 615 F.2d at 1168, and *Anspach*, 503 F.3d at 262. Like the voluntary birth control clinics at issue in those cases, grantees receiving Title X funding provide voluntary family planning services for individuals who choose to participate in those programs. Because these services are voluntary, these projects do not in any way limit Plaintiff's ability to make decisions concerning his children. As was the case in *Irwin* and *Anspach*, Plaintiff's children are not required to avail themselves of any of the family planning services funded under Title X, nor does the Title X program prohibit Plaintiff from participating in his children's decisions to seek family planning services. To the contrary, Title X requires that grantees "shall encourage" family participation. 42 U.S.C. § 300(a). Moreover, Plaintiff's parental liberty does not entitle him to governmental assistance in ensuring that his children obey his wishes that they neither obtain nor use prescription contraception or other family planning services without his consent. *Anspach*, 503 F.3d at 267; *cf.* Compl. ¶ 37 (alleging that Plaintiff brings this claim on behalf of all parents

28

nationwide who wish to be informed of their children's attempts to access such voluntary services or who wish to prevent their children from doing so). Thus, for the same reasons, the Title X program simply does not deprive Plaintiff of his liberty interest in directing the upbringing of his children.

Cases concerning the physical custody of minor children do not support a contrary outcome here. *See, e.g., Troxel*, 530 U.S. at 57. In *Troxel*, the Court found that the application of a state nonparental visitation statute in that case "violated [the plaintiff's] due process right to make decisions concerning the care, custody, and control of her daughters" by compelling her to afford visitation rights to the children's grandparents. *Id.* at 75. As described by the Court, the state's "breathtakingly broad" nonparental visitation statute provided that "'*any person* may petition the court for visitation rights *at any time*,' and the court may grant such visitation rights whenever 'visitation may serve *the best interest of the child*." *Id.* at 67 (quoting Wash Rev. Code § 26.10.160(3) (1994) (emphases added by Court)). Pursuant to this statute, the state court had granted "forced visitation" rights to the Troxels with respect to the two children their deceased son had fathered with Granville. *Id.* at 67-68. In concluding that this provision violated Granville's right to make decisions concerning the care, custody, and control of her children, the Court relied upon the state court's application of a presumption in favor of visitation rights for grandparents, finding that this "decisional framework employed by the [state court] directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child." *Id.* at 69. "In that respect, the [state] court's presumption failed to provide *any* protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters." *Id.* at 69-70 (emphasis added). The application of the "presumption in favor of grandparent visitation" along with a lack of robust factual findings that might justify grandparent

visitation in that case and the state court's "failure to accord significant weight to Granville's already having offered meaningful visitation" to the grandparents, led the Court to conclude that the state had a "simple disagreement" over the children's best interests and had essentially substituted its judgment for that of the parent. *Id.* at 72-73. However, even after recognizing the fundamental right of parents to make decisions concerning the care, custody, and control of their children, and even after characterizing the state's nonparental visitation statute as "breathtakingly broad," *id.* at 67, the Court's opinion expressly declines to go beyond a narrow holding that the state statute as applied to the facts in that case "exceeded the bounds of the Due Process Clause." *Id.* at 68. The Court explained that "[w]e do not, and need not, define today the precise scope of the parental due process right *in the visitation context*." *Id.* at 73 (emphasis added). The Court further explained that "we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter." *Id.*

Equally unavailing to Plaintiff is the decision in *M.L.B.* that the state had unconstitutionally interfered with the plaintiff's parental rights by conditioning her ability to appeal the termination of her parental rights on her ability to prepay appeal costs. *M.L.B. v. S.L.J.*, 519 U.S. 102, 107 (1996). The facts of this case involve not merely a compelled interference but an absolute deprivation of parental rights, as "[t]he object of the proceeding is 'not simply to infringe upon [the parent's] interest' . . . 'but to end it.'" *Id.* at 118 (quoting *Lassiter v. Dep't of Soc. Servs. of Durham Cnty*, 452 U.S. 18, 27 (1981)). The Court's opinion distinguished such cases involving termination of parental rights from "mine run civil actions, [and] even from other domestic relations matters such as divorce, paternity, and child custody" on the basis of the "unique kind of deprivation" that results from a termination decree. *Id.* at 127. The Court in *M.L.B.* expressly noted that prior "decisions, recognizing that parental termination

30

decrees are among the most severe forms of state action . . . have not served as precedent in other areas." *Id.* at 128.

Cases like *Troxel* and *M.L.B.* are readily distinguishable from this case. First, *Troxel* and *M.L.B.* involve coercive interference with the physical custody of minor children. The Title X program, in contrast, does not affect Plaintiff's ability to make decisions concerning the custody of his children. Whereas *Troxel*, for example, involved a judicial order for "forced visitation" with the children's paternal grandparents, Title X is merely a voluntary program which Plaintiff and his family remain at liberty to avoid. Moreover, the Court's reasoning in *Troxel* relied heavily upon the state court's application of a presumption in favor of visitation rights for grandparents which "directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child." *Troxel*, 530 U.S. at 69. By contrast, the Title X program's requirement to encourage family participation to the extent practical, 42 U.S.C. § 300(a), is entirely consistent with this "traditional presumption." Second, even in these cases the Court has been careful to limit the holdings to the specific facts at issue. In *Troxel*, the Court expressly limited its decision to the application of the particular statute to the facts of the case. *Troxel* therefore does not support Plaintiff's request here for broad injunctive relief that would impair implementation of Title X nationwide.

### 2.    Title X Reasonably Achieves Multiple Legitimate Government Interests

Even if the Court were to find that Plaintiff had sustained his burden to show that Title X interferes with his parental rights, Plaintiff's claim still would fail because Title X reasonably serves legitimate government interests. As courts have routinely recognized, "the parental liberty interest is not absolute." *Anspach*, 503 F.3d at 261. Thus, the Fifth Circuit has applied a rational-basis test when reviewing a plaintiff's claim for alleged violation of parental rights. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir. 2001) ("These cases support the

31

determinations in *Meyer*, *Pierce*, and *Yoder* that a rational-basis test is the appropriate level of scrutiny."); *see also Anspach*, 503 F.3d at 261 ("Accordingly, parental interests must be balanced with the child's right to privacy, which is also protected.").

The government has a legitimate interest in reducing unplanned pregnancies and promoting the reproductive health of minors. S. Rep. No 95-822, at 12 (noting that, with one exception, "[a]ll witnesses . . . urged that special emphasis be placed on providing comprehensive family planning services to sexually active adolescents who desire such services in order to avoid unwanted pregnancies" as well as "the serious health implications" and "the future adverse social impact on the adolescent mother imposed by the responsibilities of parenthood."); *Anspach*, 503 F.3d at 271 n.10 (The state has a "substantial interest in the reproductive health of minors."); *Irwin*, 615 F.2d at 1167 ("The Supreme Court has recognized that a state has 'an independent interest in the well-being of its youth.'" (quoting *Ginsberg v. New York*, 390 U.S. 629, 640 (1968))). Title X places "a special emphasis on preventing unwanted pregnancies among sexually active adolescents[,]" because "[p]reventive family planning services can help these women bear children when they want to and when they are prepared to take on the responsibilities of childbearing." S. Rep. No. 95-822, at 24. Congress found that teen pregnancies in particular "are often unwanted and frequently result in adverse health, social, and economic consequences for the individuals and families involved." *Id.* at 27. "Specifically, these consequences include a higher incidence of low birth-weight infants, a higher percentage of pregnancy and childbirth complications, and higher rates of school dropout, unemployment, welfare dependency, and out-of-wedlock births." *Id.* Indeed, the Senate Committee on Human Resources "heard considerable testimony on the consequences an early pregnancy can have on a young woman's future." *Id.* at 29. "These statistics make it imperative

that special efforts be made to help these young women avoid unwanted pregnancies[,]" particularly as "[m]any teenagers cite the difficulty in securing a contraceptive as the reason for failure to protect themselves from an unwanted pregnancy." *Id.* at 30. "Given the successful efforts of organized family planning clinics to reach adolescents, the committee believes that these clinics should form the cornerstone of Federal programs to assist sexually active adolescents to avoid unwanted pregnancies and should be an integral part of any program dealing with teenage pregnancy." *Id.* at 31.

Title X therefore provides funding to make confidential family planning services available minors. *Planned Parenthood v. Heckler*, 712 F.2d at 659. Title X "recognize[s] the critical role played by the assurance of confidentiality in attracting adolescents to the clinics." *Planned Parenthood v. Heckler*, 712 F.2d at 659. Title X depends upon "the greater degree of *teenage confidence in the confidentiality which can be assured by a family planning clinic*." *Id.* at 660 (quoting S. Rep. No. 95-102, at 26 (emphasis in opinion)). "Thus Congress made clear that confidentiality was essential to attract adolescents to the Title X clinics; without such assurances, one of the primary purposes of Title X – to make family planning services readily available to teenagers – would be severely undermined." *Id.*

The addition of the requirement to encourage family participation in 1981 did not change this emphasis on confidentiality. *Planned Parenthood v. Heckler*, 712 F.2d at 660. The D.C. Circuit saw "no evidence whatever that Congress intended to change its longstanding belief that confidentiality was a crucial factor in attracting teenagers to Title X clinics and thereby in stemming the epidemic increase in teenage pregnancies." *Id.* To the contrary, "the express language of the statute, requiring Title X grantees to encourage family participation 'to the extent practical,' refers to just such realistic concerns about deterring teenagers from seeking

contraception if their confidences are not respected." *Id.* Thus, imposing a parental notification requirement "would undermine both Congress' specific policy of confidentiality and its overriding concern about the escalating teen pregnancy rate." *Id.* at 660-61.

Title X reasonably achieves these legitimate government interests. Title X clinics must provide confidential family planning services to all individuals. 42 U.S.C. § 300(a). But when providing such services to minors, Title X clinics must encourage family participation to the extent practical. *See, e.g.,* H.R. Rep. No. 97-208, at 799 ("[W]hile family involvement is not mandated, it is important that families participate in the activities authorized by this title as much as possible. It is the intent of the Conferees that grantees will encourage participants in Title X programs to include their families in counseling and involve them in decisions about services."). Imposing a parental consent requirement as a condition of eligibility for Title X funding would unduly burden minors' ability to obtain confidential family planning services. *Planned Parenthood v. Heckler*, 712 F.2d at 660-61. Such a requirement thus would undermine the government's interest in promoting minors' reproductive health and reducing unplanned pregnancies. *Id.*

Accordingly, Title X does not interfere with Plaintiff's parental right to direct the upbringing of his minor children. To the contrary, Title X reasonably serves the government's interest in promoting reproductive health and reducing unplanned pregnancies by making voluntary, confidential family planning services available to minors. Defendants therefore are entitled to summary judgment on Claim No. 2.

## III.   EVEN IF THE COURT WERE TO AWARD RELIEF, ANY INJUNCTION SHOULD BE LIMITED TO THE PLAINTIFF

Even if the Court were to grant Plaintiff relief in this case, any such injunction should be limited. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v.*

*Whitford*, 138 S. Ct. 1916, 1934 (2018), and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Accordingly, "[t]he district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order." *Doe v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004). Plaintiff's request for an injunction against federal funding for any clinic that does not "obtain parental consent before distributing prescription contraception or other family planning services to minors," Compl. ¶¶ 36, 43, is both overly broad and unduly burdensome.

The nationwide injunctive relief Plaintiff requests would be inappropriately broad. State laws may differ with respect to parental notification or consent for family planning services to minors. *See, e.g., New York v. Heckler*, 719 F.2d at 1196 ("[R]egarding the standing of plaintiffs to contest the regulation requiring grantee compliance with state law on parental notice or consent[,] . . . we do not see how any of the plaintiffs face injury from this regulation since neither New York nor any bordering state has such a law."). As a result, injunctive relief based on anything other than a case-by-case analysis would be inappropriate. *See Troxel*, 530 U.S. at 73 ("Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter."). Furthermore, program-wide injunctive relief would be inappropriate for the additional reason that, as noted above, the six-year limitations period has long expired and thus bars any potential facial challenge to Title X.

Moreover, granting Plaintiff's request to enjoin Defendants "from directly or indirectly funding any family planning project in the United States," Compl. ¶¶ 36, 43, that does not require parental consent for services to minors would unduly burden Defendants and harm the

public generally. Entities which receive grants or contracts under Title X provide a broad range of family planning services to *all* individuals who seek these services, not just minors. *See, e.g.,* S. Rep. No. 95-822, at 21 ("The broad authority for family planning services contained in [T]itle X is designed to ensure that these services are available to persons of all incomes who want them but would not otherwise be able to obtain them."); *id.* at 27 ("Over 3 million low-income women currently cannot obtain family planning services easily."). Thus, Plaintiff's requested relief would unduly burden Defendants' ability to administer Title X in a manner that makes voluntary family planning services available to all those who want these services.

Any relief in this case therefore should be narrowly limited to provide relief to the Plaintiff as the Court may deem necessary.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment on all claims.

Dated:  July 2, 2021                                 Respectfully submitted,

                                                     BRIAN M. BOYNTON
                                                     Acting Assistant Attorney General

                                                     MICHELLE BENNETT
                                                     Assistant Branch Director

                                                     /s/ *Amber Richer*
                                                     AMBER RICHER (CA Bar No. 253918)
                                                     Trial Attorney
                                                     U.S. Department of Justice
                                                     Civil Division, Federal Programs Branch
                                                     1100 L Street NW
                                                     Washington, D.C. 20530
                                                     Tel: (202) 514-3489
                                                     Email: amber.richer@usdoj.gov

                                                     *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2021, I electronically transmitted the foregoing to the

parties and the clerk of court for the U.S. District Court, Northern District of Texas, using the

electronic case filing system of the court.

/s/ *Amber Richer*
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov

1