UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

|  |  |
|---|---|
| **Alexander R. Deanda**, on behalf of himself and others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>**Xavier Becerra**, in his official capacity as Secretary of Health and Human Services; **Jessica Swafford Marcella**, in her official capacity as Deputy Assistant Secretary for Population Affairs; **United States of America**,<br><br>          Defendants. | Case No. 2:20-cv-00092-Z |

## BREF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

D. Bryan Hughes
Texas Bar No. 00793995
Law Office of D. Bryan Hughes
110 North College Avenue, Suite 207
Tyler, Texas 75702-7221
(903) 581-1776 (phone)
bryan@hughesfirm.com

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, LLP
1200 Summit Avenue, Suite 860
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Alex Yarbrough
Texas Bar No. 24079615
Riney & Mayfield LLP
320 South Polk Street, Suite 600
Amarillo, Texas 79101
(806) 468-3202 (phone)
(806) 376-4509 (fax)
ayarbrough@rineymayfield.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

Table of contents ..................................................................................................i

Table of authorities ..............................................................................................ii

I.   Mr. Deanda's claim is timely ..................................................................... 1

II.  Mr. Deanda has standing .......................................................................... 3

    A.   Mr. Deanda is suffering Article III injury from the loss of his statutory rights under section 151.001(6) of the Texas Family Code ...................... 3

    B.   The defendants are inflicting immediate, present-day injury on Mr. Deanda by subverting his authority as a parent........................................8

    C.   The defendants are inflicting immediate, present-day injury on Mr. Deanda by depriving him of the assurance that his children will be unable to access family-planning services................................................9

    D.   The defendants are inflicting immediate, present-day injury on Mr. Deanda by subjecting him to an increased risk that his children might access birth control without his knowledge or consent ...............10

III. Mr. Deanda is entitled to judgment as a matter of law............................. 13

    A.   The Title X statute does not preempt section 151.001(6) ....................13

    B.   The defendants' administration of the Title X program violates the constitutional right of parents to direct the upbringing of their children...................................................................................................19

Conclusion...........................................................................................................21

Certificate of service ...........................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Anspach v. Philadelphia,*
    503 F.3d 256 (3d Cir. 2007) ...................................................... 19, 20

*Bostock v. Clayton County,*
    140 S. Ct. 1731 (2020).................................................................. 17

*Building and Construction Trades Council of the Metropolitan District*
    *v. Associated Builders and Contractors of Massachusetts/Rhode*
    *Island, Inc.*, 507 U.S. 218 (1993) ................................................ 15

*Camreta v. Greene,*
    563 U.S. 692 (2011) ..................................................................... 17

*Chapman v. First Index, Inc.,*
    796 F.3d 783 (7th Cir. 2015) ........................................................ 12

*Diamond v. Charles,*
    476 U.S. 54 (1986) ......................................................................... 5

*Doe v. Irwin,*
    615 F.2d 1162 (6th Cir. 1980) ................................................. 19, 20

*Dunn-McCampbell Royalty Interest v. National Park Service,*
    112 F.3d 1283 (5th Cir. 1997) ................................................... 2, 3

*Epic Systems Corp. v. Lewis,*
    138 S. Ct. 1612 (2018)................................................................. 17

*Flynt v. Shimazu,*
    940 F.3d 457 (9th Cir. 2019) ........................................................ 2

*FMC Corp. v. Boesky,*
    852 F.2d 981 (7th Cir. 1988) ........................................................ 5

*Friends Of Marolt Park v. U.S. Dep't of Transportation,*
    382 F.3d 1088 (10th Cir. 2004) ................................................... 11

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ................................................................... 4, 5

*In re Horizon Healthcare Services Inc. Data Breach Litigation,*
    846 F.3d 625 (3d Cir. 2017) .......................................................... 6

*Johnson v. Allsteel, Inc.,*
    259 F. 3d 885 (7th Cir. 2001) ................................................. 10, 11

*Kansas v. Garcia,*
    140 S. Ct. 791 (2020).................................................................. 17

*Kelley v. Azar,*
    No. 4:20-CV-00283-O, 2021 WL 4025804 (N.D. Tex.).................... 2

*Kuhnle Brothers, Inc. v. County of Geauga,*
   103 F.3d 516 (6th Cir. 1997) .......................................................................... 1

*Leal v. Azar,*
   No. 2:20-CV-185-Z, 2020 WL 7672177 (N.D. Tex.) ...................................... 2

*Littlefield v. Forney Independent School District,*
   268 F.3d 275 (5th Cir. 2001) ....................................................................... 20

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ....................................................................................... 4

*Magwood v. Patterson,*
   561 U.S. 320 (2010) ..................................................................................... 17

*Maryland v. Louisiana,*
   451 U.S. 725 (1981) ..................................................................................... 15

*Massachusetts v. EPA,*
   549 U.S. 497 (2007) ..................................................................................... 10

*Milner v. Department of the Navy,*
   562 U.S. 562 (2011) ..................................................................................... 17

*Missouri Coalition for Environment v. FERC,*
   544 F.3d 955 (8th Cir. 2008) ...................................................................... 11

*Mountain States Legal Foundation v. Glickman,*
   92 F.3d 1228 (D.C. Cir. 1996) .................................................................... 10

*Natural Resources Defense Council v. EPA,*
   464 F.3d 1 (D.C. Cir. 2006) ........................................................................ 10

*New York v. Heckler,*
   719 F.2d 1191 (2d Cir. 1983) ...................................................................... 13

*NFIB v. Sebelius,*
   567 U.S. 519 (2012) ..................................................................................... 16

*Ocean Advocates v. U.S. Army Corps of Engineers,*
   402 F.3d 846 (9th Cir. 2005) ...................................................................... 11

*Parents United For Better Schools, Inc. v. School District of Philadelphia*
   *Board of Education,* 148 F.3d 260 (3d Cir. 1998) ............................................. 8

*Parents United For Better Schools, Inc. v. School District of Philadelphia*
   *Board of Education,* 646 A.2d 689 (Pa. Cmwlth. 1994) .............................. 9, 10

*Pennhurst State School and Hospital v. Halderman,*
   451 U.S. 1 (1981) .................................................................................. 15, 16

*Planned Parenthood Federation of America, Inc. v. Heckler,*
   712 F.2d 650 (D.C. Cir. 1983) .................................................................... 13

*Planned Parenthood of Houston & Southeast Texas v. Sanchez,*
  403 F.3d 324 (5th Cir. 2005) ........................................................ 18

*South Dakota v. Dole,*
  483 U.S. 203 (1987) .................................................................. 15

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ................................................................ 4, 5

*Steel Co. v. Citizens for a Better Environment,*
  523 U.S. 83 (1998) .................................................................. 12

*Stewart v. Blackwell,*
  444 F.3d 843 (6th Cir. 2006) ...................................................... 11

*Sutton v. St. Jude Medical S.C., Inc.,*
  419 F. 3d 568, 570–75 (6th Cir. 2005) .......................................... 10

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021).............................................................. 4, 5

*Troxel v. Granville,*
  530 U.S. 57 (2000) .................................................................. 20

*Utah ex rel. Div. of Forestry, Fire & State Lands v. United States,*
  528 F.3d 712 (10th Cir. 2008) .................................................... 4, 6

*Village of Elk Grove Village v. Evans,*
  997 F.2d 328 (7th Cir. 1993) ...................................................... 11

*Virginia Hospital Ass'n v. Baliles,*
  868 F.2d 653 (4th Cir. 1989) ....................................................... 1

*Warth v. Seldin,*
  422 U.S. 490 (1975) .................................................................. 5

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) .................................................................. 20

*Will v. Michigan Dep't of Police,*
  491 U.S. 58 (1989) .................................................................. 16

*Williams v. Seidenbach,*
  958 F.3d 341 (5th Cir. 2020) ...................................................... 12

**Statutes**

5 U.S.C. § 706(2)(A) ................................................................... 3

28 U.S.C. § 2201 ........................................................................ 3

42 U.S.C. § 300(a) ............................................................... passim

Tex. Family Code § 151.001(6) .................................................. 3, 13

**Other Authorities**

Cass R. Sunstein, *What's Standing After Lujan? Of Citizen Suits,*
*"Injuries," and Article III*, 91 Mich. L. Rev. 163 (1992)................................... 4

The Court's jurisdiction over this case is secure, and there is no conceivable conflict between the text of 42 U.S.C. § 300(a) and the parental-consent requirement of section 151.001(6) of the Texas Family Code. In addition, the defendants are violating the fundamental right of parents to consent to their children's medical treatment by administering a federal program that distributes birth control and prescription contraception to minors without obtaining parental consent. There are no genuine issues of material fact, and Mr. Deanda is entitled to judgment as a matter of law.

We will first address the defendants' jurisdictional objections before proceeding to the merits.

## I.  Mr. Deanda's Claim Is Timely

Mr. Deanda has sued to enjoin an *ongoing* violation of his constitutional and statutory rights. He is asking only for declaratory and injunctive relief to stop these unlawful acts from continuing; he is not seeking any backward-looking relief to remedy or undo an action that occurred in the past. The statute of limitations is simply inapplicable to claims that seek only prospective relief against the continued enforcement of an unlawful agency rule or policy. *See, e.g.*, *Virginia Hospital Ass'n v. Baliles,* 868 F.2d 653, 663 (4th Cir. 1989) ("[T]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations."), *aff'd in part on other grounds Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990); *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) ("A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment.").

The defendants have cited no case that holds that a plaintiff loses his right to seek prospective relief against the continued enforcement of an unlawful agency rule or policy unless he files suit within a specified time after its enactment. And we have been

unable to locate any case that enforces a statute-of-limitations defense in these situations. It is common for litigants to challenge the continued enforcement of old statutes, including statutes that criminalize abortion or define marriage as an opposite-sex union, and the courts have never held that the statute of limitations prevents litigants from seeking prospective relief against these statutes' future enforcement. That is because the plaintiff's "claims" accrue continually as the defendants persist in enforcing unconstitutional statutes (or unlawful agency rules) in a manner that affects the plaintiff. *See Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019) ("When the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitations period commences) with each new injury."). The same is true here: The defendants, by continuing to administer the Title X program in a manner that flouts the statutory and constitutional rights of parents, are engaged in an ongoing violation of the plaintiff's legal rights, and their intent to continue in this unconstitutional and unlawful conduct is what allows Mr. Deanda to seek declaratory and injunctive relief. A new cause of action "accrues" each day the defendants continue to administer Title X in violation of the law of Texas and the constitutional and statutory rights of parents. *See Leal v. Azar*, No. 2:20-CV-185-Z, 2020 WL 7672177, at *6–*7 (N.D. Tex. Dec. 23, 2020) ("Plaintiffs are *not* bringing an APA claim, nor are they challenging a final agency action. Instead, they are bringing a suit for injunctive relief . . . . By their very nature, these types of suits are seeking *prospective* relief for *ongoing* injuries. Statutes of limitations are simply inapplicable to such injuries."); *see also Kelley v. Azar*, No. 4:20-CV-00283-O, 2021 WL 4025804, at *8 (N.D. Tex. Feb. 25, 2021) ("Because Plaintiffs allege ongoing constitutional and statutory violations continuing to harm them, their claims are not time-barred.").

The defendants have relied on *Dunn-McCampbell Royalty Interest v. National Park Service*, 112 F.3d 1283 (5th Cir. 1997), which holds that "on a facial challenge to a regulation, the limitations period begins to run when the agency publishes the

regulation in the Federal Register." *Id*. at 1287. But Mr. Deanda has not brought a "facial challenge" (or any type of "challenge") to an agency rule, and he is not asking this court to "hold unlawful and set aside" any agency rule under section 706 of the APA. *See* 5 U.S.C. § 706(2)(A) (authorizing reviewing court to "hold unlawful and set aside" agency action that is "not in accordance with law"). Mr. Deanda is merely asking for a declaration of his rights under 28 U.S.C. § 2201, along with an injunction to ensure those rights are observed. *Dunn-McCampbell* does nothing to support the defendants' limitations argument against the claims the Mr. Deanda is actually pursuing.

## II.   Mr. Deanda Has Standing

The defendants continue to object to Mr. Deanda's standing and pursue arguments that this Court previously rejected in its order and opinion of September 24, 2020. *See* Order, Sept. 24, 2020, ECF No. 23 at 12–21. The defendants have presented no reason for this Court to alter the conclusions that it previously reached.

### A.   Mr. Deanda Is Suffering Article III Injury From The Loss Of His Statutory Rights Under Section 151.001(6) of the Texas Family Code

The law of Texas gives Mr. Deanda a statutory right to consent to his children's medical and dental care, and psychiatric, psychological, and surgical treatment. *See* Tex. Family Code § 151.001(6). The defendants have taken away this statutory right by insisting that Title X "preempts" section 151.001(6), and by administering a federal program that refuses to honor the state-law rights that Texas confers on parents. The federal government's removal of these state-law rights and protections—standing alone—is sufficient to establish injury in fact for Mr. Deanda or any parent in Texas who would otherwise be entitled to consent to their child's medical treatment under section 151.001(6). *See* Complaint, ECF No. 1 at ¶ 24(a); *see also Havens Realty*

*Corp. v. Coleman*, 455 U.S. 363, 373 (1982) ("[T]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." (citation and internal quotation marks omitted));[1] *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 721 (10th Cir. 2008) ("Although Article III standing is a question of federal law, state law may create the asserted legal interest."). This Court recognized as much in its order of September 24, 2020—and the Court's holding on this point is unassailable. *See* Order, Sept. 24, 2020, ECF No. 23 at 14 ("Plaintiff has suffered a per se statutory injury in fact.").

The defendants have not refuted the Court's analysis or conclusion from its order of September 24, 2020. Instead, the defendants have observed (correctly) that Congress cannot create Article III standing merely by creating a cause of action that authorizes plaintiffs to sue. *See* Defs.' Br., ECF No. 27 at 17 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), and *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); Cass R. Sunstein, *What's Standing After Lujan? Of Citizen Suits, "Injuries," and Article III*, 91 Mich. L. Rev. 163, 222–23 (1992) (criticizing *Lujan*). But Mr. Deanda is not asserting

---

1. The Court's order of September 24, 2020, criticized our reliance on *Havens Realty* and claimed that this ruling concerns only "whether prudential considerations could deprive a plaintiff of standing vis-a-vis a fair housing claim even though plaintiff satisfied the constitutional minimum requirement of injury-in-fact." Order, Sept. 24, 2020, ECF No. 23 at 12 n.13. We respectfully disagree and continue to believe that *Havens Realty* supports Mr. Deanda's Article III standing in this case. The Court is certainly correct to observe that *Havens Realty* rejected any attempt to impose prudential-standing obstacles to the plaintiffs' lawsuit in that case, *see* 455 U.S. at 372–73, but the opinion in *Havens Realty* goes on to consider whether the plaintiffs could satisfy Article III standing by alleging a violation of their statutory right to obtain truthful and accurate information—and it held unequivocally that a violation of this statutory right suffices to inflict Article III injury. *See Havens Realty*, 455 U.S. at 373–74.

standing by relying in any way on a congressionally created cause of action; he is alleging injury from the loss of his *state-law* right to consent to his minor children's medical treatment. And the loss of that right constitutes injury in fact regardless of whether Mr. Deanda can allege or prove that his children have been using the Title X program to obtain birth control behind his back. *See FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988) ("Properly pleaded violations of state-created legal rights, therefore, must suffice to satisfy Article III's injury requirement . . . even in the absence of a specific finding that FMC was injured."); *id.* (holding that "the invasion of a recognized state-law right in itself satisf[ies] Article III's injury requirement, even though an injury separate and apart from the actual invasion is difficult to identify"). *TransUnion*, *Spokeo*, and *Lujan* have nothing to say about standing to sue over the loss of a state-law legal entitlement; they merely limit the power of Congress to invent new types of "injuries" that bear no relationship to the types of harm "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2200.

The Supreme Court has long held that Congress and the states may create legally cognizable rights in their statutes, and the deprivation of these statutory rights can inflict Article III injury without any additional showing of harm. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) ("[T]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." (citation and internal quotation marks omitted)); *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (same); *Diamond v. Charles*, 476 U.S. 54, 65 n.17 (1986) ("The Illinois Legislature, of course, has the power to create new interests, the invasion of which may confer standing. In such a case, the requirements of Art. III may be met."); *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016) ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case

need not allege any *additional* harm beyond the one Congress has identified." (citations omitted)); *see also In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 635 (3d Cir. 2017) ("[I]n some circumstances, that the breach of a statute is enough to cause a cognizable injury—even without economic or other tangible harm."); *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 721 (10th Cir. 2008) ("Although Article III standing is a question of federal law, state law may create the asserted legal interest."). The statutory rights established in section 151.001(6) give Mr. Deanda the prerogative to consent before their children obtain prescription contraception. The federal government's decision to strip Mr. Deanda of the parental prerogatives conferred by section 151.001(6) inflicts injury in fact, without any need to show additional harm beyond the loss of their state-law statutory rights.

The defendants have also suggested that Mr. Deanda is asserting a mere "informational" injury, and that he cannot sue unless and until he obtains false or misleading information. *See* Defs.' Br., ECF No. 27 at 18 (citing *Havens Realty*, 455 U.S. at 373–75). But the premise of the defendants' argument is wrong. Mr. Deanda's injury comes from the loss of his statutory right to *consent* to his children's medical treatment; he is not alleging that his injury comes from the mere receipt of misleading information. *See Havens Realty*, 455 U.S. at 373–74 (tester who received false information suffered "injury in fact" because a federal statute gave him a right to receive truthful information). The tester in *Havens Realty* who received truthful information, for example, could not allege any possible invasion of his *statutory* rights because no one deprived him of his statutory right to receive truthful information—either by providing false information or by threatening to revoke his legal entitlement to a truthful response. *See Havens Realty*, 455 U.S. at 377–75. In this case, by contrast, the defendants have stripped Mr. Deanda of their state-law statutory rights to consent to their children's medical treatment by insisting that the Title X statute preempts

Texas's parental-consent laws. That undeniably qualifies as an "invasion" of a statutory right; indeed, it is a wholesale revocation of a state-law statutory entitlement.

The loss of the right to consent to a child's medical treatment inflicts injury in fact *per se*, and there is no need to establish additional harms beyond the lost prerogative. Imagine a divorce decree that gives one of the spouses the authority to consent to a child's access to birth control without notifying or obtaining consent from the other spouse. The spouse who has been denied the prerogative to consent would surely have standing to appeal a divorce decree of this sort, even if there is no way to know whether the child will ever seek to obtain family-planning services. The loss of the parental right to consent to treatment *is* injury in fact. And when a parent is told that his state-law right to consent to his child medical treatment has been taken away or transferred to someone else, he will have standing to sue to reclaim that right—and he need not wait for an actual medical situation to arise before suing to recover his right to consent.

So too here. Mr. Deanda's state-law right to consent before his child obtains prescription contraception has been taken away and transferred to the federal government and the participants in its Title X program. The loss of that state-law prerogative inflicts Article III injury, and Mr. Deanda may sue to reclaim that state-law right. He need not wait until one of his daughters attempts to access prescription contraception through the Title X program; indeed, Mr. Deanda is unlikely to know whether this is happening because the Title X program flouts the Texas laws that require parental notification and consent before dispensing prescription contraception to minors. Mr. Deanda's injury comes the removal of his state-law right to consent to his daughters' medical treatment, and that is the injury that Mr. Deanda is seeking to redress in this litigation.

**B.     The Defendants Are Inflicting Immediate, Present-Day Injury On Mr. Deanda By Subverting His Authority As A Parent**

The defendants' implementation of the Title X program also inflicts immediate, present-day injury on Mr. Deanda by subverting his authority as a parent. *See* Deanda Decl., at ¶ 9(b) (attached as Exhibit 1). The mere fact that the federal government is administering a program that offers contraception to minors without parental knowledge or consent undermines the authority of parents who want to prevent their children from accessing birth control and family-planning services. And it renders parents such as Mr. Deanda unable to prevent their children from accessing contraception or other family-planning services behind their backs. This erosion of parental authority and control inflicts present-day injury in fact—regardless of whether Mr. Deanda's children are actually obtaining birth control from Title X participants.

The defendants continue to insist that Mr. Deanda is alleging nothing more than a speculative, future injury that depends on the conduct of third parties such as Mr. Deanda's children and Title X participants. *See* Defs.' Br., ECF No. 27 at 19. But that mischaracterizes the injury that Mr. Deanda is asserting. He is not claiming injury by asserting that his daughters *will* obtain birth control and family-planning services from Title X participants; he is instead claiming injury from the subversion of his parental authority, which is an immediate, present-day injury rather than a contingent or hypothetical future harm. And this injury does not in any way depend on whether one's children are actually obtaining (or trying to obtain) birth control from Title X participants. It is no different from a public school that decides to distribute condoms without parental notification or consent. A parent whose children attend that school would have standing from the mere fact that condoms have been made available; he would not need to allege or show that his children would actually obtain (or try to obtain) the prophylactics. *See Parents United For Better Schools, Inc. v. School District of Philadelphia Board of Education*, 148 F.3d 260 (3d Cir. 1998) (allowing parents to

challenge condom-distribution program in the Philadelphia public schools on the ground that it subverts their authority as parents, while rejecting the parents' challenge to the program on the merits); *Parents United For Better Schools, Inc. v. School District of Philadelphia Board of Education*, 646 A.2d 689, 691 (Pa. Cmwlth. 1994) (holding that parents have standing to challenge condom-distribution program in the Philadelphia public schools, even though the program allowed parents to opt their children out of the program by mailing in a "veto form," because parents suffered injury from the loss of their prerogative to "consent . . . before medical treatment [is] provided").

### C.  The Defendants Are Inflicting Immediate, Present-Day Injury On Mr. Deanda By Depriving Him Of The Assurance That His Children Will Be Unable To Access Family-Planning Services

Mr. Deanda is also suffering present-day injury in fact from the loss of assurance that his children will be unable to access prescription contraception or other family-planning services, because the Title X program is offering these services to all minors in Texas without any requirement of parental notification or consent. *See* Deanda Decl., at ¶ 9(c) (attached as Exhibit 1). The law of Texas provided this assurance in section 151.001(6) of the Texas Family Code, which outlaws the distribution of prescription contraception to minors without parental consent. The defendants' conduct removes the assurance that the law of Texas would otherwise provide. Now Mr. Deanda can only wonder whether his children are obtaining prescription contraception and other birth control behind their back.

This injury—like the subversion-of-parental-authority injury—is an immediate, present-day injury rather than a speculative or contingent future harm. Yet the defendants' previous briefing does not address this injury, and continues to insist that Mr. Deanda's alleged injuries are merely "conjectural" or describe "future harm." Defs.' Br., ECF No. 27 at 15, 19. An injury of this sort would sustain a parental

challenge to a school district's condom-distribution program. *See Parents United*, 646 A.2d 689. No different result should obtain when the condoms and birth control are distributed by the federal government.

> ### D.    The Defendants Are Inflicting Immediate, Present-Day Injury On Mr. Deanda By Subjecting Him To An Increased Risk That His Children Might Access Birth Control Without His Knowledge Or Consent

The defendants' actions are also inflicting present-day injury on Mr. Deanda by increasing the risk that his children might access birth control without his knowledge and consent. *See Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) ("[E]ven a small probability of injury is sufficient to create a case or controversy—to take a suit out of the category of the hypothetical—provided of course that the relief sought would, if granted, reduce the probability" (citation and internal quotation marks omitted)).

It is not necessary for Mr. Deanda to allege or prove that his children actually *will* seek or obtain family-planning services from a Title X participant, as the defendants have argued. It has long been established that an act that increases the risk of a future harm imposes present-day injury on those who are subjected to the increased risk— even if the actual risk of the future harm occurring is small. *See Massachusetts*, 549 U.S. at 525 n.23; *Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228, 1234–35 (D.C. Cir. 1996) (plaintiff established standing to challenge the government's decision to limit timber harvesting by alleging an increased risk of wildfires); *Natural Resources Defense Council v. EPA*, 464 F.3d 1, 7 (D.C. Cir. 2006) (plaintiffs established standing to challenge government decision deregulating methyl bromide by alleging an increased lifetime risk of developing skin cancer); *Sutton v. St. Jude Medical S.C., Inc.*, 419 F.3d 568, 570–75 (6th Cir. 2005) (standing based on increased risk of harm caused by implantation of defective medical device); *Johnson v. Allsteel, Inc.*, 259 F.3d 885, 888–91 (7th Cir. 2001) (standing based on increased risk

that Employee Retirement Income Security Act beneficiary will not be covered due to increased amount of discretion given to ERISA administrator); *id.* at 888 ("The increased risk the participant faces as a result is an injury-in-fact."); *Village of Elk Grove Village v. Evans,* 997 F.2d 328, 329 (7th Cir. 1993) (finding standing because "[t]he Village is in the path of a potential flood" and "even a small probability of injury is sufficient to create a case or controversy."); *Missouri Coalition for Environment v. FERC*, 544 F.3d 955, 957 (8th Cir. 2008) (holding that "a potentially increased risk of environmental harm" is sufficient to confer Article III standing); *Friends Of Marolt Park v. U.S. Dep't of Transportation*, 382 F.3d 1088, 1095 (10th Cir. 2004) (plaintiff established Article III standing by alleging "an increased risk of harm" to a park that its members use for recreational purposes); *Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 860 (9th Cir. 2005) (plaintiff established Article III standing to challenge an oil tanker dock expansion by alleging an "increase in the risk of an oil spill"); *id.* ("[T]he alleged injury is not conjectural or hypothetical, as 'an increased risk of harm can itself be injury in fact for standing'" (quoting *Ecological Rights Found. v. Pac. Lumber Co.,* 230 F.3d 1141, 1149 (9th Cir. 2000)); *Constellation Energy Commodities Group, Inc. v. FERC*, 457 F.3d 14, 20 (D.C. Cir. 2006) ("We agree with Edison that the increased risk of non-recovery inherent in the reduction of collateral securing a debt of uncertain amount is sufficient to support its standing."); *Stewart v. Blackwell*, 444 F.3d 843, 855 (6th Cir. 2006), vacated and superseded on other grounds, 473 F.3d 692 (6th Cir. 2007) ("The plaintiffs here have alleged an injury in fact sufficient to confer Article III standing. The increased probability that their votes will be improperly counted based on punch-card and central-count optical scan technology is neither speculative nor remote.").

There is no question that the defendants' implementation of the Title X program increases the risk that the children of Mr. Deanda will obtain birth control against his wishes, because it purports to preempt a Texas statute that *requires* parental consent

before dispensing prescription contraception to minors. That alone suffices to establish standing under *Massachusetts* and the cases cited above, so long as the requested relief will "reduce" this risk. The defendants are correct to observe that rank speculation cannot support standing under Article III, but there is nothing speculative about the assertion that the defendants' administration of Title X increases the risk of Mr. Deanda's children accessing family-planning services without his knowledge and consent, and there is nothing speculative about his claim that the requested relief will reduce that risk. The imposition of this increased risk imposes a certain, present-day injury on Mr. Deanda, and the existence of that injury does not depend on speculation about what might happen in the future.

Finally, this Court has already held that the plaintiffs' increased-risk argument establishes standing under Article III, and the defendants have not rebutted or addressed the Court's previous analysis of this issue. *See* Order, Sept. 24, 2020, ECF No. 23 at 19–20.[2]

---

2. We disagree with the plaintiffs' previous request that the Court enter "judgment" in their favor if it concludes that Mr. Deanda lacks standing. *See* Defs.' Br., ECF No. 27 at 20. The absence of Article III standing deprives a federal court of subject-matter jurisdiction, so if this Court concludes that Mr. Deanda lacks standing it should enter an order dismissing the case for lack of jurisdiction rather than a "judgment" in favor of a party. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); *Williams v. Seidenbach*, 958 F.3d 341, 369 (5th Cir. 2020) (Oldham, J., dissenting) ("Often, for example, a district court will announce its lack of jurisdiction, dismiss the case without prejudice, and then purport to enter a 'final judgment' under Rule 58. That last step is obviously wrong because, again, the lack of jurisdiction means the lack of federal judicial power to do *anything* beyond announce the fact and dismiss." (citations omitted)); *Chapman v. First Index, Inc.*, 796 F.3d 783, 786 (7th Cir. 2015) (Easterbrook, J.) ("[A] district court cannot enter judgment in a moot case. All it can do is dismiss for lack of a case or controversy.").

### III.   Mr. Deanda Is Entitled To Judgment As A Matter Of Law

The defendants continue to insist that section 151.001(6) is preempted by the Title X statute, and they deny that the Title X program, as currently administered, violates the constitutional right of parents to direct the upbringing of their children or the Religious Freedom Restoration Act. We will address each of these arguments in turn.

### A.    The Title X Statute Does Not Preempt Section 151.001(6)

The issue in this case is *not* whether the text of 42 U.S.C. § 300(a) can or should be interpreted to *require* Title X participants to obtain parental consent before dispensing birth control or prescription contraception to minors. The Reagan Administration attempted to interpret the Title X statute that way in 1983, and it was rebuffed by the federal courts.[3] But Mr. Deanda is *not* challenging those rulings, because he is not arguing that federal law requires parental consent—nor is he arguing that federal law requires Title X participants to comply with a state's parental-consent laws. The Court's order of September 24, 2020, suggests that Mr. Deanda is arguing that 42 U.S.C. § 300(a) should be interpreted to "require[] Title X grantees to encourage family participation in minors' contraception decisions to the greatest extent practical—given each state's law."[4] Order, Sept. 24, 2020, ECF No. 23 at 24. But that is not what Mr. Deanda is arguing.

The requirement to provide parental consent comes entirely from the law of Texas,[5] and this requirement is not incorporated by reference into 42 U.S.C. § 300(a) or any other source of federal law. And Mr. Deanda is not in any way suggesting that

---

3. *See New York v. Heckler*, 719 F.2d 1191 (2d Cir. 1983); *Planned Parenthood Federation of America, Inc. v. Heckler*, 712 F.2d 650 (D.C. Cir. 1983).

4. The Court's order of September 24, 2020, correctly observed that the text of 42 U.S.C. § 300(a) is ambiguous on this question. *See* Order, Sept. 24, 2020, ECF No. 23 at 24 ("The plain text can support either interpretation.").

5. *See* Tex. Family Code § 151.001(6).

federal law should be read to impose any type of parental-consent or parental-notification requirement—even though he acknowledges that it is *possible* to construe 42 U.S.C. § 300(a) that way. Instead, the issue in this case is whether 42 U.S.C. § 300(a) *preempts* a *state-law* parental-consent requirement; it is not about whether 42 U.S.C. § 300(a) independently imposes such a requirement.

And the answer to that question does not depend on the meaning of the phrase "to the extent practical" in 42 U.S.C. § 300(a). The Court's thorough and scholarly discussion on this issue in its order of September 24, 2020, affects only the federally mandated *floor* when it comes to parental involvement. *See* Order, Sept. 24, 2020, ECF No. 23 at 25–27. But Mr. Deanda, again, is not arguing that federal law requires parental consent. He is merely claiming that there is nothing in federal law that purports to *prohibit* a Title X entity from obtaining parental consent—so there cannot be a "conflict" between the requirements of 42 U.S.C. § 300(a) and the parental-consent regime of section 151.001(6). The Title X statute merely establishes the *minimum* amount that Title X participants must do concerning parental involvement; it does not purport to establish a *ceiling* on parental involvement, and it does not prevent states from requiring additional parental involvement that goes beyond the baseline level required by 42 U.S.C. § 300(a).

To see this, consider once again the text of 42 U.S.C. § 300(a):

> The Secretary is authorized to make grants to and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents). To the extent practical, *entities which receive grants or contracts under this subsection shall encourage family participation in projects assisted under this subsection.*

42 U.S.C. § 300(a) (emphasis added). This statutory language establishes a *baseline requirement* for Title X funding recipients when it comes to parental involvement:

Every recipient of a Title X grant or contract *must*, "to the extent practical . . . encourage family participation" in Title X projects. An entity that fails to "encourage family participation" in Title X projects is categorically eligible to receive a Title X grant or contract, and the Secretary violates the Title X statute if he provides grants or contracts to such an entity.

But nothing in this statutory language prohibits Title X funding recipients from going beyond a mere policy of "encouraging family participation." A Title X participant, for example, would not violate federal law if it decided to establish a categorical policy of notifying or seeking consent from parents before dispensing prescription contraception or other family-planning services to minors. And if there is nothing that prohibits a Title X participant from establishing and enforcing a policy of this sort, then there is nothing that prevents a state from doing so either. There is *absolutely nothing* in the text of 42 U.S.C. § 300(a) that purports to preempt or override state or federal laws that require more extensive parental involvement, and there is nothing in 42 U.S.C. § 300(a) that purports to exempt Title X projects from those laws.

This statutory language comes nowhere close to overcoming the presumption against preemption that applies to federal legislation. *See Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law."); *Building and Construction Trades Council of the Metropolitan District v. Associated Builders and Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 224 (1993) ("We are reluctant to infer pre-emption.").

More importantly, the Supreme Court has repeatedly held that conditions on the receipt of federal funds must be spelled out in clear and unambiguous language. *See Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981) ("[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously."); *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (same); *Will v.*

*Michigan Dep't of Police*, 491 U.S. 58, 65 (1989) ("Congress should make its intention 'clear and manifest' . . . if it intends to impose a condition on the grant of federal moneys" (citation omitted); *see also NFIB v. Sebelius*, 567 U.S. 519, 576–77 (2012) (opinion of Roberts, C.J., joined by Breyer and Kagan, JJ.); *id*. at 676 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting). Because Title X is an exercise of the federal spending power, there must be a clear and unambiguous statement that participating States are forbidden to enforce their parental-involvement laws against Title X projects before the Texas laws can be deemed "preempted" by the Title X statute.

The defendants' previous briefing did not analyze the *text* of the Title X statute, and it presented no argument for how that statutory language can be read to forbid states to require parental consent in Title X programs. Nor did the defendants acknowledge the presumption against preemption—and they presented no argument for how the language of 42 U.S.C. § 300(a) could overcome that presumption. And they did not discuss *Pennhurst*'s clear-statement rule, even though the defendants' interpretation of 42 U.S.C. § 300(a) purports to impose "conditions on the grant of federal moneys" that need to be spelled out in clear and unambiguous statutory language. *See Pennhurst*, 451 U.S. at 17; *NFIB*, 567 U.S. at 576–77 (opinion of Roberts, C.J., joined by Breyer and Kagan, JJ.); *id*. at 676 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting).

Most importantly, the defendants have never attempted to explain how section 151.001(6) can possibly contradict a federal statute that merely requires Title X recipients to "encourage family participation." The federal statute does nothing more than establish the *minimum* requirement for Title X participants on the issue of family involvement. There is nothing in 42 U.S.C. § 300(a) that prevents a Title X recipient from going beyond this mandatory minimum, and there is nothing in 42 U.S.C. § 300(a) that purports to exempt Title X entities from state laws that require additional parental involvement. A state law would be preempted if it *prohibited* Title X

recipients from "encouraging family participation," but section 151.001(6) does nothing of the sort.

The defendants are certainly correct to observe that other courts have held that Title X "preempts" state parental-notification and consent laws. *See* Defs.' Br., ECF No. 27 at 22–23. But none of those cases are binding authority, and they may not be followed unless this Court, in its independent judgment, finds them persuasive. *See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Milner v. Department of the Navy*, 562 U.S. 562, 576 (2011) ("[W]e have no warrant to ignore clear statutory language on the ground that other courts have done so."). And none of these court rulings have explained *how* the language of 42 U.S.C. § 300(a) can possibly preempt parental-consent laws such as section 151.001(6). As we have explained, the text of 42 U.S.C. § 300(a) establishes a *floor* and not a ceiling for parental involvement. *See* 42 U.S.C. § 300(a) ("To the extent practical, entities which receive grants or contracts under this subsection *shall encourage family participation in projects assisted under this subsection*." (emphasis added)). None of the court decisions that find "preemption" acknowledge this inconvenient fact. Instead, the opinions ruminate about Congress's "purposes" and "intentions" and cite committee reports, which is not law of any sort. *See Magwood v. Patterson*, 561 U.S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Congress' intent."); *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018) ("[L]egislative history is not the law."). The enacted language of 42 U.S.C. § 300(a) is the *only* relevant consideration, and any argument for preemption must be grounded in what that statute actually says. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1737 (2020) ("Only the written word is the law"); *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020) ("In all cases, the federal restrictions or rights that are said to conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress."); *id.* ("There is no federal preemption *in vacuo*, without

a constitutional text, federal statute, or treaty made under the authority of the United States." (citation and internal quotation marks omitted)).

The defendants seem to think that the brute fact that other courts have found that 42 U.S.C. § 300(a) "preempts" state parental-consent laws is somehow a reason for this Court to do the same. But none of those cases present an argument based on the language of 42 U.S.C. § 300(a), and neither does the defendants' previous briefing. There is simply no conflict between a federal statute that requires Title X entities to "encourage family participation" and a state statute that requires those entities to obtain parental consent before dispensing prescription contraception to minors. And until the defendants can explain *how* the text of 42 U.S.C. § 300(a) contradicts the laws of Texas, its preemption argument cannot get off the ground.

The defendants have observed that Congress enacted another federal statute, Title XX, which "expressly requires family involvement by mandating parental notification and consent," and they argue that the absence of such explicit language in the Title X statute implies that no such parental-consent requirement is mandated for Title X participants. *See* Defs.' Br., ECF No. 27 at 23 (citation and internal quotation marks omitted). This argument does nothing to help the defendants because Mr. Deanda *is not arguing* that the Title X statute requires parental consent—and he is not arguing that the Title X statute (or any provision of federal law) should be construed to impose such a requirement. *See supra* at 13–14. His claim is only that 42 U.S.C. § 300(a) *does not preempt* state laws that require more extensive parental involvement than the bare minimum required by the Title X statute. The defendants' citation of *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324 (5th Cir. 2005), is equally unavailing because Texas is not imposing conditions on the receipt of federal funds; it is simply insisting that Title X participants comply with the state's generally applicable laws—in the same way that Title X recipients must obey and remain subject to the state's laws prohibiting robbery and murder.

**B.     The Defendants' Administration Of The Title X Program Violates The Constitutional Right Of Parents To Direct The Upbringing Of Their Children**

The defendants think that the constitutional right of parents to direct the upbringing of their children is implicated only by coercive government policies, rather than by voluntary programs that merely offer birth control and prescription contraception to minors without obtaining parental consent. *See* Defs.' Br., ECF No. 27–28 (citing *Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980); *Anspach v. Philadelphia*, 503 F.3d 256, 262 (3d Cir. 2007)). Mr. Deanda thinks the constitutional right of parents extends more broadly and is implicated by government measures that subvert parental authority by allowing children to obtain medical treatment against their parents' wishes and without their parents' knowledge.

It is hard to understand the defendants' argument that offering "purely voluntary" services to children—without any parental notification or consent—is somehow less of an affront to parental authority than a coercive government action. *See* Defs.' Br., ECF No. 27; *see also id*. ("Because these services are voluntary, these projects do not in any way limit Plaintiff's ability to make decisions concerning his children."). A parent's right to consent to his child's medical treatment is violated regardless of whether that medical treatment is forcibly imposed on the child or administered with the child's consent but without the parent's knowledge of approval. The entire premise behind parental authority and the constitutional right of parents to direct their children's upbringing is that children are legally incapable of consenting to medical treatment or other major life decisions, which is why parents are given the right to consent for them. And the right of the parent to consent to his child's medical treatment is equally infringed when the child "voluntarily" receives medical treatment behind her parents' back, no less than when the medical treatment is imposed against the child's wishes. The opinions in *Irwin* and *Anspach* made much of the fact that the

children in those cases were "voluntarily" obtaining contraception and family-planning materials without their parents' knowledge,[6] but the opinions did nothing explain how the voluntary nature of these programs did anything alleviate the infringement on parental authority.

The defendants are also wrong to say that rational-basis review should apply to these infringements on Mr. Deanda's constitutional right to direct the upbringing of his children. *See* Defs.' Br., ECF No. 31–32 (citing *Littlefield v. Forney Independent School District*, 268 F.3d 275, 291 (5th Cir. 2001)). *Littlefield* held that rational-basis review applies only when parental rights are asserted in the context of public education. *See Littlefield*, 268 F.3d at 289 ("We . . . follow almost eighty years of precedent analyzing parental rights *in the context of public education* under a rational-basis standard." (emphasis added)); *id.* at 291 ("*Troxel* does not change the above reasoning in the context of parental rights *concerning public education*." (emphasis added)); *id.* ("[A] rational-basis test is the appropriate level of scrutiny for parental rights *in the public school context*." (emphasis added)). Littlefield did *not* hold that the rational-basis test applies to every alleged violation of parental rights, as the defendants have claimed in their previous briefing. Indeed, any such suggestion would directly contradict the Supreme Court's precedent, which applies "strict scrutiny" to "fundamental" rights that are "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997); *see also Troxel v. Granville*, 530 U.S. 57, 80 (2000) (Thomas, J., concurring in the judgment). The right of parents to consent to the medical treatment of their children is assuredly an interest that is "deeply rooted in this Nation's history and tradition," and the defendants have not argued to the contrary. Any infringement on this right must therefore be subjected to strict scrutiny,

---

6.  *See Doe*, 615 F.2d at 1162, 1168; *Anspach*, 503 F.3d at 262, 268.

which allows the government to override this right only when necessary to advance a compelling governmental interest.

The government would certainly have a compelling governmental interest in overriding the wishes of parents who seek to deny life-saving medical treatment to their children, and it might have a compelling interest in requiring vaccinations over parental objections. But there is no such "compelling" interest at stake when it comes to the provision of birth control. These are not matters of life or death, and parental authority cannot be subordinated to the views of federal officials or Title X entities who think they can make better decisions regarding a child's welfare.

## CONCLUSION

The plaintiff's motion for summary judgment should be granted.

Respectfully submitted.

 */s/ Jonathan F. Mitchell*

D. Bryan Hughes
Texas Bar No. 00793995
Law Office of D. Bryan Hughes
110 North College Avenue, Suite 207
Tyler, Texas 75702-7221
(903) 581-1776 (phone)
bryan@hughesfirm.com

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, LLP
1200 Summit Avenue, Suite 860
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Alex Yarbrough
Texas Bar No. 24079615
Riney & Mayfield LLP
320 South Polk Street, Suite 600
Amarillo, Texas 79101
(806) 468-3202 (phone)
(806) 376-4509 (fax)
ayarbrough@rineymayfield.com

Dated: July 25, 2022                    *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on  July 25, 2022, I served this document through CM/ECF upon:

Amber Richer
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
 (202) 514-3489
amber.richer@usdoj.gov

*Counsel for the Defendants*

             /s/ Jonathan F. Mitchell
             Jonathan F. Mitchell
             *Counsel for Plaintiff*