**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| ALEXANDER R. DEANDA, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 2:20-cv-92-Z |
| XAVIER BECERRA, in his official capacity as | ) |
| Secretary of Health and Human Services; | ) |
| JESSICA SWAFFORD MARCELLA, in her | ) |
| official capacity as Deputy Assistant | ) |
| Secretary for Population Affairs; UNITED | ) |
| STATES OF AMERICA, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**CONSOLIDATED BRIEF IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR**
**SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT**

## TABLE OF CONTENTS

SUMMARY ......................................................................................................................... 1

BACKGROUND ............................................................................................................... 2

    I.      Statutory and Regulatory Background.......................................................... 2

        A.    Title X of the Public Health Service Act ............................................. 2

        B.    History of Litigation Concerning Minors' Access to Confidential Family Planning Services Under Title X ............................................................ 4

    II.     Current Proceedings..................................................................................... 7

STANDARD OF REVIEW ................................................................................................ 8

ARGUMENT ...................................................................................................................... 8

    I.      Plaintiff Cannot Establish Subject Matter Jurisdiction................................. 8

        A.    The Statute of Limitations Bars Plaintiff's Claims................................ 8

        B.    Plaintiff Fails to Set Forth Specific Facts Establishing Standing ........................ 11

                1.    Plaintiff Has Not Suffered an Injury in Fact Under State Law........... 13

                2.    Plaintiff Has Not Suffered an Injury in Fact from Subversion or Loss of Assurance of His Parental Authority ..................................... 16

                3.    Plaintiff Has Not Suffered an Injury in Fact from Increased Risk ..................................................................................................... 17

    II.     Defendants Are Entitled to Summary Judgment ......................................... 18

        A.    Title X Precludes Mandatory Parental Notification or Consent ........................... 19

        B.    Voluntary Title X Services Do Not Interfere with Plaintiff's Parental Rights ................................................................................................... 22

                1.    The Availability of Voluntary Title X Services Does Not Interfere with Plaintiff's Parental Rights ............................................ 23

                2.    Title X Reasonably Achieves Legitimate Government Interests........ 27

    III.    Relief, If Any, Must Be Limited to the Plaintiff.......................................... 29

CONCLUSION.................................................................................................................. 29

# TABLE OF AUTHORITIES

**CASES**

*Amerisure Ins. Co. v. Navigators Ins. Co.*,
611 F.3d 299 (5th Cir. 2010) ................................................. 8

*Anspach v. Philadelphia*,
503 F.3d 256 (3d Cir. 2007) ............................... 23, 24, 27, 29

*Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*,
217 F.3d 393 (5th Cir. 2000) ........................................ 10, 11

*Camacho v. Tex. Workforce Comm'n*,
326 F. Supp. 2d 803 (W.D. Tex. 2004) ............................... 21

*Castro v. United States*,
560 F.3d 381 (5th Cir. 2009) ............................................. 13

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ............................... 8, 11, 12, 18

*County of St. Charles v. Missouri Family Health Council*,
107 F.3d 682 (8th Cir. 1997) .......................... 6, 7, 19, 21

*Daniels v. United States*,
532 U.S. 374 (2001) ........................................................ 9

*Doe v. Irwin*,
615 F.2d 1162 (6th Cir. 1980) ............................. 23, 24, 27

*Doe v. Pickett*,
480 F. Supp. 1218 (S.D. W.Va. 1979) .................... 6, 19, 21

*Doe v. Tangipahoa Par. Sch. Bd.*,
494 F.3d 494 (5th Cir. 2007) (en banc) ........................... 11

*Doe v. Veneman*,
380 F.3d 807 (5th Cir. 2004) ........................................... 29

*Duchek v. Jacobi*,
646 F.2d 415 (9th Cir. 1981) ........................................... 14

*Dunn-McCampbell Royalty Int. v. Nat'l Park Serv.*,
112 F.3d 1283 (5th Cir. 1997) ..................................... 9, 13

*Felter v. Kempthorne*,
473 F.3d 1255 (D.C. Cir. 2007) .............................. 9, 10, 11

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ............................. 14

*Fiedler v. Clark*,
  714 F.2d 77 (9th Cir. 1983) ......................................................................... 14

*FMC Corp. v. Boesky*,
  852 F.2d 981 (7th Cir. 1988) ................................................................. 15, 16

*Freeman v. Quicken Loans, Inc.*,
  566 U.S. 624 (2012) ................................................................................... 19

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018) ............................................................................... 29

*Ginsberg v. New York*,
  390 U.S. 629 (1968) ................................................................................... 28

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ................................................................................... 15

*Henderson v. Stalder*,
  287 F.3d 374 (5th Cir. 2002) ..................................................................... 11

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ................................................................................... 14

*In re Papst Licensing, GmbH, Patent Litig.*,
  2000 U.S. Dist. LEXIS 18316 (E.D. La. Nov. 6, 2000) ........................... 14

*Jane Does 1 through 4 v. Utah Dep't of Health*,
  776 F.2d 253 (10th Cir. 1985) ........................................................ 7, 19, 21

*Kendall v. Army Bd. for Corr. of Military Records*,
  996 F.2d 362 (D.C. Cir. 1993) ..................................................................... 9

*Khan v. Children's Nat'l Health Sys.*,
  188 F. Supp. 3d 524 (D. Md. 2016) ........................................................... 14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ..................................................................................... 8

*Larson v. Domestic & Foreign Com. Corp.*,
  337 U.S. 682 (1949) ................................................................................... 10

*Lassiter v. Dep't of Soc. Servs. of Durham Cnty*,
  452 U.S. 18 (1981) ..................................................................................... 26

*Leal v. Azar*,
  No. 2:20-cv-185-Z, 2020 WL 7672177 (N.D. Tex. Dec. 23, 2020), *vacated and remanded on other grounds in Leal v. Becerra*, No. 21-cv-10302, 2022 WL 2981427 (July 27, 2022) ..... 10

*Littlefield v. Forney Indep. Sch. Dist.*,
  268 F.3d 275 (5th Cir. 2001) ........................................................ 27, 28, 29

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................ *passim*

*M.L.B. v. S.L.J.*,
    519 U.S. 102 (1996) ........................................................................................ 26

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*,
    997 F.3d 436 (2d Cir. 2021) ........................................................................... 14

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994) ........................................................................................ 29

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ................................................................................. 17, 18

*McGregor v. La. State Univ. Bd. of Supervisors*,
    3 F.3d 850 (5th Cir. 1993) ............................................................................. 10

*Merritt-Campbell, Inc. v. RxP Prods., Inc.*,
    164 F.3d 957 (5th Cir. 1999) ........................................................................... 8

*Meyer v. Nebraska*,
    262 U.S. 390 (1923) ................................................................................. 24, 29

*Miss. State Democratic Party v. Barbour*,
    529 F.3d 538 (5th Cir. 2008) ......................................................................... 11

*Moreno v. McAllen Indep. Sch. Dist.*,
    No. 7:15-cv-162, 2016 U.S. Dist. LEXIS 44108 (S.D. Tex. Mar. 31, 2016) ........................ 23

*Mountain States Legal Found. v. Glickman*,
    92 F.3d 1228 (D.C. Cir. 1996) ................................................................. 17, 18

*Nat'l Pork Producers Council v. EPA*,
    635 F.3d 738 (5th Cir. 2011) ........................................................................... 9

*New York v. Heckler*,
    719 F.2d 1191 (2d Cir. 1983) ......................................................... 6, 10, 19, 21

*Parents United for Better Schools, Inc. ("PUBS") v. School Dist. of Philadelphia Bd. of Educ.*,
    148 F.3d 260 (3d Cir. 1998) ..................................................................... 16, 17

*Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*,
    971 S.W. 2d 439 (Tex. 1998) ................................................................. 7, 21, 22

*Pennhurst State School & Hosp. v. Halderman*,
    451 U.S. 1 (1981) ........................................................................................... 21

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*,
    268 U.S. 510 (1925) ................................................................................. 24, 29

*Planned Parenthood Ass'n of Utah v. Matheson*,
    582 F. Supp. 1001 (D. Utah 1983) ...................................................... 7, 19, 20, 21

*Planned Parenthood Fed'n of Am., Inc. v. Heckler*,
    712 F.2d 650 (D.C. Cir. 1983) ...................................................... *passim*

*Planned Parenthood of Houston & Se. Tex. v. Sanchez*,
    403 F.3d 324 & n.84 (5th Cir. 2005) .......................................... 19, 20

*PUBS v. Sch. Dist. of Phila. Bd. of Educ.*,
    646 A.2d 693 (Pa. Commw. Ct. 1994) ........................................ 16, 17

*Reno v. Flores*,
    507 U.S. 292 (1993) ...................................................................... 23

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ...................................................................... 13

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .................................................................. 13

*St. Tammany Par., ex rel. Davis v. FEMA*,
    556 F.3d 307 (5th Cir. 2009) ........................................................ 13

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .......................................................................... 8

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) ........................................................ 11

*Texas v. Rettig*,
    987 F.3d 518 (5th Cir. 2021) ................................................ 8, 9, 13

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ........................................................ 13, 15, 18

*Troxel v. Granville*,
    530 U.S. 57 (2000) ................................................................ *passim*

*United States v. Flores-Martinez*,
    677 F.3d 699 (5th Cir. 2012) .......................................................... 9

*Ware v. S. Tex. Fam. Plan. & Health Corp*,
    No. 09-cv-323, 2010 U.S. Dist. Lexis 155133 (S.D. Tex. Jan. 26, 2010) ................... 7, 19, 21

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ...................................................................... 22

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ...................................................................... 12

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972) .................................................................................. 29


**U.S. CONSTITUTION**

U.S. Const. art. VI, cl. 2 .............................................................................. 19


**FEDERAL STATUTES**

28 U.S.C. § 2201 .......................................................................................... 10

28 U.S.C. § 2401 ............................................................................................ 8

42 U.S.C. § 300 ..................................................................................... *passim*

42 U.S.C. § 300a-5 ......................................................................................... 2

42 U.S.C. § 300z-5 ......................................................................................... 5

Consolidated Appropriations Act, 2022,
    Pub. L. No. 117-103, 136 Stat. 49 (2022) ................................................. 3

Department of Health and Human Services Appropriations Act, 1999,
    Pub. L. No. 105-277, 112 Stat. 2681 (1998) ............................................. 3

Departments of Labor, Health and Human Services, and Education, and Related Agencies
Appropriations Act, 1998,
    Pub. L. No. 105-78, 111 Stat. 1467 (1997) ............................................... 3

Family Planning Services and Population Research Act of 1970,
    Pub. L. No. 91-572, 84 Stat. 1504 (1970) .......................................... 2, 21

Pub. L. No. 95-613, 92 Stat. 3093 (1978) ............................................. 2, 21

Pub. L. No. 97-35, 95 Stat. 357 (1981) ................................................ 3, 10

Pub. L. No. 115-245 132 Stat. 2981 (2018) ............................................... 13


**LEGISLATIVE MATERIALS**

H.R. Rep. No. 97-208 (1981) (Conf. Rep.) ................................................. 5

S. Rep. No. 95-102 (1977) .......................................................................... 28

S. Rep. No. 95-822 (1978) .................................................................... 21, 27

REGULATIONS

42 C.F.R. § 59.1 .................................................................................................... 2

42 C.F.R. § 59.10 .......................................................................................... *passim*

48 Fed. Reg. 3600 (Jan. 26, 1983) ...................................................................... 4

49 Fed. Reg. 38,117 (Sept. 27, 1984) ...................................................... 6, 10, 19

86 Fed. Reg. 56,144 (October 7, 2021) ............................................................ 2, 7

FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 56 ................................................................................................ 8

STATE STATUTES

Ala. Code § 22-8-4 ............................................................................................ 23

Tenn. Code Ann. § 68-34-107 .......................................................................... 23

Texas Family Code § 151.001 ..................................................................... 13, 22

Va. Code Ann. § 54.1-2969 .............................................................................. 23

Wash Rev. Code § 26.10.160 ..................................................................... 25, 26

OTHER AUTHORITIES

Tex. Health & Hum. Servs., "Adolescent Health Guide (Jan. 2016),"
https://www.hhs.texas.gov/sites/default/files/documents/doing-business-with-hhs/provider-portal/health-services-providers/thsteps/ths-adolescent-health-guidance.pdf ............................ 22

## SUMMARY

Under Title X of the Public Health Service Act, the U.S. Department of Health and Human Services ("HHS") makes funds available to grantees who, in turn, offer voluntary, confidential family planning services to individuals, including minors, while encouraging family participation in the family planning decisions of minors. Plaintiff, a father of minor daughters in Texas, seeks to restrict the availability of such federally funded services based on his personal wish that his daughters not participate in the program. Although he and his family need not have anything to do with the Title X program, Plaintiff argues nonetheless that Title X deprives him of his state-law right to consent to his children's medical treatment and unconstitutionally interferes with his parental rights.[1] As a threshold matter, Plaintiff fails to establish jurisdiction because the six-year statute of limitations bars his challenge to the longstanding administration of Title X, and also because he fails to set forth evidence of any likelihood that his daughters ever have or would seek or obtain Title X services. Moreover, the requirement that Title X projects encourage family participation further reduces to mere conjecture the possibility that one of his children would receive Title X services without his participation.

Plaintiff's claims also fail as a matter of law. Courts nationwide have consistently construed Title X to preclude state parental notification or consent laws as a barrier to the availability of Title X services to minors. And the availability of voluntary Title X services in no way interferes with Plaintiff's parental rights. Rather, Title X reasonably promotes minors' reproductive health. But even if the Court were to conclude that Plaintiff is entitled to some relief, any relief must be no broader than necessary to redress his individual claims.

---

[1] Plaintiff has withdrawn the third claim in the Complaint alleging a violation of the Religious Freedom Restoration Act. *See, e.g.,* ECF No. 14 at 14.

**Defendants' Cross Motion for Summary Judgment and Response**         Page 1 of 29

## BACKGROUND

I.   STATUTORY AND REGULATORY BACKGROUND

A.   Title X of the Public Health Service Act

Congress enacted Title X of the Public Health Service (PHS) Act, 42 U.S.C. §§ 300, *et seq.*, as a means of "making comprehensive voluntary family planning services readily available to all persons desiring such services." Family Planning Services and Population Research Act of 1970, Pub. L. No. 91-572, § 2(1), 84 Stat. 1504 (1970). The statute authorizes HHS to "make grants to and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents)." 42 U.S.C. § 300(a); *see also* 42 U.S.C. § 300a-5 (family planning services under Title X "shall be voluntary"). Title X funds projects that provide the services "necessary to aid individuals to determine freely the number and spacing of their children." 42 C.F.R. § 59.1.[2]

In 1978, Congress amended Title X to codify the existing agency practice of requiring Title X projects to include "services for adolescents." Pub. L. No. 95-613, § 1(a)(1), 92 Stat. 3093 (1978). In addition, HHS regulations generally mandate that participating entities maintain confidentiality with respect to individuals seeking family planning services through this program. 42 C.F.R. § 59.10(a) (with limited exceptions, "[a]ll information as to personal facts and circumstances obtained by the project staff about individuals receiving services must be held confidential and must not be disclosed without the individual's documented consent.").

---

[2] HHS published a final rule revising the Title X regulations effective November 8, 2021. Ensuring Access to Equitable, Affordable, Client-Centered, Quality Family Planning Services, 86 Fed. Reg. 56144 (October 7, 2021).

Title X also encourages family participation in the delivery of such services to minors. Congress amended the statute in 1981 to include the current requirement that, "[t]o the extent practical," participating entities "shall encourage familiy [sic] participation in projects assisted under this subsection." 42 U.S.C. § 300(a); Pub. L. No. 97-35, § 931(b)(1), 95 Stat. 357 (1981); *see also* 42 C.F.R. § 59.10(b). And since 1997, annual appropriations acts have required participating entities to certify that they in fact encourage family participation in minors' decisions to seek family planning services through the Title X program:

> None of the funds appropriated in this Act may be made available to any entity under Title X of the [Public Health Service] Act unless the applicant for the award certifies to the Secretary that it encourages family participation in the decision of minors to seek family planning services and that it provides counseling to minors on how to resist attempts to coerce minors into engaging in sexual activities.

*See, e.g.,* Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H, § 207, 136 Stat. 49, 466 (2022); Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-78, § 212, 111 Stat. 1467, 1495 (1997).

In addition, since Fiscal Year 1999, in a separate rider, Congress has required that, "[n]otwithstanding any other provision of law, no provider of services under Title X of the PHS Act shall be exempt from any State law requiring notification or the reporting of child abuse, child molestation, sexual abuse, rape, or incest." *See, e.g.,* Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, Div. H, § 208, 136 Stat. at 466-67; Department of Health and Human Services Appropriations Act, 1999, Pub. L. No. 105-277, Title II, § 219, 112 Stat. 2681, 2681-363 (1998).

**B.** **History of Litigation Concerning Minors' Access to Confidential Family Planning Services Under Title X**

In litigation concerning minors' access to confidential family planning services under Title X, courts for decades have consistently found that parental notification or consent laws conflict with the statute.

In 1983, HHS issued regulations that would have required Title X grantees to notify a parent or guardian within ten working days of initially providing prescription drugs or devices to an unemancipated minor, except where notification would result in physical harm to the minor or when prescription drugs were provided to treat sexually transmitted disease. Parental Notification Requirements Applicable to Projects for Family Planning Services, Final Rule, 48 Fed. Reg. 3600, 3614 (Jan. 26, 1983). The regulations also would have required compliance with state parental notification or consent laws. *Id.*

These regulations never took effect, however, due to judicial decisions holding that the agency had exceeded its statutory authority by promulgating regulations requiring parental notification as well as deference to state parental notification and consent laws. *Planned Parenthood Fed'n of Am., Inc. v. Heckler*, 712 F.2d 650, 651 (D.C. Cir. 1983). In "a straightforward issue of statutory construction[,]" the D.C. Circuit held that the Title X statute precludes a requirement of parental involvement in the delivery of family planning services to minors under Title X. *Id.* at 654. In light of the statute's use of the word "encourage," a "permissive and non-obligatory term," as well as the "qualifier 'to the extent practical,'" *id.* at 656, "the regulations are fundamentally inconsistent with Congress' intent and purpose in enacting Title X and are therefore beyond the limits of the Secretary's delegated authority." *Id.* at 651. The court cited the Conference Committee Report accompanying the 1981 statutory amendment, which stated: "[W]hile family involvement is not mandated, it is important that

families participate in the activities authorized by this title as much as possible. It is the intent of the conferees that grantees will encourage participants in Title X programs to include their families in counseling and involve them in decisions about services." *Id.* at 657 (citing H.R. Rep. No. 97-208, at 799 (1981) (Conf. Rep.)). The court concluded that Congress believed confidentiality is essential to attract adolescents to Title X clinics: "without such assurances, one of the primary purposes of Title X – to make family planning services readily available to teenagers – would be severely undermined." *Id.* at 660.

The court also noted the contrast between Title X and a contemporaneous statutory enactment that includes a parental consent requirement. As the court explained, "[a]nother, separate statute," Title XX, "was enacted as part of the same legislative packages as the Title X amendment" and "expressly requires family involvement by mandating parental notification and consent, 42 U.S.C. § 300z-5(a)(22)(A)(i)." *Id.* at 661. "[E]nactment of Title XX's parental notification and consent requirements provides additional support for [the] conclusion that Title X's 'encouragement' language does not reasonably encompass a parental notification regulation." *Id.* at 661 n.50.

The court also rejected the 1983 regulations' requirement that grantees comply with state parental notification or consent laws, which the court viewed as "empower[ing] the states to set eligibility criteria" for the Title X program. *Id.* at 663. Although Congress could design the program in that way, it had not done so for Title X. *Id.* And even if Congress had authorized HHS to delegate this authority to the states, the "policies of Title X prohibit the Secretary from requiring parental notification," and thus "the states would likewise be precluded from imposing similar conditions." *Id.* at 664.

**Defendants' Cross Motion for Summary Judgment and Response**                    Page 5 of 29

The Second Circuit likewise held "that the 1981 amendment to Title X [encouraging family participation] did not authorize the regulations regarding mandatory [parental] notification." *New York v. Heckler*, 719 F.2d 1191, 1196 (2d Cir. 1983). The court also observed that "Title XX and the 1981 amendment to Title X were enacted at the same time, yet the former specifically included a requirement for parental notification and consent while the latter did not." *Id.* at 1197. The Second Circuit thus reasoned that "[o]bviously, Congress knew how to require parental notice and consent when that was its intention." *Id.*

As a result, HHS promulgated a final rule removing the parental notification requirements from the regulations before they ever took effect. Grants for Family Planning Projects; Parental Notification Requirement, 49 Fed. Reg. 38,117, 38,117-18 (Sept. 27, 1984).

And ever since, every court to consider the issue has agreed that Title X leaves no room for federal or state parental notification or consent laws.[3] For example, in *County of St. Charles v. Missouri Family Health Council*, 107 F.3d 682, 684-85 (8th Cir. 1997) (collecting cases), the Eighth Circuit rejected a clinic's claim that it was eligible for Title X funding although it proposed to adhere to a Missouri parental consent law. The court observed that "[a]ll the circuits which have considered the validity of parental consent requirements for adolescents to receive Title X federal services have found them prohibited by statute, regardless of whether they are based on state law." *Id.* at 685. The court noted that Title X "states that family participation should be encouraged only 'to the extent practical,' and the legislative history indicates that Congress did not desire mandatory parental notification or parental consent for a minor to

---

[3] At least one court held that a state could not require parental consent for Title X services to minors prior to the D.C. Circuit's 1983 decision. *Doe v. Pickett*, 480 F. Supp. 1218, 1220 (S.D. W.Va. 1979) ("The State, in requiring parental consent with respect to the expenditure of monies under these federal programs, is imposing additional eligibility requirements not contemplated or articulated in the statutory or regulatory framework of such programs.").

**Defendants' Cross Motion for Summary Judgment and Response**          Page 6 of 29

receive Title X services." *Id.* at 684; *Jane Does 1 through 4 v. Utah Dep't of Health*, 776 F.2d

253, 255 (10th Cir. 1985) ("HHS is for all practical purposes here attempting to perpetuate its

proposed regulation as to consent heretofore held invalid as a violation of Title X."); *Planned*

*Parenthood Ass'n of Utah v. Matheson*, 582 F. Supp. 1001, 1006 (D. Utah 1983) ("the provision

of family planning services to minors on a confidential basis was critically significant to

Congress when it enacted and amended Title X. Consequently . . . the Supremacy Clause dictates

that the federal law prevail over [state law]."). *Cf. Patterson v. Planned Parenthood of Houston*

*& Se. Tex., Inc.*, 971 S.W. 2d 439, 441 (Tex. 1998) (positing that, under a joint funding scheme,

state might dispense prescription drugs to minors without parental consent using federal funds, to

avoid conflict with state law); *Ware v. S. Tex. Fam. Plan. & Health Corp,* No. 09-cv-323, 2010

U.S. Dist. Lexis 155133, at *3 (S.D. Tex. Jan. 26, 2010) ("Defendants, however, operate

pursuant to Title X, Public Health Service Act, 42 U.S.C. § 300 *et seq*., which prohibits

participants from requiring parental consent for the provision of services to minors.").

    Consistent with this line of authority, HHS regulations now provide that "Title X projects

may not require consent of parents or guardians for the provision of services to minors[.]" 42

C.F.R. § 59.10(b); *see also* 86 Fed. Reg. at 56,166.

## II.    CURRENT PROCEEDINGS

    Plaintiff Alexander R. Deanda, a father of minor daughters in Texas, sued to enjoin

funding for Title X projects providing services to minors without parental consent. Complaint,

ECF No. 1, ¶¶ 26, 54. Following this Court's decision denying Plaintiff's motion for class

certification, ECF No. 45, however, Plaintiff elected to pursue his remaining two claims solely

on his own behalf. *See* ECF No. 46. Plaintiff claims that, by funding confidential, voluntary

family planning services to minors, Title X violates: (1) Plaintiff's right under Texas law to

consent to his children's medical treatment; and (2) Plaintiff's parental rights under the U.S.

Constitution. Brief in Support of Plaintiff's Motion for Summary Judgment ("Pl. Br."), ECF No. 51, at 1.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party seeking to invoke the jurisdiction of the federal courts bears the burden of demonstrating an Article III case or controversy. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). If at any time the Court determines that jurisdiction is lacking, the Court must dismiss the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998).

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999); Fed. R. Civ. P. 56(c). "'On cross-motions for summary judgment, [the Court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Texas v. Rettig*, 987 F.3d 518, 526 (5th Cir. 2021) (quoting *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010)).

## ARGUMENT

### I.   PLAINTIFF CANNOT ESTABLISH SUBJECT MATTER JURISDICTION

Plaintiff fails to sustain his burden to establish subject matter jurisdiction. First, Plaintiff's claims are time-barred. Second, Plaintiff fails to set forth necessary facts to demonstrate standing. Accordingly, Defendants are entitled to summary judgment for lack of subject matter jurisdiction.

### A.   The Statute of Limitations Bars Plaintiff's Claims

"[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

**Defendants' Cross Motion for Summary Judgment and Response**          Page 8 of 29

"Section 2401(a) generally 'applies to all civil actions whether legal, equitable, or mixed.'" *Felter v. Kempthorne*, 473 F.3d 1255, 1259 (D.C. Cir. 2007) (quoting *Kendall v. Army Bd. for Corr. of Military Records*, 996 F.2d 362, 365 (D.C. Cir. 1993)). "[F]ailure to sue the United States within the limitations period is not merely a waivable defense. It operates to deprive federal courts of jurisdiction." *Dunn-McCampbell Royalty Int. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997). Because the statute of limitations affects the Court's jurisdiction, Plaintiff must demonstrate that his claims are timely. *Rettig*, 987 F.3d at 529. And even a constitutional claim can be time-barred. *Daniels v. United States*, 532 U.S. 374, 381 (2001); *United States v. Flores-Martinez*, 677 F.3d 699, 709-10 (5th Cir. 2012).

Acknowledging that a facial challenge to the Title X regulations would be time-barred, Pl. Br. at 2-3, Plaintiff argues that he "has not brought a 'facial challenge[,]'" Pl. Br. at 3, but rather is suing only to "enjoin an *ongoing* violation of his constitutional and statutory rights" from application of Title X requirements to him. Pl. Br. at 1-3. "To sustain such a challenge, however, the claimant must show some direct, final agency action involving the particular plaintiff within six years of filing suit[,]" *Dunn-McCampbell*, 112 F.3d at 1287, and the challenged action must determine new "rights, obligations, or legal consequences." *Rettig*, 987 F.3d at 529 (citing *Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 756 (5th Cir. 2011)). Plaintiff tries to meet this burden by arguing that his claims "accrue continually as the defendants persist in enforcing [Title X] . . . in a manner that affects the plaintiff." Pl. Br. at 2. But failing as he does to offer evidence that either he or his daughters have had or are likely ever to have any involvement with Title X, *see, e.g., id.* at 5, Plaintiff falls short of pointing to any direct, final action "enforcing" the Title X program as to him within the six-year limitations period.

**Defendants' Cross Motion for Summary Judgment and Response**                    Page 9 of 29

Plaintiff misplaces reliance upon this Court's decision in *Leal v. Azar*, No. 2:20-cv-185-Z, 2020 WL 7672177, at *6-7 (N.D. Tex. Dec. 23, 2020), *vacated and remanded on other grounds in Leal v. Becerra*, No. 21-cv-10302, 2022 WL 2981427 (July 27, 2022). In *Leal*, the statute of limitations did not bar the plaintiffs' claims "for injunctive relief under the *Larson* framework." *Id.* at *6 (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949)). But whereas in *Leal* the Court held the "*continued enforcement*" of the challenged law is "what impedes or prohibits Plaintiffs from acquiring health insurance *today*[,]" *id.* at *7, Plaintiff here does not challenge any such direct or immediate action enforcing Title X against him.[4]

Indeed, Plaintiff does not challenge any "acts committed by the defendants within the statute of limitations that could constitute a continuing violation." *Felter*, 473 F.3d at 1260. To the contrary, Plaintiff challenges Defendants' ongoing administration of Title X pursuant to decades-old laws. Since 1981, Title X has required that, "[t]o the extent practical," entities receiving Title X funds "shall encourage familiy [sic] participation." 42 U.S.C. § 300(a); Pub. L. No. 97-35, § 931(b)(1), 95 Stat. 357 (1981). Since 1984, Title X's regulations have implemented the statutory requirement that entities encourage family participation to the extent practical, and no more. *See* 49 Fed. Reg. at 38,117-18; *Planned Parenthood v. Heckler*, 712 F.2d at 656, 663-64; *New York v. Heckler*, 719 F.2d 1196. Plaintiff's claims are time-barred because at best he challenges the continuing effects of these existing requirements, not a new application to him. *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 867 (5th Cir. 1993).

Nor does "merely asking for a declaration of his rights under 28 U.S.C. § 2201, along with an injunction to ensure those rights are observed," Pl. Br. at 3, defeat the time bar. *Bayou*

---

[4] The Court in *Leal* also "acknowledge[d] it is an open question whether the 1976 amendments to the APA abrogated the *Larson* doctrine in suits against federal agency officials." *Id.* at *6 n.7 (citations omitted).

*Liberty Ass'n v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 397 (5th Cir. 2000); *Felter*, 473 F.3d at 1259 (statute of limitations applies regardless of type of relief requested).

### B. Plaintiff Fails to Set Forth Specific Facts Establishing Standing

"Of the doctrines that have evolved under Article III, . . . the requirement that the litigant have standing is perhaps the most important." *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002). "Standing to sue must be *proven*, not merely asserted, in order to provide a concrete case or controversy[.]" *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 496-97 (5th Cir. 2007) (en banc) (emphasis added). To establish the "irreducible constitutional minimum" of standing, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), "plaintiff must show: (1) [he] has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008) (citation omitted).

Although this Court held that Plaintiff had met his lighter burden at the pleading stage, ECF No. 23 at 12-21, Plaintiff fails to sustain his heightened burden at the summary judgment stage. *Lujan*, 504 U.S. at 560-61; *cf.* Pl. Br. at 3. He "can no longer rest" on favorable inferences but instead "must set forth by affidavit or other evidence specific facts" demonstrating standing. *Lujan*, 504 U.S. at 561 (quotations omitted); *Tangipahoa Par. Sch. Bd.*, 494 F.3d at 496-97. Yet Plaintiff fails to set forth such evidence. He relies solely on his own declaration attesting that he has minor daughters whom he does not want to access family planning services without his consent. Declaration of Alexander R. Deanda ("Deanda Decl."), ECF No. 51-1, ¶¶ 3-5. His declaration thus lacks specific facts showing that his daughters have sought or are imminently likely to seek Title X-funded services without his consent. *Clapper*, 568 U.S. at 409; *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019).

**Defendants' Cross Motion for Summary Judgment and Response**          Page 11 of 29

Plaintiff's various standing arguments all fail. Pl. Br. at 3-12; Deanda Decl. at ¶ 9. When "the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control," the plaintiff must show "a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2. "'Allegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Standing is most difficult to demonstrate when, as here, Plaintiff is not the subject of the challenged government action. As the Court explained in *Lujan*:

> [w]hen . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction – and perhaps on the response of others as well.

504 U.S. at 562. Thus, "it becomes the burden of the plaintiff to adduce facts showing that [the] choices [of those third parties] have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* An injury is neither concrete nor fairly traceable to a challenged law when an independent but uncertain act of a third party is a necessary condition of the harm's occurrence. *Clapper*, 568 U.S. at 413-14.

Plaintiff's theory of harm is too conjectural. *Lujan*, 504 U.S. at 564 n.2. Plaintiff argues that Title X increases his risk of harm by making it possible that his minor children might someday seek or obtain family planning services without his knowledge or consent. Pl. Br. at 7. But he fails to present any evidence showing the likelihood or timing of such future actions. *See Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require."). If anything, his alleged discouragement of

**Defendants' Cross Motion for Summary Judgment and Response**                    Page 12 of 29

his daughters from seeking Title X services would only further reduce the risk. *Id.* at 564 n.2. And even if one of his children were to seek such services some day in the future, Plaintiff relies on mere conjecture that his child also would not involve him in her family planning decisions. *Cf.* 42 U.S.C. § 300(a); Pub. L. No. 115-245, § 207, 132 Stat. 2981 (2018).

### 1.      Plaintiff Has Not Suffered an Injury in Fact Under State Law

Plaintiff argues that Title X deprives him of "state-law rights and protections" under Texas Family Code § 151.001(6), and that this "– standing alone – is sufficient to establish injury in fact." Pl. Br. at 3. But he cannot show Article III standing to challenge a federal program like Title X solely by invoking a provision of a statute, particularly a state statute, without showing concrete harm. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016)) (rejecting a similar "proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'"); *Spokeo*, 136 S. Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation."); *Lujan*, 504 U.S. at 578 ("the party seeking review must himself have suffered an injury." (quoting *Sierra Club v. Morton*, 405 U.S. 727, 738 (1972))).

As a threshold matter, Plaintiff's reliance on state law fails because federal law defines the terms by which the United States and its agencies may be subject to suit. *Rettig*, 987 F.3d at 529 ("The United States enjoys sovereign immunity unless it consents to suit, 'and the terms of its consent circumscribe our jurisdiction.'" (quoting *Dunn-McCampbell*, 112 F.3d at 1287)). As a federal agency, HHS is subject to suit only to the extent that Congress has waived its sovereign immunity. *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009); *St. Tammany Par., ex rel. Davis v. FEMA*, 556 F.3d 307, 316 (5th Cir. 2009).

Moreover, even if Plaintiff invokes a right under a state law, he nonetheless must satisfy the same "irreducible constitutional minimum" under Article III. *Lujan*, 504 U.S. at 560; *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) ("standing in federal court is a question of federal law, not state law"); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 997 F.3d 436, 444 n.10 (2d Cir. 2021) ("[R]ights created by state and federal law are subject to the same Article III standards."). Plaintiff concedes that "Congress cannot create Article III standing merely by creating a cause of action that authorizes plaintiffs to sue." Pl. Br. at 4. But he argues that "*TransUnion, Spokeo,* and *Lujan* have nothing to say about standing to sue over the loss of a state-law legal entitlement" and instead "merely limit the power of Congress." *Id.* at 5. To the extent Plaintiff suggests that state law could expand federal jurisdiction, however, numerous courts have held to the contrary. *Cf., e.g., Fiedler v. Clark*, 714 F.2d 77, 80 (9th Cir. 1983) (U.S. Courts "'must look to the sources of their power, article III of the United States Constitution and Congressional statutory grants of jurisdiction, not to the acts of state legislatures. However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction.'") (quoting *Duchek v. Jacobi*, 646 F.2d 415, 419 (9th Cir. 1981)); *In re Papst Licensing, GmbH, Patent Litig.*, 2000 U.S. Dist. LEXIS 18316, at *10 (E.D. La. Nov. 6, 2000) ("A state may not by statute create standing where none exists under Article III"); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 756 (W.D.N.Y. 2017) ("[A]sserted violations of various state statutes do not confer standing in federal court."); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 534 (D. Md. 2016) ("Here, where [plaintiff] alleges violations of state law, she advances no authority for the proposition that a state legislature or court, through a state statute or cause of action, can manufacture Article III standing for a litigant who has not suffered a concrete injury.").

The Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), illustrates the fatal flaw in Plaintiff's argument based upon a statutory right. As relevant here, the Fair Housing Act "establishes an enforceable right to truthful information concerning the availability of housing." *Id.* at 373. But only a plaintiff who "has been the object of a misrepresentation made unlawful under [that provision] has suffered injury in precisely the form the statute was intended to guard against, and *therefore* has standing." *Id.* at 373-74 (emphasis added). Standing required more than the mere existence of the statutory right, alone, but also facts showing that the plaintiffs had sought from the defendants the information to which they were entitled, and that the defendants, by responding falsely, harmed them by depriving them of this right. *Id.* For this reason, a tester who inquired about housing availability and received misrepresentations that no apartments were available had standing, whereas a second tester who received accurate information had "alleged no injury to his statutory right." *Havens*, 455 U.S. at 374-75. Both testers invoked the same statutory right, yet only one had standing based on facts showing actual harm. *Id.*; *TransUnion*, 141 S. Ct. at 2205 ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue.").

Similarly, Plaintiff fails to set forth facts showing any actual or likely "medical treatment" of his daughters at a Title X clinic to which he "would otherwise be entitled to consent . . . under section 151.001(6)." Pl. Br. at 3. Thus, like the second tester in *Havens*, Plaintiff lacks standing because he fails to show a concrete harm from the alleged denial of his statutory right to consent.

Plaintiff also misplaces reliance upon cases holding that, in circumstances not applicable here, state law sometimes can supply a party's legal source of right. *Id.* at 4-7. For example, *FMC Corp. v. Boesky*, 852 F.2d 981, 992 (7th Cir. 1988), involved a suit by one private party

against another "alleg[ing] breaches of state-law contractual and fiduciary duties which some of the defendants owed to the company." Such private litigation does not raise the separation of powers concerns at issue in a challenge to a federal program, and therefore "implies limited constitutional standing concerns." *Id.* at 989.

### 2.    Plaintiff Has Not Suffered an Injury in Fact from Subversion or Loss of Assurance of His Parental Authority

Plaintiff's arguments that the availability of voluntary Title X services "inflicts immediate present-day injury" by "subverting" his parental authority or by depriving him of the "assurance that his children will be unable to access" these services similarly fail. Pl. Br. at 8-10. Plaintiff misplaces reliance upon *Parents United for Better Schools, Inc. ("PUBS") v. School District of Philadelphia Board of Education*, 148 F.3d 260 (3d Cir. 1998). The Third Circuit did not independently analyze the state court's prior determination that the parents had standing, *id.* at 265 (citing *PUBS v. Sch. Dist. of Phila. Bd. of Educ.*, 646 A.2d 693 (Pa. Commw. Ct. 1994)), but on the merits the court held that the voluntary distribution of condoms in public schools did *not* violate parents' interest in directing their children's upbringing. *PUBS*, 148 F.3d at 275.

Moreover, the state court's finding of standing did not rest upon an abstract theory of subversion of parental authority but rather required the plaintiff organization to show "at least one member who has or will suffer a direct, immediate, and substantial injury to an interest as a result of a challenged action." *PUBS*, 646 A.2d at 692. To satisfy this burden, "PUBS asserts, and the Board does not challenge the fact, that many of its members are parents of children who attend Philadelphia public schools where Policy 123 has been implemented." *Id.* Accordingly, "PUBS has (1) identified a substantial interest, *i.e.* prior express parental consent to medical treatment; (2) which interest is directly affected by the action of the Board; and (3) the consequences of the Board's action affecting that interest are immediate." *Id.* at 693; *see also*

*PUBS*, 148 F.3d at 265 (discussing this analysis). This requisite showing of a "direct, immediate, and substantial injury" is precisely the burden which Plaintiff here argues he need not sustain. *Cf.* Pl. Br. at 8. Unlike the children in *PUBS*, who "attend[ed] Philadelphia public schools where [the condom distribution policy] has been implemented," 646 A.2d at 692, Plaintiff sets forth no evidence showing any analogous immediacy. Instead, he argues that it is irrelevant whether any of his daughters "are actually obtaining (or trying to obtain) birth control from Title X participants." Pl. Br. at 8. *PUBS* therefore does not support Plaintiff's claim that an injury results from the mere existence of a voluntary program.

### 3. Plaintiff Has Not Suffered an Injury in Fact from Increased Risk

Finally, Plaintiff fails to show standing based on an "increased risk" that his children might obtain family planning services without his consent. Pl. Br. at 12; *Massachusetts v. EPA*, 549 U.S. 497, 517-18 (2007). Because "'procedural rights' are special[,]" *Lujan*, 504 U.S. at 572 n.7, the Supreme Court has held that "a litigant to whom Congress has 'accorded a procedural right to protect his concrete interests,' . . . 'can assert that right without meeting all the normal standards for redressability and immediacy.'" *Massachusetts*, 549 U.S. at 517-18 (quoting *Lujan*, 504 U.S. at 572 n.7). Thus, "[w]hen a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.* at 518. In such cases, "[t]he more drastic the injury that government action makes more likely, the lesser the increment in probability to establish standing." *Id.* at 525 & n.23 (quoting *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1234 (D.C. Cir. 1996)). In *Massachusetts v. EPA*, the Court found standing to challenge EPA's denial of the petition for rulemaking based upon evidence that "the rise in sea levels associated with global warming has already harmed and will continue to harm Massachusetts." *Id.* at 526. Because Congress had expressly "authorized this type of challenge to

EPA action," *id.* at 516, evidence that the "risk of catastrophic harm" from rising sea levels associated with global climate change is "real" and "would be reduced to some extent" if the EPA were to respond to the petition for rulemaking sufficed to demonstrate standing. *Id.* at 526.

By contrast, Plaintiff asserts a substantive due process right, not a procedural right. *Cf.* *Massachusetts*, 549 U.S. at 516-18. And even if he were asserting a procedural right, he must nonetheless bear the burden of demonstrating a concrete injury in fact. *See, e.g., Glickman*, 92 F.3d at 1234 (plaintiffs' members submitted affidavits showing that they actually use the subject forest in "ways that would be severely impaired if government error led to a devastating wildfire"); *cf.* Pl. Br. at 12. But Plaintiff has not set forth evidence showing any concrete and particularized harm resulting from Defendant's administration of Title X. He therefore falls far short of the "sufficiently imminent and substantial" risk of future harm necessary to sustain a claim for prospective relief "to prevent the harm from occurring." *See TransUnion*, 141 S. Ct. at 2210 (citing *Clapper*, 568 U.S. at 414 n.5).

## II.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

Even if Plaintiff could sustain his burden to demonstrate subject matter jurisdiction, Defendants are entitled to judgment as a matter of law on the two remaining claims. First, courts have consistently recognized that Title X leaves no room to impose parental consent requirements. *Cf.* Pl. Br. at 13-18. Second, Title X family planning services are voluntary and therefore do not unconstitutionally interfere with Plaintiff's ability to raise his children. *Cf.* Pl. Br. at 19-21. To the contrary, Title X reasonably serves legitimate government interests of promoting the reproductive health of minors and reducing unplanned pregnancies, without imposing upon those who choose not to participate.

### A.      Title X Precludes Mandatory Parental Notification or Consent

The text of the Title X statute plainly leaves no room for states to impose parental consent requirements. U.S. Const. art. VI, cl. 2; *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 341 & n.84 (5th Cir. 2005). Grantees need do no more than "encourage" individuals to allow family to participate in their decision making, and only "to the extent practical." 42 U.S.C. § 300(a); 42 C.F.R. § 59.10(b). Requiring parental consent would render the "to the extent practical" language meaningless and would contradict the plain meaning of the words "encourage" and "participation." *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012) (reviewing court "favors that interpretation which avoids surplusage"). As the contrast with Title XX demonstrates, Congress's omission of a parental consent requirement in Title X reflects intent to preclude the imposition of one. *Planned Parenthood v. Heckler*, 712 F.2d at 661; *New York v. Heckler*, 719 F.2d at 1197.

Accordingly, courts for decades have consistently agreed that parental notification and consent laws violate the statutory text and Congressional intent to ensure confidentiality, as well as the Supremacy Clause. *See, e.g., Planned Parenthood v. Heckler*, 712 F.2d at 654; *New York v. Heckler*, 719 F.2d at 1196; *Mo. Fam. Health Council*, 107 F.3d at 684-85; *Jane Does 1 through 4*, 776 F.2d at 255; *Ware,* 2010 U.S. Dist. LEXIS 155133, at *3; *Planned Parenthood v. Matheson*, 582 F. Supp. at 1006; *Doe v. Pickett*, 480 F. Supp. at 1220.[5] Neither HHS nor a state could require parental notification or consent. *See Planned Parenthood v. Heckler*, 712 F.2d at 660-61; *New York v. Heckler*, 719 F. 2d at 1196; 49 Fed. Reg. at 38117-38118. Imposing such a requirement would be inconsistent with "one of the primary purposes of Title X – to make family planning services readily available to teenagers" – because "Congress made clear that

---

[5] *See also supra* Part I.B.

confidentiality was essential to attract adolescents to the Title X clinics[.]" *Planned Parenthood v. Heckler*, 712 F.2d at 660. And a state's "attempt to require parental consent as a condition to the provision of family planning services constituted the imposition of an additional eligibility requirement that clearly thwarted the goals of Title X." *Id.* at 664. If states seek to impose rules affecting eligibility for Title X funding, "those rules must be consistent with the federal standards or else be held invalid under the Supremacy Clause[.]" *Id.* at 663-64, 664 n.57; *Planned Parenthood v. Matheson*, 582 F. Supp. at 1006 (state law "would do major damage to the federal interests created by Title X by preventing Title X grantees from providing confidential services to eligible minors on request[,]" and thus "the Supremacy Clause dictates that the federal law prevail over" that state law.).

The Fifth Circuit's decision in *Planned Parenthood v. Sanchez*, 403 F.3d at 341, confirms that states may not impose such eligibility requirements on the Title X program. The challenged Texas law required an entity receiving federal family planning grants, including Title X funding, to sign an affidavit attesting that it does not perform abortions, even though federal law requires only that federal funds not be used in programs where abortion is a method of family planning. *Id.* at 327-28. Plaintiff argued the law thereby "impermissibly added conditions and impediments to the receipt of federal funds." *Id.* at 336. The Fifth Circuit agreed: "a state eligibility standard that altogether excludes entities that might otherwise be eligible for federal funds is invalid under the Supremacy Clause." *Id.* at 337.

Against this consistent line of authority foreclosing parental consent laws as incompatible with Title X's text and purpose, Plaintiff nonetheless presses his argument that Title X permits parental consent requirements. *Cf.* Pl. Br. at 14-15. He argues that enjoining Title X funding for any project that does not require parental consent would not be "imposing conditions on the

receipt of federal funds" but "simply insisting that Title X participants comply" with state law. Pl. Br. at 18. Logically, however, enjoining federal funding for failure to require parental consent would be tantamount to imposing the parental consent requirement as a condition of eligibility for receipt of federal funds, as Title X requires only that grantees *encourage* family participation *to the extent practical*, and no more. *See, e.g.,* 42 C.F.R. § 59.10(b); *Camacho v. Tex. Workforce Comm'n*, 326 F. Supp. 2d 803, 810 (W.D. Tex. 2004) ("[A] state cannot withhold assistance from individuals who met the federal eligibility requirements, simply because the individuals do not meet the state's additional requirements."). Moreover, that requirement would conflict with Congressional intent to "mak[e] comprehensive voluntary family planning services readily available to *all persons* desiring such services[,]" Pub. L. No. 91-572, § 2(1), 84 Stat. at 1504 (emphasis added), and to ensure minors' access to confidential family planning services. *Planned Parenthood v. Heckler*, 712 F.2d at 660; *see also, e.g.,* Pub. L. No. 95-613, 92 Stat. at 3093; S. Rep. No. 95-822, at 24 (1978).

Despite the clear line of authority, Plaintiff argues that the statutory requirement to "encourage" family participation "[t]o the extent practical" is not a sufficiently clear condition on federal grants. Pl. Br. at 15-16 (citing *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1 (1981)). But for decades courts consistently have interpreted this statutory language as clearly foreclosing parental notification or consent requirements. *See, e.g., Planned Parenthood v. Heckler*, 712 F.2d at 654; *New York v. Heckler*, 719 F.2d at 1196; *Mo. Fam. Health Council*, 107 F.3d at 684-85; *Jane Does 1 through 4*, 776 F.2d at 255; *Ware,* 2010 U.S. Dist. LEXIS 155133, at *3; *Planned Parenthood v. Matheson*, 582 F. Supp. at 1006; *Doe v. Pickett*, 480 F. Supp. at 1220. This longstanding and widespread judicial consensus demonstrates that Title X unambiguously precludes imposing parental consent laws. *See also Patterson v. Planned*

*Parenthood of Houston & Se. Tex.*, 971 S.W.2d 439, 440 (Tex. 1998) (Title X has "been interpreted to proscribe the imposition of a parental notification or consent requirement."). Plaintiff's contention that the statute is unclear simply cannot be reconciled with the statutory text, purpose, and legislative history, as explained in consistent judicial authority.

Finally, Plaintiff has not shown that Texas law must be construed to require parental consent for family planning services under Title X.[6] Subject to exceptions elsewhere in the Texas Family Code, section 151.001 generally provides that "(a) [a] parent of a child has the following rights and duties: . . . (6) the right to consent to the child's . . . medical and dental care." Plaintiff makes no attempt to prove, however, whether family planning services in general or certain services in particular constitute "medical treatment" within the meaning of section 151.001(6). *Cf.* 42 U.S.C. § 300(a) (funded projects "shall offer a broad range of . . . methods and services").

### B.     Voluntary Title X Services Do Not Interfere with Plaintiff's Parental Rights

The availability of voluntary Title X services does not violate Plaintiff's asserted constitutional right to direct the upbringing of his children. Pl. Br. at 19-21. Courts have held that due process under the U.S. Constitution "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). However, courts "have required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest." *Glucksberg*,

---

[6] It is far from clear that Texas law provides the absolute right of consent that Plaintiff asserts as the basis for his claim. *See, e.g.,* Tex. Health & Hum. Servs., "Adolescent Health Guide (Jan. 2016)," at 13 (noting that "[p]arental consent is not required for minors . . . to receive information about family planning" and that "[u]nder federal law, minors may give their own consent and receive confidential family planning services on request if the funding source is Medicaid or a Title X Family Planning Program"), https://www.hhs.texas.gov/sites/default/files/documents/doing-business-with-hhs/provider-portal/health-services-providers/thsteps/ths-adolescent-health-guidance.pdf.

521 U.S. at 721 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). Courts have recognized a

limited "fundamental right of parents to make decisions concerning the care, custody, and

control of their children." *Troxel*, 530 U.S. at 66. But "[c]ase law relating to parental liberty

rights is narrow and largely addresses the right of parents to make critical child-rearing decisions

concerning the care, custody, and control of minors." *Moreno v. McAllen Indep. Sch. Dist.*, No.

7:15-cv-162, 2016 U.S. Dist. LEXIS 44108, at *17 (S.D. Tex. Mar. 31, 2016) (citing *Troxel*, 530

U.S. at 66). Contrary to Plaintiff's assertion of a fundamental right to consent in this context, Pl.

Br. at 20, courts have concluded that "there is no constitutional right to parental notification of a

minor child's exercise of reproductive privacy rights." *Anspach v. Philadelphia*, 503 F.3d 256,

269 (3d Cir. 2007); *Doe v. Irwin*, 615 F.2d 1162, 1166 (6th Cir. 1980) (recognizing minors' legal

rights such as privacy, which "includes the right to obtain contraceptives").[7] Moreover, Title X

does not interfere with Plaintiff's upbringing of his children.

### 1.    The Availability of Voluntary Title X Services Does Not Interfere with Plaintiff's Parental Rights

"Courts have recognized the parental liberty interest only where the behavior of the state

actor compelled interference in the parent-child relationship." *Anspach*, 503 F.3d at 262; *Irwin*,

615 F.2d at 1168 (state's voluntary birth control clinic did not interfere with parental rights).

The Sixth Circuit's decision in *Irwin*, 615 F.2d at 1163, is instructive. The parents of

minor children, including parents of a sixteen-year-old who received contraceptives from a

publicly operated family planning clinic, challenged the clinic's provision of prescription

contraceptives to minors without requiring parental knowledge or consent. The court held the

---

[7] Contrary to Plaintiff's assertion that "children are legally incapable of consenting[,]" Pl. Br. at
19, a small sample suggests that state laws vary with respect to the legal competence of minors to
provide their own consent in particular contexts. *See, e.g.,* Ala. Code § 22-8-4; Tenn. Code Ann.
§ 68-34-107; Va. Code Ann. § 54.1-2969(E)(2).

**Defendants' Cross Motion for Summary Judgment and Response**          Page 23 of 29

state had not interfered with parental rights because the program "imposed no compulsory requirements or prohibitions which affect rights" of parents. *Id.* at 1168. To the contrary, the state had "merely established a voluntary birth control clinic." *Id.* (distinguishing *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 530 (1925)). Parents were "free to exercise their traditional care, custody and control over their unemancipated children." *Id.*

Similarly, the Third Circuit in *Anspach*, 503 F.3d at 262, rejected the claims of parents and their minor child who obtained emergency contraception at a public health clinic without parental notification or consent. The court agreed that the availability of voluntary birth control services without parental notification or consent did not amount to a deprivation of parental liberty. *Id.* at 262-64. The minor child's decision to visit the clinic and to obtain contraception was voluntary, as was her decision not to notify or consult her parents. *Id.* at 264. In the absence of any coercion, the clinic had not interfered with parental rights. *Id.* at 267.

The Title X program likewise does not interfere with Plaintiff's parental rights because family planning services under Title X are similarly voluntary. 42 U.S.C. § 300(a); *Irwin*, 615 F.2d at 1168, and *Anspach*, 503 F.3d at 262. As was the case in *Irwin* and *Anspach*, Plaintiff's children are not required to avail themselves of the services funded under Title X, nor would anything prohibit Plaintiff from participating in his children's family planning. To the contrary, Title X requires that grantees "shall encourage" family participation. 42 U.S.C. § 300(a). Thus, for the same reasons, the Title X program does not interfere with parental rights.

Cases concerning the physical custody of minor children do not support a contrary outcome here. *See, e.g., Troxel*, 530 U.S. at 57. In *Troxel*, the Court found that the application of a state nonparental visitation statute in that case "violated [the plaintiff's] due process right to

make decisions concerning the care, custody, and control of her daughters" by compelling her to afford visitation rights to the children's grandparents. *Id.* at 75. As described by the Court, the state's "breathtakingly broad" nonparental visitation statute provided that "'*any person* may petition the court for visitation rights *at any time*,' and the court may grant such visitation rights whenever 'visitation may serve *the best interest of the child*." *Id.* at 67 (quoting Wash Rev. Code § 26.10.160(3) (1994) (emphases added by Court)). Pursuant to this statute, the state court had granted "forced visitation" rights to the Troxels with respect to the two children their deceased son had fathered with Granville. *Id.* at 67-68. In concluding that this provision violated Granville's right to make decisions concerning the care, custody, and control of her children, the Court relied upon the state court's application of a presumption in favor of visitation rights for grandparents, finding that this "decisional framework employed by the [state court] directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child." *Id.* at 69. "In that respect, the [state] court's presumption failed to provide *any* protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters." *Id.* at 69-70 (emphasis added). The application of the "presumption in favor of grandparent visitation" along with a lack of robust factual findings that might justify grandparent visitation in that case and the state court's "failure to accord significant weight to Granville's already having offered meaningful visitation" to the grandparents, led the Court to conclude that the state had a "simple disagreement" over the children's best interests and had essentially substituted its judgment for that of the parent. *Id.* at 72-73. However, even after recognizing the fundamental right of parents to make decisions concerning the care, custody, and control of their children, and even after characterizing the state's nonparental visitation statute as "breathtakingly broad," *id.* at 67, the Court's opinion expressly declines to go beyond a narrow holding that the

**Defendants' Cross Motion for Summary Judgment and Response**          Page 25 of 29

state statute as applied to the facts in that case "exceeded the bounds of the Due Process Clause." *Id.* at 68. The Court explained that "[w]e do not, and need not, define today the precise scope of the parental due process right *in the visitation context*." *Id.* at 73 (emphasis added). The Court further explained that "we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter." *Id.*

Similarly distinct from the facts of this case is the decision in *M.L.B.* that the state had unconstitutionally interfered with the plaintiff's parental rights by conditioning her ability to appeal the termination of her parental rights on her ability to prepay appeal costs. *M.L.B. v. S.L.J.*, 519 U.S. 102, 107 (1996). The facts of this case involve not merely a compelled interference but an absolute deprivation of parental rights, as "[t]he object of the proceeding is 'not simply to infringe upon [the parent's] interest' . . . 'but to end it.'" *Id.* at 118 (quoting *Lassiter v. Dep't of Soc. Servs. of Durham Cnty*, 452 U.S. 18, 27 (1981)). The Court's opinion distinguished such cases involving termination of parental rights from "mine run civil actions, [and] even from other domestic relations matters such as divorce, paternity, and child custody" on the basis of the "unique kind of deprivation" that results from a termination decree. *Id.* at 127. The Court in *M.L.B.* expressly noted that prior "decisions, recognizing that parental termination decrees are among the most severe forms of state action . . . have not served as precedent in other areas." *Id.* at 128.

Cases like *Troxel* and *M.L.B.* are readily distinguishable from this case. First, *Troxel* and *M.L.B.* involve coercive interference with the physical custody of minor children. The Title X program, in contrast, does not affect Plaintiff's ability to make decisions concerning the custody of his children. Whereas *Troxel*, for example, involved a judicial order for "forced visitation" with the children's paternal grandparents, Title X is merely a voluntary program which Plaintiff

and his family remain at liberty to avoid. Moreover, the Court's reasoning in *Troxel* relied heavily upon the state court's application of a presumption in favor of visitation rights for grandparents which "directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child." *Troxel*, 530 U.S. at 69. By contrast, the Title X program's requirement to encourage family participation to the extent practical, 42 U.S.C. § 300(a), is entirely consistent with this "traditional presumption." Second, even in these cases the Court has been careful to limit the holdings to the specific facts at issue. Thus, in *Troxel*, for example, the Court expressly limited its decision to the application of the particular statute to the facts of the case. These cases involving child custody therefore do not support Plaintiff's argument that the availability of voluntary family planning services under Title X interferes with his parental rights.

### 2.    Title X Reasonably Achieves Legitimate Government Interests

The Fifth Circuit has applied a rational-basis test when reviewing a plaintiff's claim for alleged violation of parental rights to direct his children's upbringing. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir. 2001) ("These cases support the determinations in *Meyer*, *Pierce*, and *Yoder* that a rational-basis test is the appropriate level of scrutiny.").

Title X promotes minors' reproductive health – a goal that is not merely legitimate but "substantial." S. Rep. No 95-822, at 12 (with one exception, "[a]ll witnesses . . . urged that special emphasis be placed on providing comprehensive family planning services to sexually active adolescents who desire such services in order to avoid unwanted pregnancies" as well as "the serious health implications" and "the future adverse social impact on the adolescent mother imposed by the responsibilities of parenthood."); *Anspach*, 503 F.3d at 271 n.10 (state has a "substantial interest in the reproductive health of minors"); *Irwin*, 615 F.2d at 1167 ("The Supreme Court has recognized that a state has 'an independent interest in the well-being of its

youth.'" (quoting *Ginsberg v. New York*, 390 U.S. 629, 640 (1968))). Congress found that teen pregnancies "frequently result in adverse health, social, and economic consequences for the individuals and families involved[,]" *id.* at 27, including "a higher incidence of low birth-weight infants, a higher percentage of pregnancy and childbirth complications, and higher rates of school dropout, unemployment, welfare dependency, and out-of-wedlock births." *Id.* "These statistics make it imperative that special efforts be made to help these young women avoid unwanted pregnancies[,]" as "[m]any teenagers cite the difficulty in securing a contraceptive as the reason for failure to protect themselves from an unwanted pregnancy." *Id.* at 30.

Title X therefore "recognize[s] the critical role played by the assurance of confidentiality in attracting adolescents to the clinics." *Planned Parenthood v. Heckler*, 712 F.2d at 659. Title X depends upon "the greater degree of *teenage confidence in the confidentiality which can be assured by a family planning clinic.*" *Id.* at 660 (quoting S. Rep. No. 95-102, at 26 (1977) (emphasis in opinion)). "[W]ithout such assurances, one of the primary purposes of Title X . . . would be severely undermined." *Id.* The 1981 amendment requiring entities to encourage family participation did not alter this emphasis on confidentiality. *Id.* at 660. To the contrary, "the express language of the statute, requiring Title X grantees to encourage family participation 'to the extent practical,' refers to just such realistic concerns about deterring teenagers from seeking contraception if their confidences are not respected." *Id.*

Plaintiff fails to refute the application of rational basis review. Pl. Br. at 20-21. The Fifth Circuit rejected a similar argument for strict scrutiny of a school uniform policy that allegedly violated parents' fundamental right to direct their children's upbringing. *Littlefield*, 268 F.3d at 291. The court explained that "[w]hile the Supreme Court in *Troxel* recognized that there exists a fundamental right of parents to direct their children's upbringing, it failed to articulate a standard

of judicial scrutiny." *Id.* at 289 & n.20 ("The Court also failed to reach agreement on the parameters of the right at issue."). Thus, "the sweeping statements of the plurality opinion in *Troxel* regarding the 'fundamental' 'interests of parents in the care, custody, and control of their children,'" did not "mandate a strict standard of scrutiny." *Id.* (quoting *Troxel*, 530 U.S. at 65). Instead, "almost eighty years of precedent" favor rational basis review. *Id.* (discussing *Meyer*, 262 U.S. at 401; *Pierce*, 268 U.S. at 534-35; *Wisconsin v. Yoder*, 406 U.S. 205, 207 (1972)). And even if a higher standard were to apply, Title X would nonetheless meet that standard because the program serves substantial interests. *See, e.g., Anspach*, 503 F.3d at 271 n.10.

## III.   RELIEF, IF ANY, MUST BE LIMITED TO THE PLAINTIFF

Any relief should be limited by the scope of Plaintiff's injury. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018), and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Accordingly, "[t]he district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order." *Doe v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004). Plaintiff is pursuing claims solely on his own behalf for alleged harm from the Title X program, seeking relief to "ensure [his] rights." Pl. Br. at 3. Thus, any relief must be limited in scope and narrowly tailored to Plaintiff's alleged rights to raise his own children. *Id.*

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion for Summary Judgment and grant Defendants' Cross Motion for Summary Judgment.

Dated: August 19, 2022                    Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General

                                          MICHELLE BENNETT
                                          Assistant Branch Director

                                          /s/ *Amber Richer*
                                          AMBER RICHER (CA Bar No. 253918)
                                          Trial Attorney
                                          U.S. Department of Justice
                                          Civil Division, Federal Programs Branch
                                          1100 L Street NW
                                          Washington, D.C. 20530
                                          Tel: (202) 514-3489
                                          Email: amber.richer@usdoj.gov

                                          *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2022, I electronically transmitted the foregoing to the

parties and the clerk of court for the U.S. District Court, Northern District of Texas, using the

electronic case filing system of the court.

/s/ *Amber Richer*
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov

1