UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

**Alexander R. Deanda**, on behalf of himself and others similarly situated,

Plaintiff,

v.

**Xavier Becerra**, in his official capacity as Secretary of Health and Human Services; **Jessica Swafford Marcella**, in her official capacity as Deputy Assistant Secretary for Population Affairs; **United States of America**,

Defendants.

Case No. 2:20-cv-00092-Z

# CONSOLIDATED BRIEF IN RESPONSE TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

D. Bryan Hughes
Texas Bar No. 00793995
Law Office of D. Bryan Hughes
110 North College Avenue, Suite 207
Tyler, Texas 75702-7221
(903) 581-1776 (phone)
bryan@hughesfirm.com

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, LLP
201 Main Street, Suite 700
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

W. Heath Hendricks
Texas Bar No. 24055651
Underwood Law Firm, P.C.
500 South Taylor, Suite 1200
Amarillo, Texas 79101
(806) 379-0345 (phone)
(806) 379-0316 (fax)
heath.hendricks@uwlaw.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS


Table of contents ........ i

Table of authorities ........ ii

I. The defendants' jurisdictional objections are without merit ........ 1

A. Mr. Deanda's claims are timely ........ 1

B. Mr. Deanda has standing ........ 2

1. Mr. Deanda's loss of statutory rights under section 151.001(6) of the Texas Family Code is a concrete injury ........ 3

2. Mr. Deanda is suffering injury from the subversion of his authority as a parent and the loss of assurance that his children will be unable to access family-planning services ........ 6

3. Mr. Deanda is injured by increased risk that his children might access birth control without his knowledge or consent ........ 7

II. Mr. Deanda is entitled to judgment as a matter of law ........ 8

A. The Title X statute does not preempt section 151.001(6) ........ 8

B. The defendants' administration of the Title X program violates the constitutional right of parents to direct the upbringing of their children ........ 10

III. The Court should enter relief sufficient to fully redress Mr. Deanda's injuries ..11

Conclusion ........ 13

Certificate of service ........ 14

## TABLE OF AUTHORITIES

### Cases

*Anspach v. Philadelphia*, 503 F.3d 256 (3d Cir. 2007) .......... 11

*Babbitt v. United Farm Workers National Union*, 442 U.S. 289 (1979) .......... 7

*Building and Construction Trades Council of the Metropolitan District v. Associated Builders and Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218 (1993) .......... 8

*Califano* v. *Yamasaki*, 442 U.S. 682 (1979) .......... 11

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......... 2

*Davis v. Romney,* 490 F.2d 1360 (3d Cir. 1974) .......... 12

*Dep't of Homeland Security v. New York*, 140 S. Ct. 599 (2020) .......... 12

*Diamond v. Charles*, 476 U.S. 54 (1986) .......... 5

*Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980) .......... 11

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59 (1978) .......... 7

*Dunn-McCampbell Royalty Interest, Inc. v. National Park Service*, 112 F.3d 1283 (5th Cir. 1997) .......... 1

*Ex Parte Young*, 209 U.S. 123 (1908) .......... 4

*FMC Corp. v. Boesky*, 852 F.2d 981 (7th Cir. 1988) .......... 5

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .......... 5

*Hollingsworth v. Perry*, 570 U.S. 693 (2013) .......... 4

*Kelley v. Azar*, No. 4:20-CV-00283-O, 2021 WL 4025804 (N.D. Tex. Feb. 25, 2021) .......... 1

*Leal v. Azar*, No. 2:20-CV-185-Z, 2020 WL 7672177 (N.D. Tex. Dec. 23, 2020) .......... 1

*Littlefield v. Forney Independent School District*, 268 F.3d 275 (5th Cir. 2001) .......... 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 3

*Maryland v. Louisiana*, 451 U.S. 725 (1981) .......... 8

*Massachusetts v. EPA*, 549 U.S. 497 (2007) .......... 7

*NFIB v. Sebelius*, 567 U.S. 519 (2012) .......... 9

*Parents United For Better Schools, Inc. v. School District of Philadelphia Board of Education*, 148 F.3d 260 (3d Cir. 1998) .......... 6

*Parents United For Better Schools, Inc. v. School District of Philadelphia Board of Education*, 646 A.2d 689 (Pa. Cmwlth. 1994) ..................................... 6

*Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1 (1981) ................... 8

*Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324 (5th Cir. 2005) ........................................................................ 9

*Planned Parenthood v. Heckler*, 712 F.2d 650 (D.C. Cir. 1983) ............................. 8

*Professional Association of College Educators v. El Paso County Community College District*, 730 F.2d 258 (5th Cir. 1984)............................. 12

*South Dakota v. Dole*, 483 U.S. 203 (1987) .......................................................... 8

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ......................... 6

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).................................. 2, 3, 4

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) ......................................................... 12

*Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712 (10th Cir. 2008) ....................................................................... 5

*Will v. Michigan Dep't of Police*, 491 U.S. 58 (1989) ............................................ 9

*Zepeda v. I.N.S.*, 753 F.2d 719 (9th Cir. 1983).................................................... 12

**Statutes**

42 U.S.C. § 300(a)................................................................................................ 8

Tex. Family Code § 151.001(6) ............................................................................. 3

**Other Authorities**

Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417 (2017)...................................................... 12

John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*, 37 Yale J. On Reg. Bull. 37 (2020) ................................................................ 12

Texas Department of Health and Human Services, *Responsibilities for Treatment of Minors within the Family Planning Program and Healthy Texas Women Program*............................................................................ 10

## I. The Defendants' Jurisdictional Objections Are Without Merit

The defendants continue to assert that Mr. Deanda's claims are untimely and that he lacks standing. Neither contention has merit.

### A. Mr. Deanda's Claims Are Timely

The statute of limitations is inapplicable to Mr. Deanda's claims because he is seeking to prevent and enjoin *ongoing* conduct that he alleges to be unlawful. *See Leal v. Azar*, No. 2:20-CV-185-Z, 2020 WL 7672177, at *6–*7 (N.D. Tex. Dec. 23, 2020) (holding that "[s]tatutes of limitations are simply inapplicable" to lawsuits "seeking *prospective* relief for *ongoing* injuries." (emphasis in original)); *see also Kelley v. Azar*, No. 4:20-CV-00283-O, 2021 WL 4025804, at *8 (N.D. Tex. Feb. 25, 2021) ("When, as here, the challenged action is ongoing, the cause of action continues to accrue along with the allegedly unconstitutional conduct that gives rise to the plaintiff's injury and cannot be insulated by a statute of limitations."). The defendants try to get around *Leal* by asserting that Mr. Deanda is not challenging "direct or immediate action enforcing Title X against him." Defs.' Br., ECF No. 53 at 10. But that observation has no bearing on the limitations question, which concerns whether Mr. Deanda is challenging conduct that occurred more than six years ago. He is clearly not doing so, because he is seeking only *prospective* relief that will stop the defendants from administering the Title X program in manner that violates Texas law and that violates his right to direct the upbringing on his children.[1]

1. The defendants quote *Dunn-McCampbell Royalty Interest, Inc. v. National Park Service*, 112 F.3d 1283, 1287 (5th Cir. 1997), out of context. *Dunn-McCampbell* does *not* require Mr. Deanda to "'show some direct, final agency action involving the particular plaintiff within six years of filing suit,'" as the defendants claim. *See* Defs.' Br., ECF No. 53 at 9 (quoting *Dunn-McCampbell*, 112 F.3d at 1287). Instead, *Dunn-McCampbell* makes clear that this requirement applies *only* when a plaintiff "challenge[s] a regulation." *Id.*; *see also id.* ("It is possible, however, *to challenge a regulation after the limitations period has expired*, provided that the ground for the challenge is that the issuing agency exceeded its constitutional or statutory authority. *To sustain such a challenge*, however, the claimant must show

The defendants' remaining observations are likewise irrelevant to the limitations issue. Their assertions that Mr. Deanda "fail[s] . . . to offer evidence that either he or his daughters have had or are likely ever to have any involvement with Title X" goes to standing or the merits rather than the timeliness of Mr. Deanda's claims. *See* Defs.' Br., ECF No. 53 at 9. The same goes for their complaint that Mr. Deanda has failed to identify "acts committed by the defendants . . . that would constitute a continuing violation." *See id.* at 10. And Mr. Deanda is not challenging the "continuing effects"[2] of a past government action; he is suing to stop the defendants from continuing to administer the Title X program in a manner that violates his rights under Texas law and the Constitution. That these actions began many years ago does nothing to change the fact that Mr. Deanda is seeking relief against the defendants' present and future actions.

### B. Mr. Deanda Has Standing

The defendants deny that Mr. Deanda's theories of standing rest on a "concrete" injury,[3] but they are mistaken. Each of Mr. Deanda's four theories of standing easily surmounts the "concreteness" requirement, especially in light of the Supreme Court's recent pronouncement in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). *See infra* at 3–8.

And Mr. Deanda need not allege or prove that his daughters "have sought or are imminently likely to seek Title X-funded services without his consent,"[4] because Mr. Deanda has established "actual and imminent" injury from: (1) The immediate and

---

some direct, final agency action involving the particular plaintiff within six years of filing suit."). Mr. Deanda is not "challenging" a "regulation"; he is merely seeking declaratory and injunctive relief to restrain the defendants from violating his rights under state and federal law. *See* Complaint, ECF No. 1, at ¶ 54.

2. Defs.' Br., ECF No. 53, at 10.
3. *See* Defs.' Br., ECF No. 53, at 11–18.
4. Defs.' Br., ECF No. 53, at 11 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

present-day loss of his statutory rights under state law; (2) The immediate and present-day subversion of his authority as a parent; (3) The immediate and present-day loss of assurance that his children will be unable to access family-planning services without his knowledge and consent; and (4) The immediate and present-day increased risk that his children might access birth control without his knowledge or consent. There is nothing "conjectural"[5] about any of these injuries.[6]

### 1. Mr. Deanda's Loss Of Statutory Rights Under Section 151.001(6) of the Texas Family Code Is A Concrete Injury

The law of Texas gives Mr. Deanda a statutory right to consent to his children's medical and dental care, and psychiatric, psychological, and surgical treatment. *See* Tex. Family Code § 151.001(6). It is undisputed that the defendants have taken away this statutory right by insisting that Title X "preempts" section 151.001(6), and by administering a federal program that refuses to honor the state-law rights that Texas confers on parents.

The defendants deny that the loss of this state-law right qualifies as a "concrete" injury. *See* Defs.' Br., ECF No. 53, at 13. But they never even recite the test for "concreteness," let alone apply that test to the facts of this case. The Supreme Court has made clear that an injury qualifies as "concrete" if it bears a "close relationship" to harms "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2200; *see also id.* ("Central to assessing concreteness is

---

5. Defs.' Br., ECF No. 53, at 12.

6. The defendants observe that "standing" is "most difficult to demonstrate when . . . Plaintiff is not the subject of the challenged government action." Defs.' Br., ECF No. 53, at 12 (citing and quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)). But *Lujan* holds only that the *causation* and *redressability* components of standing are harder to demonstrate when a plaintiff is not directly regulated. *See Lujan*, 504 U.S. at 562. *Lujan* does not hold or even suggest that the *injury-in-fact* prong becomes more difficult to establish in these types of cases. Yet the defendants are contesting only the existence of injury in fact; they have not denied Mr. Deanda's ability to show traceability and redressability. So the defendants' citation of Lujan is irrelevant to the standing objections that they assert.

whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm."). The Court explained in *TransUnion*:

> Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion. And those traditional harms may also include harms specified by the Constitution itself.

*TransUnion*, 141 S. Ct. at 2204. The loss of a right to consent to a child's medical treatment is litigated all the time in divorce or child-custody proceedings, and a physician can be sued in tort for providing treatment to an unemancipated minor without securing informed consent. This surely qualifies as a harm "traditionally recognized as providing a basis for lawsuits in American courts." In addition, the right to direct the upbringing of one's children is an interest of constitutional magnitude, and *TransUnion* recognizes that "harms specified by the Constitution" will satisfy the "concreteness" requirement. *Id.*

The defendants also claim that Mr. Deanda cannot invoke state-law rights to overcome sovereign immunity or establish injury in fact because these inquiries are controlled by federal and state law. *See* Defs.' Br., ECF No. 53, at 13–14 (citing *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013)). But Mr. Deanda is *not* relying on state law to overcome sovereign immunity; to do that he needs only to assert a claim for prospective relief. *See* 5 U.S.C. § 702 (waiver of sovereign immunity that tracks the doctrine of *Ex parte Young*, 209 U.S. 123 (1908)); *see also supra* at 1–2. And the defendants are simply wrong to claim that state law is incapable of creating or establishing legal entitlements, the loss of which can qualify as "injury in fact" under Article

III. *See, e.g.*, *Diamond v. Charles*, 476 U.S. 54, 65 n.17 (1986) ("The Illinois Legislature, of course, has the power to create new interests, the invasion of which may confer standing. In such a case, the requirements of Art. III may be met."); *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 721 (10th Cir. 2008) ("Although Article III standing is a question of federal law, state law may create the asserted legal interest."); *see also* Order, Sept. 24, 2020, ECF No. 23 at 12–13. This does not allow state law to "expand federal jurisdiction," as the defendants claim. *See* Defs.' Br., ECF No. 53, at 14. Instead, it merely recognizes that a plaintiff can be "injured" in many different ways—and the loss of a right established by state law is one of the ways in which a plaintiff can establish Article III injury.

Finally, the defendants try to analogize Mr. Deanda to the second tester in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), who never received false information and never suffered an invasion of his legally protected rights. *See* Defs.' Br., ECF No. 53, at 15. The analogy is specious. Mr. Deanda has already suffered a deprivation of his rights under state law because the defendants have declared the relevant statute preempted by the Title X regime, and that qualifies as injury in fact regardless of whether his children ever seek or obtain services from a Title X participant. *See, e.g.*, *FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988) ("Properly pleaded violations of state-created legal rights, therefore, must suffice to satisfy Article III's injury requirement . . . even in the absence of a specific finding that FMC was injured.").[7] The defendants have removed a right that state-law confers on Mr. Deanda. No one in

7. The defendants try to distinguish *FMC Corp.* by observing that the litigants in that case were exclusively private parties, and that Mr. Deanda's attempt to sue federal agency officials raises "separation of powers concerns." Defs.' Br., ECF No. 53, at 15–16. But they never explain how this has any relevance to the injury-in-fact question. Mr. Deanda remains injured by the loss of a state-law entitlement regardless of whether he is suing a private citizen or a government official, and the separation-of-powers doctrine has nothing to do with the existence of Article III injury.

*Havens Realty* tried to eliminate or curtail a statutory right belonging to a tester, and none of the private individuals employed by Havens Realty had the ability to preempt statutory protections in the way that the federal defendants in this case have done.

**2. Mr. Deanda Is Suffering Injury From The Subversion Of His Authority As Parents And The Loss Of Assurance That His Children Will Be Unable To Access Family-Planning Services**

The defendants criticize our reliance on *Parents United For Better Schools, Inc. v. School District of Philadelphia Board of Education*, 148 F.3d 260 (3d Cir. 1998), by observing that the Third Circuit did not actually analyze whether the parents had standing, but merely citied a state appellate-court opinion that had conferred standing on those parents. *See* Defs.' Br., ECF No. 53 at 16. True enough, but the Third Circuit *still* allowed the parents' claims to proceed in federal court—even though the Third Circuit had was duty-bound to dismiss the case on its own initiative if it thought that the parents' standing was problematic. And while the Supreme Court has cautioned us not to place undue weight on tacit jurisdictional holdings of this sort,[8] the defendants present no argument that the Third Circuit erred in allowing those claims to proceed.

The defendants also try to distinguish *Parents United* by observing that the state appellate court had relied on a theory organizational standing, in which at least one of the association's members had alleged a "direct, immediate, and substantial injury." Defs.' Br., ECF No. 53 at 16–17 (quoting *Parents United For Better Schools, Inc. v. School District of Philadelphia Board of Education*, 646 A.2d 689, 692 (Pa. Cmwlth. 1994)). But the "direct, immediate, and substantial injury" that the state court recognized came from the school district's decision to distribute condoms to children—even though the program allowed parents to opt their children out of the program

8. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("[D]rive-by jurisdictional rulings . . . have no precedential effect").

by mailing in a "veto form"—because parents suffered injury from the loss of their prerogative to "consent . . . before medical treatment [is] provided." *Id.* at 691. The injury asserted by Mr. Deanda is no different. The defendants point out that the plaintiffs' children in *Parents United* were students at the public schools where condoms were distributed, but the Title X program offers contraception to *any* person in the state of Texas—and Mr. Deanda's children are as eligible to receive those services as anyone else. And the Title X program (unlike the Philadelphia public schools' condom-distribution program) does not even offer a "veto form" to objecting parents.

### 3. Mr. Deanda Is Injured By Increased Risk That His Children Might Access Birth Control Without His Knowledge Or Consent

The defendants try to distinguish *Massachusetts v. EPA*, 549 U.S. 497 (2007), by insisting that a plaintiff may establish Article III injury from "increased risk" only when asserting a "procedural" right rather than a "substantive" right. *See* Defs.' Br., ECF No. 53 at 17. This claim has no basis in law. Courts have often endorsed "increased risk" theories of Article III injury when litigants assert substantive rights. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 74 (1978) (conferring standing to challenge to constitutionality of the Price-Anderson Act, which limits the liability of nuclear power plants, because of the plaintiffs' "concern about exposure to radiation and the apprehension flowing from the uncertainty about the health and genetic consequences of even small emissions."); *Babbitt v. Farm Workers National Union*, 442 U.S. 289, 298 (1979) (holding that Article III injury exists when a plaintiff "demonstrate[s] a realistic danger of sustaining a direct injury as a result of [a] statute's operation or enforcement."). And *Massachusetts* did not in any way hold or insinuate that "increased risk" injuries can confer standing only when a procedural right is asserted; on the contrary, it indicated that an increased risk will *always* suffice to establish Article III injury. *See Massachusetts*, 549 U.S. at 525 n.23

("[E]ven a small probability of injury is sufficient to create a case or controversy—to take a suit out of the category of the hypothetical—provided of course that the relief sought would, if granted, reduce the probability" (citation and internal quotation marks omitted)).

## II. Mr. Deanda Is Entitled To Judgment As A Matter Of Law

The defendants' efforts to defeat Mr. Deanda's substantive arguments are likewise unavailing.

### A. The Title X Statute Does Not Preempt Section 151.001(6)

There is simply no language in the Title X statute that preempts state parental-consent laws. The defendants quote language from non-binding court opinions that talk about the importance of "confidentiality,"[9] but none of that shows how the statutory language displaces the requirements of section 151.001(6). And the statutory requirement to "encourage" family participation "[t]o the extent practical" establishes a federally mandated *minimum* for parental involvement. 42 U.S.C. § 300(a). It does not purport to ban Title X programs from obtaining parental consent, and it certainly does not preempt or displace state laws that require more extensive parental involvement.

The defendants also have no answer to the statutory canons that disfavor preemption[10] and that require Congress to speak clearly when imposing conditions on the receipt of federal funds.[11] The defendants rely on non-binding court decisions that

9. *See* Defs.' Br., ECF No. 53 at 19–20 (quoting *Planned Parenthood v. Heckler*, 712 F.2d 650, 660 (D.C. Cir. 1983)).

10. *See Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law."); *Building and Construction Trades Council of the Metropolitan District v. Associated Builders and Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 224 (1993) ("We are reluctant to infer pre-emption.").

11. *See Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981) ("[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously."); *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (same);

have held that Title X preempts state parental-consent laws. See Defs.' Br., ECF No. 53 at 19–20 (citing authorities). But none of those cases even acknowledges the presumption against preemption or the clear-statement rule of *Pennhurst*, let alone explains how those presumptions have been overcome.

The defendants' reliance on the Title XX statute,[12] which contains an explicit and federally mandated parental-consent requirement, does nothing to undermine Mr. Deanda's argument because Mr. Deanda is not contending (and has never contended) that the Title X compels parental consent as a federal requirement. He is claiming only that 42 U.S.C. § 300(a) does not preempt state laws that require more extensive parental involvement than the minimum floor established by the Title X statute. And the defendants' reliance on *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324 (5th Cir. 2005), is no help because Texas is not purporting to impose conditions on the receipt of federal funds; it is simply insisting that Title X participants comply with the state's generally applicable laws.

It bears repeating that Mr. Deanda is *not* arguing that the Title X statute requires parental consent; he is merely contending that the Title X statute *does not preempt* state laws that require parental notification or consent. At times, the defendants appear to be suggesting that Mr. Deanda is asking this Court to *impose* a parental-consent requirement on the Title X regime, or to impose a parental-consent regime on Title X programs as a condition of receiving federal funds. *See, e.g.*, Defs.' Br., ECF No. 53, at 19 ("Imposing such a [parental-consent] requirement would be inconsistent with 'one of the primary purposes of Title X'"); *id*. at 21 ("[E]njoining federal

---

*Will v. Michigan Dep't of Police*, 491 U.S. 58, 65 (1989) ("Congress should make its intention 'clear and manifest' . . . if it intends to impose a condition on the grant of federal moneys" (citation omitted); *see also NFIB v. Sebelius*, 567 U.S. 519, 576–77 (2012) (opinion of Roberts, C.J., joined by Breyer and Kagan, JJ.); *id*. at 676 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting).

12. See Defs.' Br., ECF No. 53, at 5–6.

funding for failure to require parental consent would be tantamount to imposing the parental consent requirement as a condition of eligibility for receipt of federal funds"). Mr. Deanda's constitutional argument may have those implications, but his statutory anti-preemption claim assuredly does not.

Finally, the defendants' suggestion that Texas law might not actually confer a statutory right on parents to consent to their children's receipt of family-planning services is meritless. *See* Defs.' Br., ECF No. 53, at 22 & n.6. The government of Texas has consistently interpreted section 151.001(6) of the Texas Family Code to require parental consent before a minor receives family-planning counseling or services. *See, e.g.*, Texas Department of Health and Human Services, *Responsibilities for Treatment of Minors within the Family Planning Program and Healthy Texas Women Program* at 1 ("In accordance with the Texas Family Code, Healthy Texas Women (HTW) and Family Planning Program (FPP) services must be delivered in a manner that complies with parental consent requirements for minors."); *id.* at 3 ("Counseling for minors seeking family planning services must be provided with parental consent"), *available at* https://bit.ly/3SNWmbe. In a footnote, the defendants cite a document from the Texas Department of Health and Human Services acknowledging that Title X programs may dispense family-planning services to minors without parental consent,[13] but that document makes clear that this exemption is imposed by "federal law" and would not exist absent the longstanding preemptive stance taken by HHS.

### B. The Defendants' Administration Of The Title X Program Violates The Constitutional Right Of Parents To Direct The Upbringing Of Their Children

The defendants continue to insist that the constitutional right of parents to direct the upbringing of their children is implicated only by coercive government policies,

13. *See* Defs.' Br., ECF No. 53, at 22 n.6.

rather than by voluntary programs that offer birth control and prescription contraception to minors without parental consent. *See* Defs.' Br., ECF No. 53, at 23–27 (citing *Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980); *Anspach v. Philadelphia*, 503 F.3d 256, 262 (3d Cir. 2007)). But the Supreme Court has never imposed such a limit on the constitutional right of parents to direct their children's upbringing, and there is no reason for this Court to do so either for the reasons explained in Mr. Deanda's previous brief. *See* Pls.' MSJ, ECF No. 51, at 19–21.

And the defendants are wrong to say that rational-basis review should apply. *See* Defs.' Br., ECF No. 53, at 27–29 (citing *Littlefield v. Forney Independent School District*, 268 F.3d 275, 291 (5th Cir. 2001)). *Littlefield* makes clear that rational-basis review applies only when parental rights are asserted in the context of public education. *See Littlefield*, 268 F.3d at 289 ("We . . . follow almost eighty years of precedent analyzing parental rights *in the context of public education* under a rational-basis standard." (emphasis added)); *id.* at 291 ("*Troxel* does not change the above reasoning in the context of parental rights *concerning public education*." (emphasis added)); *id.* ("[A] rational-basis test is the appropriate level of scrutiny for parental rights *in the public school context*." (emphasis added)).

## III. The Court Should Enter Relief Sufficient To Fully Redress Mr. Deanda's Injuries

If the Court grants summary judgment to Mr. Deanda on any or all of his claims, then it should enter declaratory and injunctive sufficient to ensure that Mr. Deanda's Article III injuries are fully redressed—but its relief should extend no further than that. *See Califano* v. *Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*" (emphasis added)). The defendants are right to caution this Court against reflexively awarding a "universal" remedy, especially given that Mr. Deanda was not certified as a class representative. *See, e.g.*, *Zepeda v. I.N.S.*, 753 F.2d 719,

727–28 (9th Cir. 1983) ("[An] injunction must be limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs."); *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974) ("Relief cannot be granted to a class before an order has been entered determining that class treatment is proper."). So-called "nationwide injunctions" have become all the rage in constitutional litigation, but they are often issued hastily and without considering how Article III allows a plaintiff to seek or obtain relief that benefits non-parties to the lawsuit. *See* John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*, 37 Yale J. On Reg. Bull. 37, 41 (2020) ("Universal remedies raise a problem under Article III when they take the courts beyond vindicating the rights of the parties before them."); *Dep't of Homeland Security v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) (criticizing "the increasingly common practice of trial courts ordering relief that transcends the cases before them. . . . [T]hese orders share the same basic flaw—they direct how the defendant must act toward persons who are not parties to the case."); *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2426 (2018) (Thomas, J., concurring) (criticizing this trend); Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417 (2017) (same).

The only time that a court may issue relief that extends beyond the named litigants or a certified class is when that remedy is needed to ensure that the prevailing parties obtain the relief to which they are entitled. *See Professional Association of College Educators v. El Paso County Community College District*, 730 F.2d 258, 273–74 (5th Cir. 1984). So the Court must award relief sufficient to ensure that Mr. Deanda's rights as a parent are protected at *every* Title X clinic where his children might seek services. It must also ensure that Title X participants do not unknowingly or unwittingly provide family-planning services to minors who assert false identities. But any

relief must be tailored to protecting the rights of Mr. Deanda, and not the rights of others who are not parties to this lawsuit.

## CONCLUSION

The plaintiff's motion for summary judgment should be granted, and the defendants' motion for summary judgment should be denied.

Respectfully submitted.

/s/ Jonathan F. Mitchell

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

W. HEATH HENDRICKS
Texas Bar No. 24055651
Underwood Law Firm, P.C.
500 South Taylor, Suite 1200
Amarillo, Texas 79101
(806) 379-0345 (phone)
(806) 379-0316 (fax)
heath.hendricks@uwlaw.com

D. BRYAN HUGHES
Texas Bar No. 00793995
Law Office of D. Bryan Hughes
110 North College Avenue, Suite 207
Tyler, Texas 75702-7221
(903) 581-1776 (phone)
bryan@hughesfirm.com

H. DUSTIN FILLMORE III
Texas Bar No. 06996010
CHARLES W. FILLMORE
Texas Bar No. 00785861
The Fillmore Law Firm, LLP
201 Main Street, Suite 700
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Dated: September 30, 2022

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on September 30, 2022, I served this document through CM/ECF upon:

AMBER RICHER
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
(202) 514-3489
amber.richer@usdoj.gov

*Counsel for the Defendants*

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff*