# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

|  |  |  |
|---|---|---|
| ALEXANDER R. DEANDA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 2:20-cv-92-Z |
| XAVIER BECERRA, in his official capacity as | ) | |
| Secretary of Health and Human Services; | ) | |
| JESSICA SWAFFORD MARCELLA, in her official | ) | |
| capacity as Deputy Assistant Secretary for | ) | |
| Population Affairs; UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

SUMMARY .................................................................................................................. 1

ARGUMENT ............................................................................................................... 2

    I.      Plaintiff Cannot Establish Subject Matter Jurisdiction ................................. 2

          A.    The Statute of Limitations Bars Plaintiff's Claims ................................ 3

          B.    Plaintiff Lacks Standing ......................................................................... 5

                1.  Plaintiff Has Not Suffered an Injury in Fact Based on State Law .............. 6

                2.  Plaintiff Has Not Suffered an Injury in Fact Based on Subversion or Loss of Assurance of Parental Authority ....................................... 10

                3.  Plaintiff Has Not Suffered an Injury in Fact Based on Increased Risk ................................................................................. 11

    II.     Defendants Are Entitled to Summary Judgment ......................................... 13

          A.    Title X Precludes Mandatory Parental Notification or Consent ........................... 13

          B.    Voluntary Title X Services Do Not Interfere with Plaintiff's Parental Rights ................................................................................. 16

    III.    Relief, If Any, Must Be Limited to the Plaintiff ........................................ 19

CONCLUSION ......................................................................................................... 21

i

# TABLE OF AUTHORITIES

## Cases

*Ala. Rural Fire Ins. Co. v. Naylor,*
  530 F.2d 1221 (5th Cir. 1976) ............................................................. 5

*Anspach v. City of Philadelphia,*
  503 F.3d 256 (3d Cir. 2007) ........................................... 7, 16, 17, 18

*Babbitt v. Farm Workers Nat'l Union,*
  442 U.S. 289 (1979) ...................................................................... 12

*Bode v. Kenner City,*
  303 F. Supp. 3d 484 (E.D. La. 2018) ................................................ 19

*Burrell v. Newsome,*
  883 F.2d 416 (5th Cir. 1989) ........................................................... 3

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ...................................................................... 13

*Comacho v. Tex. Workforce Comm'n,*
  408 F.3d 229 (5th Cir. 2005) ........................................................... 15

*Daniels v. United States,*
  532 U.S. 374 (2001) ........................................................................ 3

*Danos v. Jones,*
  652 F.3d 577 (5th Cir. 2011) ........................................................ 4, 5

*Diamond v. Charles,*
  476 U.S. 54 (1986) ...................................................................... 7, 8

*Doe v. Irwin,*
  615 F.2d 1162 (6th Cir. 1980) ................................................ 7, 16, 17

*Doe v. Tangipahoa Par. Sch. Bd.,*
  494 F.3d 494 (5th Cir. 2007) (en banc) .......................................... 6

*Does 1-7 v. Round Rock Indep. Sch. Dist.,*
  540 F. Supp. 2d 735 (W.D. Tex. 2007) ............................................. 20

*Dresser-Rand Co. v. Virtual Automation, Inc.,*
  361 F.3d 831 (5th Cir. 2004) ........................................................... 19

*Duke Power Co. v. Carolina Environmental Study Group, Inc.,*
  438 U.S. 59 (1978) .................................................................. 12, 13

*Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.,*
  112 F.3d 1283 (5th Cir. 1997) ......................................................... 3

*E.E.O.C. v. AutoZone, Inc.*,
   707 F.3d 824 (7th Cir. 2013) .......................................................................... 20

*Felter v. Kempthorne*,
   473 F.3d 1255 (D.C. Cir. 2007) ........................................................................ 3

*FMC Corp. v. Boesky*,
   852 F.2d 981 (7th Cir. 1988) ................................................................ 8, 9, 10

*Geyen v. Marsh*,
   775 F.2d 1303 (5th Cir. 1985) .......................................................................... 4

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ............................................................................. 8, 9, 10

*Henderson v. Stalder*,
   287 F.3d 374 (5th Cir. 2002) ....................................................................... 5, 6

*ITT Educ. Servs. v. Arce*,
   533 F.3d 342 (5th Cir. 2008) ......................................................................... 20

*Keene Corp. v. United States*,
   508 U.S. 200 (1993) ...................................................................................... 15

*Kelly v. Azar, No. 4:20-cv-00283-O*,
   2021 WL 4025804 (N.D. Tex. Feb. 25, 2021) .............................................. 4, 5

*Kemlon Prods. & Dev. Co. v. United States*,
   638 F.2d 1315 (5th Cir. 1981) ....................................................................... 20

*Kendall v. Army Bd. for Corr. of Military Records*,
   996 F.2d 362 (D.C. Cir. 1993) ........................................................................ 3

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ........................................................................................ 20

*Larson v. Domestic & Foreign Com. Corp.*,
   337 U.S. 682 (1949) ..................................................................................... 4, 5

*Leal v. Azar, No. 2:20-cv-185-Z*,
   2020 WL 7672177 (N.D. Tex. Dec. 23, 2020) *vacated and remanded on*
   *other grounds in Leal v. Becerra*, No. 21-cv-10302, 2022 WL 2981427
   (5th Cir. July 27, 2022)................................................................................. 3, 4

*Littlefield v. Forney Indep. Sch. Dist.*,
   268 F.3d 275 (5th Cir. 2001) .................................................................... 17, 18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................................. 6, 11

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ................................................................................... 11, 12

*McGregor v. La. State Univ. Bd. of Supervisors*,
   3 F.3d 850 (5th Cir. 1993) ................................................................................. 3

*New York v. Heckler*,
   719 F.2d 1191 (2d Cir. 1983) ............................................................... 14, 15, 16

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ............................................................................................ 5

*Planned Parenthood Fed'n of Am., Inc. v. Heckler*,
   712 F.2d 650 (D.C. Cir. 1983) ............................................................. 14, 15, 16

*Parents United for Better Schools, Inc. ("PUBS") v. School District of Philadelphia
   Board of Education*
   646 A.2d 689 (Pa. Commonwealth Ct. 1994) ................................................. 10

*Parents United for Better Schools, Inc. ("PUBS") v. School District of Philadelphia
   Board of Education*,
   148 F.3d 260 (3d Cir. 1998) ) .................................................................... 10, 17

*Rusello v. United States*,
   464 U.S. 16 (1983) .......................................................................................... 15

*Scott v. Schedler*,
   826 F.3d 207 (5th Cir. 2016) ........................................................................... 19

*Sierra Club v. Morton*,
   405 U.S. 727 (1972) .......................................................................................... 7

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ..................................................................................... 10

*Stringer v. Whitley*,
   942 F.3d 715 (5th Cir. 2019) ........................................................................... 20

*Texas v. Rettig*,
   987 F.3d 518 (5th Cir. 2021) ......................................................................... 3, 5

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ...................................................................... 6, 9, 10, 13

*Troxel v. Granville*,
   530 U.S. 57 (2000) ............................................................................................ 6

*United States v. Flores-Martinez*,
   677 F.3d 699 (5th Cir. 2012) ............................................................................. 3

*Utah ex rel. Div. of Forestry, Fire, & State Lands v. United States*,
    528 F.3d 712 (10th Cir. 2008) ................................................................ 8

**Federal Statutes**

28 U.S.C. § 2401 ........................................................................................ 3

28 U.S.C. § 2409a ...................................................................................... 8

42 U.S.C. § 300 ........................................................................... 13, 14, 15, 20

**State Statutes**

Texas Family Code § 151.001 ........................................................... 1, 6, 16

**Federal Regulations**

42 C.F.R. § 59.1 ...................................................................................... 20

42 C.F.R. § 59.10 ................................................................................ 13, 19

Fed. R. Civ. P. 52 .................................................................................... 20

## SUMMARY

For decades, the U.S. Department of Health and Human Services ("HHS") has exercised its authority under Title X of the Public Health Service Act to make grants for the provision of voluntary and confidential family planning methods and services to individuals of all ages. Pursuant to the plain terms of Title X, entities receiving these grants encourage but do not require family participation, to the extent practical. The program thus balances myriad interests to achieve the statutory goal of making comprehensive and voluntary family planning services available to all persons desiring such services. And courts nationwide have consistently upheld this statutory system.

Despite this longstanding consensus in the administration of the Title X program, Plaintiff Alexander Deanda now brings this suit against the Defendants in their official capacities, seeking declaratory and injunctive relief concerning the availability of Title X services. He argues that he has demonstrated standing without setting forth any evidence showing the likelihood he or any of his minor children would have any involvement with the Title X program. Plaintiff maintains that the provision of family planning services under Title X to people who desire such services violates his parental consent rights under section 151.001(6) of the Texas Family Code. Plaintiff therefore seeks to enjoin Defendants from funding any family planning project in Texas that does not impose a parental consent requirement for the provision of family planning services to minors. Plaintiff also argues that the administration of this voluntary program violates his substantive due process right to direct the upbringing of his children and seeks to enjoin Defendants from funding any family planning project in the United States that does not impose a parental consent requirement for services to minors.

In Plaintiff's Motion for Summary Judgment ("Pl. Mot."), ECF No. 51, and his Reply in Support of Plaintiff's Motion for Summary Judgment ("Pl. Reply"), ECF No. 61, Plaintiff fails to sustain his burden to establish subject matter jurisdiction, much less to show that he is entitled to relief as a matter of law on either of his claims. Because Plaintiff's claims accrued more than six years prior to his filing of the complaint, the statute of limitations bars his current challenge to the longstanding administration of Title X. Moreover, Plaintiff has failed to establish that he has standing because he does not adduce evidence demonstrating an actual, concrete injury in fact that is fairly traceable to Defendants' actions or redressable by the present suit. And on the merits, Plaintiff fails to overcome the longstanding and universal understanding that the availability of confidential services under Title X precludes parental consent requirements. Finally, Plaintiff fails to show that the provision of voluntary family planning services under Title X to persons desiring those services violates his right to direct the upbringing of his children. As other courts have held when addressing similar claims, the voluntary provision of Title X-funded services to people who desire such services does not impose any requirement or prohibition on Plaintiff and therefore does not interfere with his interest in his relationship with his children. Moreover, the provision of confidential family planning services through the Title X program serves the government's interest in promoting adolescent health and reducing unplanned pregnancies.

Accordingly, Defendants are entitled to summary judgment on all claims, and Plaintiff's cross-motion for summary judgment should be denied.

## ARGUMENT

## I.    PLAINTIFF CANNOT ESTABLISH SUBJECT MATTER JURISDICTION

Plaintiff has failed to sustain his burden to establish subject matter jurisdiction. *See* Consolidated Brief in Support of Def's. Cross Mot. for Summ. J. & Response to Pl.'s Mot. for

Summ. J. ("Def. Mot."), ECF No. 53 at 8-18. Plaintiff fails to refute the application of the statute

of limitations or to set forth necessary evidence to demonstrate standing. Pl. Reply at 1-8.

Accordingly, Defendants are entitled to summary judgment.

### A.    The Statute of Limitations Bars Plaintiff's Claims

Defendants showed in their opening brief that the six-year statute of limitations for

claims against the United States bars Plaintiff's present action. 28 U.S.C. § 2401(a); Def. Mot. at

8-11. "The limitations period for federal claims begins to run when a plaintiff 'knows or has

reason to know' of the injury" he alleges. *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d

850, 863 (5th Cir. 1993) (quoting *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)).

"[F]ailure to sue the United States within the limitations period . . . deprive[s] federal courts of

jurisdiction." *Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th

Cir. 1997); *Texas v. Rettig*, 987 F.3d 518, 529 (5th Cir. 2021). Accordingly, Plaintiff must bear

the burden of showing that his claim is timely, even when pursuing a constitutional claim.

*Daniels v. United States*, 532 U.S. 374, 381 (2001); *United States v. Flores-Martinez*, 677 F.3d

699, 709-10 (5th Cir. 2012). And "Section 2401(a) generally 'applies to all civil actions whether

legal, equitable, or mixed.'" *Felter v. Kempthorne*, 473 F.3d 1255, 1259 (D.C. Cir. 2007)

(quoting *Kendall v. Army Bd. for Corr. of Military Records*, 996 F.2d 362, 365 (D.C. Cir. 1993)).

Plaintiff argues in response that the "statute of limitations is inapplicable . . . because he

is seeking to prevent and enjoin *ongoing* conduct." Pl. Reply at 1 (emphasis in original). In

support of this argument, Plaintiff continues to misplace reliance upon this Court's decision in

*Leal v. Azar*, No. 2:20-cv-185-Z, 2020 WL 7672177, at *6-7 (N.D. Tex. Dec. 23, 2020), *vacated

and remanded on other grounds in Leal v. Becerra*, No. 21-cv-10302, 2022 WL 2981427 (5th

Cir. July 27, 2022). *See* Pl. Reply at 1-2. As Defendants have shown, *Leal* is distinct because

here Plaintiff does not point to any direct or immediate action by Defendants that he seeks to

enjoin. *See* Def. Mot. at 10. In *Leal*, this Court held that the six-year statute of limitations did not bar the plaintiffs' claims "for injunctive relief under the *Larson* framework."[1] *Leal* at *6 (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949)). But whereas the Court found in *Leal* that the "*continued enforcement*" of the challenged law is "what impedes or prohibits Plaintiffs from acquiring health insurance *today*[,]" *id.* at *7, in this case Plaintiff by contrast does not challenge any such direct or immediate action to enforce any aspect of the Title X program against him.

Nor could Plaintiff avail himself of the *Larson* doctrine, which would apply, if at all, in only two types of cases: "(1) those in which a 'statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional,' and (2) those in which the officer's action is *ultra vires* his or her authority." *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011) (quoting *Larson*, 337 U.S. at 689-90). This case fits neither category. First, Plaintiff does not challenge the Title X statute or the implementing regulations as unconstitutionally conferring authority upon Defendants. *See, e.g.*, Pl. Reply at 1-2 n.1; *cf. Leal*, at *6 ("Plaintiffs are challenging the constitutionality of the statute which conferred power upon the agencies[.]"); *Kelly v. Azar*, No. 4:20-cv-00283-O, 2021 WL 4025804, at *25-26 (N.D. Tex. Feb. 25, 2021) (Plaintiffs' "claims continually accrue so long as Defendants persist in enforcing unconstitutional statutes and *ultra vires* agency rules in a way that harms Plaintiffs."). In his own words, Plaintiff is "merely seeking declaratory and injunctive relief to restrain the defendants from violating his

---

[1] In *Leal*, the Court "acknowledge[d] it is an open question whether the 1976 amendments to the APA abrogated the *Larson* doctrine in suits against federal agency officials." *Id.* at *6 n.7 (citing *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011); *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985)).

rights under state and federal law." Pl. Reply at 1-2 n.1. In other words, Plaintiff challenges Defendants' administration of Title X, not the constitutionality of Title X.

Nor does Plaintiff present claims within the second *Larson* category, as he does not argue that any of the Defendants has acted in a manner that is *ultra vires*. "The ultra vires exception to sovereign immunity, as articulated by the Supreme Court in *Larson*, provides that 'where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions.'" *Danos*, 652 F.3d at 583 (quoting *Larson*, 337 U.S. at 689). "To invoke this exception, a plaintiff must 'do more than simply allege that the actions of the officer are illegal or unauthorized.'" *Id.* (quoting *Ala. Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976)). "The complaint must allege facts sufficient to establish that the officer was acting 'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (internal quotations omitted)). But Plaintiff offers nothing to show how the *ultra vires* rationale could apply in this case, as courts reaching the issue have consistently agreed that Title X prohibits the imposition of parental consent requirements. Defendants' administration of the Title X program is therefore much more than merely colorable. Thus, even assuming it has not been abrogated, the *Larson* framework applied in *Leal* and *Kelly* simply does not apply to the facts of this case.

Accordingly, the statute of limitations bars this challenge to the agency's longstanding and settled administration of the Title X program. *Rettig*, 987 F.3d at 529.

### B.     Plaintiff Lacks Standing

Not only is Plaintiff's programmatic challenge to Title X untimely, but Plaintiff also consistently fails to set forth facts demonstrating a concrete injury in fact that is fairly traceable to the challenged actions of Defendants and redressable by the present action. *Henderson v.*

*Stalder*, 287 F.3d 374, 378 (5th Cir. 2002); Def. Mot. at 11-18. This Court's decision denying

Defendants' Motion to Dismiss noted that at the pleading stage Plaintiff was entitled to favorable

inferences to sustain a lesser burden. Order, ECF No. 23 at 12-21. Plaintiff's continued reliance

upon the very same mere allegations, however, is insufficient to meet his heightened burden at

the summary judgment stage. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Doe v.

Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 496-97 (5th Cir. 2007) (en banc).

### 1.    Plaintiff Has Not Suffered an Injury in Fact Based on State Law

As Defendants have demonstrated, Plaintiff has not suffered an actual injury in fact as the

result of a deprivation of any state-law right of parental consent under Texas Family Code

§ 151.001(6). Def. Mot. at 13-16. As a threshold matter, Defendants' administration of Title X

has not "taken away" any legal right from Plaintiff. *Cf.* Pl. Reply at 3. Plaintiff argues that he

need not show any likelihood that any of his daughters ever would participate in Title X, much

less without his consent. Pl. Reply at 5. In fact, to the contrary, he alleges that he instructs his

daughters "to practice abstinence and refrain from sexual intercourse until marriage." Complaint,

ECF No. 1, ¶ 20. And yet, as Plaintiff concedes, the State of Texas also instructs that the state

parental consent law does not apply to Title X services. Pl. Reply at 10.

Plaintiff's argument that he has suffered a concrete injury in fact because the Texas

parental consent law bears a "close relationship" to harms "specified by the Constitution" or

"traditionally recognized as providing a basis for lawsuits in American courts" is unavailing. Pl.

Reply at 4 (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)). First, the U.S.

Constitution does not specify a right of parental consent to a minor's receipt of voluntary family

planning services. Although courts have recognized a substantive due process right of parents to

direct the upbringing of their children, courts have generally limited such claims to cases

challenging coercive governmental interference. *See, e.g., Troxel v. Granville*, 530 U.S. 57

(2000); *Anspach v. City of Philadelphia*, 503 F.3d 256 (3d Cir. 2007); *Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980); *see also infra* at Part II.B. Second, Plaintiff's reference to divorce proceedings and child custody disputes does not show that he has suffered a concrete harm from the existence of a voluntary federal program which he remains at liberty to instruct his minor children to avoid. *Cf.* Pl. Reply at 4. Divorce, child custody, and medical malpractice proceedings are categorically distinct, as those actions involve state-law claims between private litigants rather than a challenge to an executive agency's implementation of a federal program funding voluntary services.

Plaintiff similarly misplaces reliance upon the Supreme Court's dicta in a footnote that a state legislature might "create new interests, the invasion of which may confer standing." *Diamond v. Charles*, 476 U.S. 54, 65 n.17 (1986); Pl. Reply at 5. The plaintiff in that case lacked standing to defend the application of a state law after the state had conceded that the law in question was unconstitutional and could not be enforced. *Diamond*, 476 U.S. at 65 (plaintiff lacked the "kind of 'direct stake'" necessary for "defending the standards embodied in that code.") (quoting *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972)). If anything, here, Plaintiff similarly lacks standing to pursue this action to impose the Texas parental consent law upon federally funded Title X services despite guidance from the State of Texas providing that parental consent is not required for Title X services. *Id.* And in any event, Plaintiff lacks standing to challenge Title X's preclusion of state parental consent laws because he has not provided any evidence to show that his daughters are likely to participate in Title X, much less without his consent. *Id.* As in *Diamond*, Plaintiff has failed to set forth sufficient facts to confer standing. *Id.* at 66 ("Article III requires more than a desire to vindicate value interests.").

Likewise, Plaintiff misplaces reliance upon *Utah ex rel. Div. of Forestry, Fire, & State Lands v. United States*, 528 F.3d 712, 721 (10th Cir. 2008). That case involved an action originally against the United States and private landowners under the federal Quiet Title Act, 28 U.S.C. § 2409a. In the context of the remaining dispute between Utah and a private landowner, however, the Court's observation that "[a]lthough Article III standing is a question of federal law, state law may create the asserted legal interest," referred only to the fact that "Utah's quiet title claim against the [private landowner] arises under Utah law." *Id.* This inapposite case therefore does not establish that Plaintiff has standing here. *Cf.* Pl. Reply at 5 & n.7 (citing *FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988)); Def. Mot. at 13-16.

Instead, as Defendants have demonstrated, Plaintiff's theory of injury based upon the alleged deprivation of a statutory right is analogous to the rejected argument of the uninjured tester in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), and Plaintiff fails to show otherwise. Def. Mot. at 15-16; *cf.* Pl. Reply at 5-6. Plaintiff argues that he has suffered a deprivation of a statutory right "regardless of whether his children ever seek or obtain services from a Title X participant." Pl. Reply at 5. But *Havens* demonstrates the inadequacy of Plaintiff's argument to show an injury in fact at summary judgment. *Havens*, 455 U.S. at 374-75; Def. Mot. at 15. The two testers in *Havens* invoked the same statutory right to accurate information about housing, and yet the second tester lacked a concrete injury in fact because he had not received inaccurate information. *Havens*, 455 U.S. at 374-75; Def. Mot. at 15. Similarly, Plaintiff here has not suffered a concrete injury in fact because he has not been denied an opportunity to consent that he otherwise would have had under state law. Def. Mot. at 15. To the contrary, the fact that Texas acknowledges that the state parental consent law does not apply to Title X services further vitiates Plaintiff's theory of injury to a statutory right. *See supra* at 7; *Diamond*, 476 U.S. at 65.

But setting aside the fact that the Texas statute does not impose a parental consent requirement on Title X services, Plaintiff cannot possibly demonstrate a concrete injury in fact to his alleged right of consent without facts demonstrating at least the likelihood that his parental consent might be implicated by his daughters seeking to obtain services at a Title X clinic. Without such a factual showing, Plaintiff has not suffered an injury "in precisely the form the statute was intended to guard against." *Havens*, 455 U.S. at 373-74; Def. Mot. at 15. Logically, in the absence of any event to which his consent might be relevant, Plaintiff could not conceivably have suffered an injury in fact based on an alleged deprivation of a state-law right of consent. *Havens*, 455 U.S. at 373-75; *TransUnion*, 141 S. Ct. at 2205 ("Only those plaintiffs who have been concretely *harmed* by a defendant's statutory violation may sue.").

Plaintiff's reliance upon *FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988), is inapposite, particularly because that decision involved a contractual dispute between private litigants. *See* Def. Mot. at 15-16. As the Seventh Circuit explained in that case, "the principal concern of standing law" is the "separation of powers[,]" which the Court found was "not implicated in this case." *Id.* at 988-89. The Court went on to explain, however, that "[t]he separation of powers idea, of course, comes into play when a litigant challenges an act of the legislative or executive branch." *Id.* at 989. Yet, even in the context of that private suit, "if FMC had no constitutional standing, the court could not have exercised pendent jurisdiction over the state-law claims" because "[i]f a litigant . . . fails to allege sufficiently an injury, she cannot pursue *any* claim in federal court." *Id.* at 993. Although the Court observed that "some actions for breach of fiduciary duty do not require the plaintiff to show an injury," *id.*, the Court ultimately found that "FMC's injury – the loss of the exclusive use of its confidential business information – was the result of the defendants' misappropriation of that information which, FMC

alleges, violated several federal statutes as well as state common laws." *Id.* at 994; *cf.* Pl. Reply at 5. The case therefore does not affect the Plaintiff's burden here to establish an injury in fact from the Defendants' administration of a federal program. *FMC* does not show that Plaintiff has suffered an injury in fact merely "because the defendants have declared the relevant statute preempted by the Title X regime[.]" Pl. Reply at 5. And his argument that "none of the [*Havens* defendants] had the ability to preempt statutory protections[,]" Pl. Reply at 6, fails to show an exception to his burden under Article III to set forth facts showing that he has personally suffered an actual or imminent injury to his alleged statutory right. *Havens*, 455 U.S. at 373-75; *TransUnion*, 141 S. Ct. at 2205; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."); Def. Mot. at 13-16.

**2.    Plaintiff Has Not Suffered an Injury in Fact Based on Subversion or Loss of Assurance of Parental Authority**

As Defendants have shown, Plaintiff's sole authority on this point, *Parents United for Better Schools, Inc. ("PUBS") v. School District of Philadelphia Board of Education*, 148 F.3d 260 (3d Cir. 1998), does not establish that he has suffered an injury in fact based on subversion or loss of assurance of parental authority. Def. Mot. at 16-17; *cf.* Pl. Reply at 6-7. Plaintiff's misplaced reliance upon this single case only further demonstrates his lack of a concrete injury.

Plaintiff continues to argue that he need not show any actual nexus between himself and the Title X program. Pl. Reply at 6. Yet not even the *PUBS* case, Plaintiff's lone cited authority, supports this argument. To the contrary, in that case, the fact that the plaintiffs' children attended the schools implementing the program and thus would have to exercise a right to opt out if they wished to avoid participation distinguishes that case from this one. *PUBS*, 148 F.3d at 265, 273; *PUBS v. Sch. Dist. of Phila. Bd. of Educ.*, 646 A.2d 689, 692-93 (Pa. Commw. Ct. 1994). Here,

Plaintiff and his children need not do anything to opt out of the Title X program. Indeed, they need take not a single action to avoid having anything to do with the Title X program. To the contrary, Plaintiff's daughters would have to take some affirmative action to opt *in* to Title X services. This crucial distinction demonstrates that Plaintiff has failed to carry his burden to establish that the availability of voluntary Title X services has caused him to suffer an injury in fact in the form of the subversion or loss of assurance of his parental authority.

### 3.    Plaintiff Has Not Suffered an Injury in Fact Based on Increased Risk

As Defendants have shown, Plaintiff's "increased risk" theory fails for lack of facts showing *any* increased likelihood that any of his minor children ever would seek or obtain family planning services from a Title X clinic without his consent. Def. Mot. at 17-18. Plaintiff's response fails to show otherwise. Pl. Reply at 7-8.

In distinguishing *Massachusetts v. EPA*, 549 U.S. 497, 517-18 (2007), Defendants previously noted that the claim in that case involved a petition for rulemaking, and that the Supreme Court's finding of standing therefore turned at least in part upon the fact that the plaintiffs were asserting a procedural right. Def. Mot. at 17-18; *cf.* Pl. Reply at 7-8. Because "'procedural rights' are special[,]" *Lujan*, 504 U.S. at 572 n.7, the Supreme Court has held that "a litigant to whom Congress has 'accorded a procedural right to protect his concrete interests' . . . 'can assert that right without meeting all the normal standards for redressability and immediacy.'" *Massachusetts*, 549 U.S. at 517-18 (quoting *Lujan*, 504 U.S. at 572 n.7). Thus, "[w]hen a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.* at 518. In other words, *Massachusetts v. EPA* is inapposite because that case involved arguably relaxed standards of causation and redressability

applicable in procedural rights cases involving substantial risk of catastrophic harm, and Plaintiff here is not asserting a procedural right.

Plaintiff's argument fails in any event because even in *Massachusetts v. EPA*, the plaintiffs made a more substantial showing of dramatic and unavoidable "increased risk" of harm – harm in fact already occurring – from rising sea levels. *See, e.g., id.* at 526. The Court found standing to challenge EPA's denial of the petition for rulemaking based upon evidence that "the rise in sea levels associated with global warming *has already harmed* and will continue to harm Massachusetts." *Id.* (emphasis added). Because Congress had expressly "authorized this type of challenge to EPA action," *id.* at 516, evidence that the "risk of catastrophic harm" from rising sea levels associated with global climate change is "real" and "would be reduced to some extent" if the EPA were required to respond to the petition for rulemaking sufficed to demonstrate standing. *Id.* at 526. Plaintiff has failed to set forth facts that would similarly show an increased risk of harm from Defendants' administration of Title X without a parental consent requirement.

Plaintiff fails to refute this distinction. Pl. Reply at 7. Plaintiff continues to rely upon cases of catastrophic environmental harm that simply do not support his argument that he need not set forth facts showing an increased risk that his minor children might seek or obtain Title X services without his consent. To the contrary, in Plaintiff's own description, these cases require that the plaintiff "demonstrate[s] a realistic danger of sustaining a direct injury as a result of [a] statute's operation or enforcement." Pl. Reply at 7 (quoting *Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). In contrast to the cases he cites involving the immediate "risk of catastrophic harm" from the already-occurring rise in local sea levels, *Mass. v. EPA*, 549 U.S. at 526, or the "'immediate' adverse effects" of thermal pollution and radiation emissions from nearby nuclear power plants, *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438

U.S. 59, 73-74 (1978), Plaintiff consistently fails to set forth facts showing any such increased

risk that he will suffer any harm as a result of the availability of voluntary Title X services.

 For similar reasons, Plaintiff also falls short of showing the necessary material risk of

substantial and imminent harm necessary to sustain a claim for prospective relief. *See*

*TransUnion*, 141 S. Ct. at 2210 ("[A] person exposed to a risk of future harm may pursue

forward-looking injunctive relief to prevent the harm from occurring, at least so long as the risk

of harm is sufficiently imminent and substantial.") (citing *Clapper v. Amnesty Int'l USA*, 568

U.S. 398, 414 n.5 (2013)); Def. Mot. at 15, 20.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

 Even if Plaintiff could sustain his burden to establish subject matter jurisdiction,

Defendants are entitled to judgment as a matter of law on both claims. Def. Mot. at 18-29.

### A. Title X Precludes Mandatory Parental Notification or Consent

 Defendants have shown in this case, and courts have consistently agreed for decades, that

as a matter of federal supremacy, Title X precludes any state law from imposing a parental

consent requirement for Title X services because Title X requires grantees to do no more than

"encourage famil[]y participation[,]" and only "[t]o the extent practical." 42 U.S.C. § 300(a); 42

C.F.R. § 59.10(b); Def. Mot. at 4-7, 19-22. Against this line of authority interpreting the plain

meaning of Title X's text, Plaintiff argues that "[t]here is simply no language in the Title X

statute" showing that Title X disallows the imposition of state parental consent laws. Pl. Reply at

8. To date, courts have uniformly rejected such arguments that Title X could be read to allow

states to impose parental consent requirements, holding instead that state parental consent laws

impermissibly conflict with Title X's provisions and therefore cannot apply to Title X services.

Def. Mot. at 19.

Despite this consistent body of precedent from the past several decades interpreting Title X to preclude state parental consent laws, Plaintiff nonetheless argues that the statute should be construed to permit parental consent requirements because preemption should be generally disfavored. Pl. Reply at 8-10. Yet, against the overwhelming line of authority finding that Title X precludes parental consent requirements, Plaintiff offers not a single authority finding the statutory text to be unclear or ambiguous on this point. *Id.* Indeed, Plaintiff concedes that even the State of Texas acknowledges that parental consent cannot be required for Title X services. Pl. Reply at 10. Plaintiff's argument that Title X must be read to permit parental consent requirements thus fails to overcome the longstanding and consistent body of authority interpreting Title X.

Indeed, Plaintiff fails to refute the plain meaning of the Title X statute. As Defendants demonstrated in their opening brief, Def. Mot. at 19, Congress's decision to require parental consent under Title XX but not under Title X plainly demonstrates that Congress *intended* that parental consent not be required under Title X. *See Planned Parenthood Fed'n of Am., Inc. v. Heckler*, 712 F.2d 650, 661 (D.C. Cir. 1983); *New York v. Heckler*, 719 F.2d 1191, 1197 (2d Cir. 1983). Plaintiff makes no attempt to show otherwise, but rather argues that Title X should nonetheless be construed to allow state parental consent laws. Pl. Reply at 9. But Title X's use of words such as "encourage" and "to the extent practical" instead of a parental consent requirement, 42 U.S.C. § 300(a), logically cannot be interpreted, as Plaintiff argues, to be a permissive "*minimum* for parental involvement." Pl. Reply at 8; *cf. Planned Parenthood v. Heckler*, 712 F.2d at 661; *New York v. Heckler*, 719 F.2d at 1197. To the contrary, where Congress has simultaneously decided to include a parental consent requirement in one context but not in a similar one, the logical conclusion is that Congress intentionally has not required

parental consent in the latter context. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("'Where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *Rusello v. United States*, 464 U.S. 16, 23 (1983); *Comacho v. Tex. Workforce Comm'n*, 408 F.3d 229, 236 (5th Cir. 2005). If Congress had intended to require parental consent, it would have stated such a requirement in Title X, just as it did in Title XX. Instead, Congress chose to require no more of Title X entities than to encourage family participation, to the extent practical. 42 U.S.C. § 300(a).

And although Congress could have authorized the states to impose additional requirements, "Title X does not provide, or suggest, that states are permitted to determine eligibility criteria for participants in Title X programs." *Planned Parenthood v. Heckler*, 712 F.2d at 663; *New York v. Heckler*, 719 F.2d at 1197. Just as "Title X prohibit[s] the Secretary from requiring parental notification, the states would likewise be precluded from imposing similar conditions." *Planned Parenthood v. Heckler*, 712 F.2d at 664; Def. Mot. at 4-7, 19-22.

Additionally, the legislative history shows Congressional recognition of the importance of confidentiality in ensuring that adolescents feel comfortable seeking Title X services, and thus supports the longstanding interpretation of Title X as precluding parental consent requirements. Def. Mot. at 4-7, 19.

Plaintiff's argument that he is not seeking to impose a parental consent requirement as a condition on the receipt of federal funds fails to show that requiring parental consent would not violate federal supremacy by imposing rules for the provision of Title X services that conflict with the federal standards. Pl. Reply at 9. Indeed, Plaintiff seeks to enjoin Defendants from "funding any family-planning project in Texas . . . or from awarding grants or entering into

contracts with any entity that assists a family-planning project in Texas" that does not require parental consent under section 151.001(6) of the Texas Family Code. Complaint ¶ 31. As the D.C. Circuit has recognized, a state's "attempt to require parental consent as a condition to the provision of family planning services constituted the imposition of an additional eligibility requirement that clearly thwarted the goals of Title X." *Planned Parenthood v. Heckler*, 712 F.2d at 664. And "[t]he law on this issue is clear: even if Congress permits the states to impose additional rules as to eligibility for federal funding, those rules must be consistent with the federal standards or else be held invalid under the Supremacy Clause." *Id.* at 664 n.57. Enjoining the operation of Title X projects unless they impose a state parental consent law on Title X services would interfere with Congress's decision to require nothing more than encouragement of family participation, to the extent practical, as well as Congress's intention that confidentiality would encourage adolescents to participate in the program. *See, e.g.*, Def. Mot. at 4-7, 19-22. As Defendants have shown and courts have agreed for decades, imposing a parental consent requirement in this context thus would violate federal supremacy by impeding the intended purposes and administration of the program. Def. Mot. at 19-22.

Accordingly, Defendants are entitled to summary judgment on Claim No. 1.

## B.      Voluntary Title X Services Do Not Interfere with Plaintiff's Parental Rights

As Defendants have demonstrated, and Plaintiff fails to refute, the availability of voluntary Title X services does not violate Plaintiff's parental rights. Def. Mot. at 22-29. Courts have recognized claims for interference with parental liberty only where the challenged government action requires or prohibits some action by parents. *See, e.g.*, *Irwin*, 615 F.2d at 1168 (state's operation of a voluntary birth control clinic did not deprive parents of their liberty interest in the upbringing of their children); *Anspach*, 503 F.3d at 262 ("Courts have recognized

the parental liberty interest only where the behavior of the state actor compelled interference in the parent-child relationship.").

Plaintiff argues that Title X interferes with his parental rights even though the program is voluntary. Pl. Mot. at 19-20. But courts have consistently found that a challenged government program or policy that does not require or prohibit some action by parents does not interfere with parental rights under the Constitution. Def. Mot. at 22-27. Plaintiff cites no authority for his argument that even voluntary programs violate parents' right to direct the upbringing of their children. Pl. Mot. at 19; Pl. Reply at 11. To the contrary, even cases involving access to birth control and prophylactics have found no interference with parental rights to direct the upbringing of one's children where the programs are entirely voluntary. *See, e.g.*, *Irwin*, 615 F.2d at 1168; *Anspach*, 503 F.3d at 262; *PUBS*, 148 F.3d at 275.

Moreover, as Defendants have demonstrated, Def. Mot. at 27-29, the Fifth Circuit has applied rational basis review to alleged violations of parental rights to direct the upbringing of their children. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir. 2001). Plaintiff argues that *Littlefield* is inapposite because that case involved a mandatory uniform policy at a public school. *Id.* at 288; Pl. Reply at 11. But he shows no reason why the rationale in *Littlefield* should not apply in this case, or why a different standard should apply in the absence of any supporting authority. Pl. Reply at 11.

Contrary to Plaintiff's contention, the Fifth Circuit's application of the rational-basis standard of review to the challenge to school uniforms as a violation of parental rights is, indeed, analogous to this case. The Fifth Circuit's decision in *Littlefield* recognizes that parental rights under the Constitution are not absolute and that it is not a given that strict scrutiny should apply to any claim of parental rights, as Plaintiff suggests it should. *Littlefield*, 268 F.3d at 289 & n.20;

*cf.* Pl. Mot. at 20-21 (arguing that "[a]ny infringement on this right must therefore be subjected to strict scrutiny"); *Anspach*, 503 F.3d at 269 ("[There is no constitutional right to parental notification of a minor child's exercise of reproductive privacy rights."). Other courts have similarly held that parental rights to direct the upbringing of one's children are "not absolute[,]" even in the context of programs making contraceptives available to minors, and that "parental interests must be balanced with the child's right to privacy, which is also protected." *Anspach*, 503 F.3d at 261. Accordingly, rational basis review similarly should apply here as it did in *Littlefield*.

Regardless, the government has demonstrated its interests in the health of adolescents and in reducing unplanned pregnancies. Def. Mot. at 27-29; *see also, e.g.*, *Anspach*, 503 F.3d at 269 (recognizing "the state's legitimate interest in the reproductive health of minors"); *id.* at 271 n.10 (noting that Title X supports holding that "the state's substantial interest in the reproductive health of minors counsels against recognition of a constitutional right to parental notification when a minor child seeks confidential health care services"). For instance, Congress found that "special emphasis" should be placed on "providing comprehensive family planning services to sexually active adolescents who desire such services in order to avoid unwanted pregnancies." S. Rep. No. 95-822, at 12 (1978); Def. Mot. at 27. In addition, Congress expressly sought to address "the serious health implications" and "the future adverse social impact on the adolescent mother imposed by the responsibilities of parenthood." S. Rep. No. 95-822, at 12; Def. Mot. at 27. As a result of the serious health implications, Congress found it "imperative" to help adolescents avoid unplanned pregnancies. S. Rep. No. 95-822, at 30; Def. Mot. at 28. And, as also explained in Defendants' opening brief, Congress found that confidentiality is essential to ensure that adolescents have access to family planning services, and this has been the

longstanding and consistent interpretation shared by courts as well as HHS. Def. Mot. at 7, 28;
*see also* 42 C.F.R. § 59.10(b) ("To the extent practical, Title X projects shall encourage family
participation. However, Title X projects may not require consent of parents or guardians for the
provision of services to minors, nor can any Title X project staff notify a parent or guardian
before or after a minor has requested and/or received Title X family planning services.")
(footnote omitted).

Accordingly, Defendants are entitled to summary judgment on Claim No. 2.

### III.    RELIEF, IF ANY, MUST BE LIMITED TO THE PLAINTIFF

In their opening brief, Defendants showed that, particularly in light of Plaintiff's decision
to pursue his claims solely on his behalf, any relief should be narrowly tailored to provide the
necessary relief to Plaintiff with respect to his upbringing of his minor children. Def. Mot. at 29.
In response, Plaintiff concedes that any relief "should extend no further than" necessary "to
ensure that [his] Article III injuries are fully redressed." Pl. Reply at 11; *see also, e.g., Scott v.
Schedler*, 826 F.3d 207, 214 (5th Cir. 2016) ("injunction may not encompass more conduct than
was requested or exceed the legal basis of the lawsuit").

Yet even under this narrowed frame, Plaintiff fails to articulate the basis for an injunction
much less the terms of the specific relief he requests, and this failure is fatal to his request for
injunctive relief. "A party seeking a permanent injunction must also plead and prove an
irreparable injury for which no adequate remedy at law exists." *Dresser-Rand Co. v. Virtual
Automation, Inc.*, 361 F.3d 831, 847-48 (5th Cir. 2004). "[A] permanent injunction may be
granted on a motion for summary judgment where there is no genuine dispute of any material
fact, and the plaintiffs are entitled to judgment as a matter of law because they have established
the necessary elements for a permanent injunction." *Bode v. Kenner City*, 303 F. Supp. 3d 484,
497 (E.D. La. 2018). Plaintiff has not set forth any specific facts supporting a finding of

irreparable injury – to the contrary, he does not argue that any of his daughters is likely ever to

seek or obtain Title X services without his consent. *ITT Educ. Servs. v. Arce*, 533 F.3d 342, 347

(5th Cir. 2008) ("A plaintiff must allege 'specific facts' to support a finding of irreparable

injury.") (citing *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1322 (5th Cir.

1981)); *see also* Fed. R. Civ. P. 52(a) (requiring specific findings of fact).

      In the absence of a concrete injury, Plaintiff sets forth no basis for an injunction. He

cannot claim injunctive relief that would do nothing more than forbid hypothetical conduct (such

as providing Title X services to Plaintiff's minor daughters) or enjoin Defendants to follow the

law. *Stringer v. Whitley*, 942 F.3d 715, 721-23 (5th Cir. 2019). "In the absence of some allegedly

imminent violation of the law, such an injunction [to 'follow the law'] is inappropriate." *Does 1-*

*7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735, 745 (W.D. Tex. 2007) (citing *City of Los*

*Angeles v. Lyons*, 461 U.S. 95, 105 (1983)); *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th

Cir. 2013) ("obey-the-law" injunctions "depart[] from the traditional equitable principle that

injunctions should prohibit no more than the violation established in the litigation or similar

conduct reasonably related to the violation.").

      Moreover, Plaintiff fails to show that the balance of harms and public interest would

weigh in his favor. To the contrary, Plaintiff's requested relief might adversely affect the ability

of other members of the public to obtain confidential Title X services. *See, e.g.,* 42 U.S.C. §

300(a); 42 C.F.R. § 59.1 (Title X funds "voluntary family planning projects" providing the

services "necessary to aid individuals to determine freely the number and spacing of their

children.").

Accordingly, Plaintiff has failed to show that he is entitled to any declaratory or injunctive relief. But, in any event, any relief must narrowly tailored to address Plaintiff's raising of his minor children.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their Cross-Motion for Summary Judgment, ECF No. 52, on all claims and deny Plaintiff's Motion for Summary Judgment, ECF No. 50.

Dated:  October 28, 2022                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

/s/ *Amber Richer*
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2022, I electronically transmitted the foregoing to the parties and the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

/s/ *Amber Richer*
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov